UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

MICHAEL KASTRENAKES,   Case No. 8:22-bk-1210-CED

    Debtor.
_____/

### DEBTOR'S CHAPTER 11 CASE MANAGEMENT SUMMARY

MICHAEL KASTRENAKES (the "**Debtor**"), pursuant to Local Rule 2081-1(b), files this Chapter 11 Case Management Summary (the "**Summary**"). For his Summary, the Debtor states the following:

### Introduction

On March 27, 2022 (the "**Petition Date**"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") and made an election to proceed in Subchapter V pursuant to the Small Business Reorganization Act of 2019, as amended.

### Case Management Items

**1.  Description of the Debtor's Business**

The Debtor is an individual. He is the Director of Sales for Mid-Atlantic Finance Co., Inc. ("**Mid-Atlantic**") and President of Consumer Auto Xchange ("**Consumer Auto**"). He receives approximately $15,000 per month in compensation from Mid-Atlantic and approximately $6,666.67 per month in compensation from Consumer Auto. The Debtor does not have any ownership interest in Mid-Atlantic or Consumer Auto.

Prior to his employment with Mid-Atlantic, the Debtor derived the bulk of his income from ownership interests in various entities, including restaurants, real estate investment companies, rental car agencies, and auto sales, auto leasing, and auto financing. All of these entities are now defunct in some fashion—either because the companies or their assets were sold, surrendered, repossessed, or replevied, and therefore they have no assets; the companies are not operating; the companies have negative earnings; or the companies have negative equity. A list of the entities is set forth below:

| Entity | Ownership Interest | Status |
|---|---|---|
| Preferred Rent-A-Car, Inc. | Unknown | No assets or operations; Voluntary dissolution 10/3/2008 |
| Pinellas Auto Sales & Service, Inc. | Unknown | No assets or operations; Voluntary dissolution 1/4/1993 |
| New Wave Auto Finance, Inc. ("**New Wave Finance**") | 100% | Administrative dissolution 9/24/2021 |
| Thrifty Auto Service, LLC | 100% | No assets or operations; Administrative dissolution 9/25/2009 |
| Platinum Auto Finance B, LLC | 100% | Formed but never any assets or operations; Administrative dissolution 9/28/2012 |
| Platinum Auto Finance C, LLC | 100% | Formed but never any assets or operations; Administrative dissolution 9/28/2012 |
| Healthy You Tampa Bay, LLC | 50% | Formed but never any assets or operations; Administrative dissolution 9/28/2012 |
| Platinum RE Holdings, LLC | 50% | Single asset real estate entity; property sold in 2021; no remaining assets or operations |
| Pasadena Acceptance Finance, LLC | Unknown | Has negative equity and insufficient cash flow to service its debt |

| | | |
|---|---|---|
| New Wave Acceptance, LLC ("**New Wave Acceptance**") | 50% | Has negative equity and insufficient cash flow to service its debt |
| MLH Solutions 2, LLC | 50% | No assets or operations Administrative dissolution 9/24/2021 |
| KTK, LLC | Unknown | No assets or operations; Administrative dissolution 9/27/2019 |
| Price Rent-A-Car, L.C. | 100% | No assets or operations; Administrative dissolution 10/4/2002 |
| MK&B Enterprises, Inc. | Unknown | No assets or operations; Administrative dissolution 9/26/2008 |
| MK Automotive, Inc. d/b/a New Wave Auto Sales ("**New Wave Sales**") | 100% | Has negative equity and insufficient cash flow to service its debt |
| Preferred Vehicle Lease, Inc. | Unknown | No assets or operations; Voluntary dissolution 9/2/2003 |
| Preferred Car Sales, Inc. | Unknown | No assets or operations; Administrative dissolution 10/4/2002 |
| Instant Car Offer, LLC | 16% | No assets or operations; Administrative dissolution 9/24/2021 |

The Debtor's sole remaining business interests are passive investments in entities in which he holds a minority interest and a fifty percent (50%) interest in an offshore reinsurance company. A list of these interests is set forth below:

| **Entity** | **Ownership Interest** | **Liens** |
|---|---|---|
| Platinum Auto Finance of Tampa Bay, LLC ("**Platinum Auto Finance Tampa Bay**") | 13% | |
| CallPass, LLC ("**CallPass**") | 37,240 units (3.687129%) | Membership interests are pledged to CPX Holdings, LLC ("**CPX**") |
| Ximplipay, LLC ("**Ximplipay**") | 4.9 units (4.9%) | Membership interests are pledged to CPX |

3

| | | |
|---|---|---|
| Kaz Reinsurance FL LLC ("**Kaz Reinsurance**") | 50% | Membership interests are pledged to First Home Bank |

Platinum Auto Finance Tampa Bay is operating; however, it is highly leveraged and has negative retained earnings. Accordingly, it has not been making distributions to members.

CallPass is operating and has historically made quarterly distributions to its members. As reflected by the Debtor's K-1 from CallPass, the Debtor received $38,501 in distributions in 2020. The Debtor has not received a distribution from CallPass for the two previous quarters. The Debtor believes that his distributions are being held pursuant to a writ of garnishment served by Courtney Leasing, Inc. ("**Courtney Leasing**") on CallPass in connection with a judgment entered in favor of Courtney Leasing in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida against New Wave Sales and the Debtor. *See* Case No. 2020-CA-010860-O. In addition, the Debtor's distributions, if any, from CallPass are encumbered by liens in favor of CPX pursuant to a Membership Units Pledge and Security Agreement.

Ximplipay is operating and has historically made quarterly distributions to its members. As reflected by the Debtor's K-1 from Ximplipay, the Debtor received $25,650 in distributions in 2020. The Debtor's distributions, if any, from Ximplipay are encumbered by liens in favor of CPX pursuant to a Membership Units Pledge and Security Agreement.

Kaz Reinsurance is an offshore reinsurance company that operated in conjunction with the Debtor's now defunct auto sales and leasing businesses. While the Auto Businesses (defined below) were actively operating, Kaz Reinsurance made distributions to members. When the Debtor's auto sales and leasing business failed, Kaz Reinsurance's income plummeted. Kaz Reinsurance is no longer making distributions to its members. The Debtor's distributions, if any, from Kaz Reinsurance are encumbered by liens in favor of First Home Bank pursuant to a pledge.

4884-6114-4852, v. 7

2.     **Location of Debtor's Operations and Whether Leased or Owned**

The Debtor and his non-debtor spouse own their homestead, which is located at 1755 McCauley Road in unincorporated Pinellas County, Florida (the "**Homestead**"). The Debtor and his spouse purchased the Homestead in 1998, and it has continuously been their Homestead since the acquisition. The Debtor does not have any direct interest in any other real property.

3.     <u>**Reasons for Filing Chapter 11**</u>

Immediately prior to becoming the Director of Sales for Mid-Atlantic and the President of Consumer Auto, the Debtor owned and operated a consortium of auto businesses that sold, leased, and financed vehicles (the "**Auto Businesses**"), primarily in the subprime market. At their peak, the Auto Businesses were a $60 million enterprise with multiple locations and approximately 75 employees. Unfortunately, their cost of operating capital was high—approximately 14%. That resulted in thin margins in an industry with high default rates.

The Debtor managed Platinum Auto Finance Tampa Bay until 2017 when the company decided to change course. After the Debtor's departure as manager, the company took a downward spiral, which resulted in a capital call to all members and a conversion of debt to membership interests. In order to preserve his ownership interests, the Debtor was required to contribute $1.1 million. The Debtor infused $300,000 in cash and borrowed the remaining funds to cover his capital call. Today, the company has negative retained earnings and is not making any distributions to members.

In 2018, Capital One Auto Finance ceased direct lending to finance companies and failed to renew New Wave Finance's $6.5 million line of credit. This required New Wave Finance to sell off its negotiable paper portfolio at a significant discount in order to pay the maturing line of credit.

In 2018, New Wave Sales partnered with another company to conduct offsite sales events throughout Florida. This partnership resulted in exponential growth. However, in 2019 and 2020, New Wave Sales experienced significant losses due to chargebacks from early termination of warranties and after-market products as well as buy backs due to allegations of misrepresentation by the partner company. New Wave Sales terminated the business relationship, but the expenses had already been incurred. The company hoped to recoup its losses in March and April of 2020, which are typically some of the busiest months in the auto sales industry.

Unfortunately, in March 2020, the COVID-19 pandemic forced an immediate, but temporary shut-down of the Auto Businesses. The businesses reopened and worked hard to rebound. New Wave Sales applied for $2 million in disaster relief assistance.

While the request for relief was pending, New Wave Sales had a continuing need for funding from its secured lender, NextGear Capital, Inc. ("**NextGear**"). On April 15, 2020, New Wave Sales reached an agreement with NextGear regarding the parties' continued lending relationship. Unbeknownst to New Wave Sales and the Debtor, while the parties were negotiating the terms of the agreement, NextGear sent letters to New Wave Sales' creditors, including Bank of America, Centerstate Bank, Jefferson Bank of Florida, Automotive Finance Corporation, CT Corporation System, Republic Bank & Trust Company, and Great America Financial Services Corporation (the "**Finance Companies**"). The letters indicated that New Wave Sales was in default on its obligations to NextGear and that NextGear intended to repossess and sell New Wave Sales' inventory.

After sending the letters, NextGear admitted to New Wave Sales that the letters should not have been sent to the Finance Companies. However, the damage had already been done. Upon receipt, the Finance Companies discontinued New Wave Sales' lines of credit and ceased doing

business with New Wave. This caused a ripple effect throughout the Auto Businesses and ultimately caused them all to shut down.

After the Auto Businesses ceased operations, litigation ensued. On March 9, 2021, Thomas Zervas and Konstantinos Papasanos filed in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida a two-count complaint against New Wave Finance, the Debtor, and Maria Kastrenakes seeking to collect on a promissory note and for unjust enrichment. *See* Case No. 21-001223-CI. On August 12, 2020, NextGear filed a five-count complaint in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida against, *inter alia*, New Wave Sales and New Wave Finance seeking damages and replevin, and against the Debtor and Maria Kastrenakes seeking to collect on a personal guarantee. *See* Case No. 20-003846-CI.

On February 20, 2022, Dr. Panayiotis Vasiloudes and Cygram Heritage, LLLP filed a seven-count complaint in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida against, *inter alia*, New Wave Acceptance, Platinum Auto Finance Tampa Bay, New Wave Sales, New Wave Finance, Maria Kastrenakes, and the Debtor in connection with loans made to, investments made in, and guarantees executed in connection with the Auto Businesses. *See* Case No. 2022-CA-000829-CI. On February 28, 2022, Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, Cygram Holdings, LP, Trifon Houvardas, and K&M Insurance Investors, LLC filed a five-count complaint against, *inter alia*, the Debtor in connection with loans made to, investments made in, and guarantees executed in connection with the Auto Businesses. *See* Case No. 2022-CA-000956-CI.

Given the failed business ventures, the litigation stemming therefrom, and mounting legal bills to defend the litigation, the Debtor had no choice but to file this Chapter 11 case in an effort to restructure his debts for the benefit of all creditors.

4.     **List of Officers and Directors and Their Salaries and Benefits at Time of Filing and During the One Year Prior to Filing**

The Debtor is an individual and has no officers, directors, or employees.

5.     **Debtor's Annual Gross Income**

The Debtor's annual gross income is approximately $260,000, of which approximately $180,000 is 1099 income from Mid-Atlantic and $80,000 of which is w-2 income from Consumer Auto. Historically, the Debtor has also received periodic distributions from, *inter alia*, CallPass and Ximplipay. As set forth below, the Debtor's distributions have been pledged as collateral for various loans.

6.     **Amounts Owed to Various Classes of Creditors**

Although the Debtor has not filed his Schedules or Statement of Financial Affairs, the Debtor believes that the creditors will be comprised of the following:

A.     <u>Secured creditors</u>.

  i.     Wells Fargo in the approximate amount of $718,000 in connection with a mortgage lien against the Debtor's Homestead.

  ii.    Southstate Bank in the approximate amount of $147,000 in connection with a second mortgage lien against the Homestead.

  iii.   Grow Financial in the approximate amount of $26,000 in connection with a lien on a 2018 Audi A5.

  iv.    New York Life Insurance and Annuity Corporation in the approximate amount of $46,000 in connection with loans secured by the cash surrender value of two whole life insurance policies in the Debtor's name.

  v.     CPX in the original principal amount of $885,000.00 in connection with a pledge of all of the Debtor's rights, title, and interest in 4.9 units of Ximplipay and 37,420 units of membership interest in CallPass, together with all of the Debtor's rights to distributions, dividends, and proceeds therefrom.

    B.    <u>Priority Unsecured Creditors.</u>

        i.    The Debtor is not presently aware of any priority unsecured creditors.

    C.    <u>Unsecured Creditors.</u>

The Debtor's general unsecured creditors are comprised largely of: (i) a judgment entered in favor of Courtney Leasing in the amount of $545,818.42; (ii) an unperfected purchase money loan made to the Debtor in connection with the purchase of a 2017 boat, which was sold prior to the Petition Date, with a balance of approximately $120,000.00; (iii) promissory notes and/or personal guarantees made by the Debtor in favor of financial institutions and individuals in connection with funds obtained for operating capital for the Auto Businesses; and (iii) contingent and, in most cases, disputed and/or unliquidated claims of financial institutions and individuals in connection with the Debtor's purported personal guarantee of business debts and litigation claims stemming therefrom.

The Debtor reserves all rights, claims, and defenses with respect to extent, validity, and priority of any and all claims.

**7.**    **General Description and Approximate Value of the Debtor's Current and Fixed Assets**

The Debtor's principal assets consist of the Homestead, household goods and furnishings in the Homestead, clothing, personal effects, a vehicle, cash in bank accounts, whole life insurance policies, and business interests. The 2021 just market value for the Homestead is approximately $1.35 million according to the Pinellas County Property Appraiser. The Debtor believes that the 2018 Audi A5 has a value of approximately $30,000. The Debtor does not currently know the value of his household goods and furnishings, clothing, and personal effects. The Debtor will be filing an application to employ an appraiser to inventory and appraise those items. The appraiser's

report will be filed with the Court. The Debtor reserves all rights, claims, and defenses with respect to the valuation of his assets.

**8.      Number of Employees and Amount of Wages Owed as of Petition Date.**

The Debtor is an individual and does not have any employees or owe any wages.

**9.      Status of Debtor's Payroll and Sales Tax Obligations**

The Debtor did not have any outstanding payroll tax obligations as of the Petition Date. Prior to the Petition Date, the Florida Department of Revenue (the "**FDOR**") asserted that the Debtor owed it approximately $2 million (the "**FDOR Obligation**") as a responsible party in connection with sales and use taxes payable by the Debtor's Auto Businesses and as criminal restitution. The Debtor entered into a settlement agreement with the FDOR, which resulted in full settlement and satisfaction of the FDOR Obligation. The Debtor obtained the funds for the Settlement Amount by borrowing funds from CPX Holdings, with the balance coming from non-debtor sources. The CPX Holdings loan is secured by a pledge of the Debtor's membership interests in CallPass and Ximplipay. As a result of the settlement with the FDOR, the Debtor did not have any outstanding sales tax obligations as of the Petition Date.

**10.     Anticipated Emergency Relief Requested**

The Debtor does not anticipate requiring emergency relief within the first 14 days after the Petition Date, but reserves the right to do so.

**11.     Strategic Objectives.**

The Debtor's plan will propose to restructure his debts by making payments to creditors over time from the Debtor's net disposable income, which may be supplemented by non-debtor resources.

**WHEREFORE**, the Debtor respectfully submits this as his Case Management Summary.

/s/ Edward J. Peterson
Edward J. Peterson (FBN 014612)
Amy Denton Harris (FBN 0634506)
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida  33602
Telephone:  (813) 229-0144
Email:  epeterson@srbp.com; aharris@srbp.com
Attorneys for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the *Debtor's Chapter 11 Case Management Summary* has been furnished on this 30th day of March, 2020, by the Court's CM/ECF electronic mail system to all parties receiving electronic service.

/s/ Edward J. Peterson
Edward J. Peterson

4884-6114-4852, v. 7