**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

MICHAEL KASTRENAKES,

    Debtor.

_____/

Case No.: 8:22-bk-01210-CED
Chapter: 11
Subchapter V

**VASILOUDES AND CYGRAM'S OBJECTION**
**TO THE DEBTOR'S SUBCHAPTER V DESIGNATION**

Creditors, Dr. Panayiotis Vasiloudes ("Vasiloudes") and Cygram Heritage, LLLP ("Cygram"), by and through their undesigned counsel, hereby objects to the Subchapter V designation under 11 U.S.C. § 1182 as made by Michael Kastrenakes (the "Debtor"), as the Debtor does not meet the stator eligibility requirements to proceed under Subchapter V, and states as follows:

**I. INTRODUCTION**

Prior to initiating the above-captioned bankruptcy case (this "Bankruptcy Case"), Debtor "owned and operated a consortium of auto businesses that sold, leased, and financed vehicles (the "Auto Businesses"), primarily in the subprime market." [Doc. 12]. However, as of the date of initiating this Bankruptcy Case, the Auto Businesses had all "shut down" and "cease operations." While the Debtor attempts to cast blame on third parties and pandemics as the source of his Auto Businesses' failures, in reality, it was the Debtor's own fraudulent conduct and greed that he has to blame.

Through the use of shifting shell entities, false financial data, artificially inflated and fraudulent financial and tax documents, and intentional misstatements concerning material facts with respect to the business, financial, and legal affairs of the Debtor's entities, the Debtor induced potential investors and creditors – including Vasiloudes and Cygram – to transfer their funds as

"investments" to the Debtor and his entities for the Debtor's later misappropriation and use. Contrary to the claims promoted by the Debtor, the Debtor's "investment plan" was nothing more than mere shells and artifices utilized by the Debtor to deceive investors and creditors and intentionally mislead the same into transferring millions of dollars for ultimately the Debtor's own personal lucre.

Ultimately, like any scheme of this type, the Debtor's fraudulent conduct caught up with him. Facing felony criminal charges resulting from the Debtor's theft of state funds on one front[1], and a number of civil actions from deceived and disgruntled investors and creditors on the second front, the Debtor attempts to utilize this Court and the Subchapter V process as a refuge for his fraudulent conduct. However, the Debtor simply does not qualify as a "small business debtor" and therefore is precluded from electing the Subchapter V process.

## II. BACKGROUND

1. On March 27, 2022 (the "Petition Date"), the Debtor filed a voluntary chapter 11 petition (the "Petition") electing treatment as a Subchapter V case under the provisions of the Small Business Reorganization Act of 2019 ("SBRA"). Specifically, the Debtor asserted that he is a debtor according to the definition in § 1182(1) of the Bankruptcy Code, and chose to proceed under Subchapter V of Chapter 11. [Doc. 1 at 4].

2. In the Petition, the Debtor estimated his assets to be worth $1,000,001 to $10,000,000 and his liabilities to be estimated at $10,000,001 to $50,000,000. Id. at 6.

3. On March 30, 2022, the Debtor filed "Debtor's Chapter 11 Case Management Summary" (the "Case Management Summary") [Doc. 12], indicating that the Debtor is employed

---

[1] See State of Florida v. Michael Kastrenakes, Case No. 20-11345-CF, previously pending in the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County, Florida, Criminal Division, in which the Debtor plead guilty to theft of state funds, a level 4 second degree felony, on March 24, 2022 – three (3) days before initiating this Bankruptcy Case.

at Mid-Atlantic Finance Co. Inc. ("Mid-Atlantic") and "Consumer Auto Xchange ("Consumer Auto").

4.  On April 15, 2022, the Debtor filed his Schedules (the "Schedules") [Doc. 27] and Statement of Financial Affairs (the "Statement of Financial Affairs") [Doc. 27 at 40].

5.  The Schedules indicate that as of the Petition Date, the Debtor's total liabilities equals $14,991,390.74 (the "Total Debt"). Of the Total Debt, the Debtor contends that $5,950,257.65[2] is noncontingent and liquidated.

### III. MEMORANDUM OF LAW

Under Federal Rule of Bankruptcy Procedure 1020(b), the United States Trustee, or any party in interest, may object to a debtor's designation as a small business case or as a debtor under Subchapter V within 30 days of the conclusion of the meeting of creditors. If a party challenges the debtor's Subchapter V election, the Debtor bears the burden of demonstrating that he is eligible to proceed under Subchapter V. See In re Vertical Mac Construction, LLC, 2021 WL 3668037, at *1 (Bankr. M.D. Fla. July 23, 2021); Montgomery v. Ryan (In re Montgomery), 37 F.3d 413, 415 (8th Cir. 1994) ("The burden of establishing eligibility in bankruptcy lies with the party filing the bankruptcy petition.")

> When a party challenges debtor's eligibility to file under a particular chapter of the United States Bankruptcy Code, the debtor carries the burden of establishing such eligibility. See In re Wright, 2020 WL 2193240 at *2 (quoting In re Voelker, 123 B.R. 749, 750 (Bankr. E.D. Mich. 1990)). In Wright, the court extended this general rule to apply to objections to a debtor's eligibility to elect to proceed under subchapter V. Id. The majority of courts similarly has extended this rule when determining a debtor's eligibility to elect subchapter V. See In re Offer Space, LLC, Case No. 20-27480, 2021 WL 1582625, at *2 (Bankr. D. Utah 2021); In re Ikalowych, Case No. 20-17547, 2021 WL 1546547, at *7 (Bankr. D. Colo. 2021) (citing In re Sullivan, 626 B.R. 326, 329-30 (Bankr. D. Colo. 2021) and Tenth

---

[2] The Debtor lists over $5,000,000 of additional unsecured debt that the Debtor contends is either contingent, unliquidated, or both. Vasiloudes and Cygram have been unable to question the Debtor regarding these additional debts, but believe that some may in fact be noncontingent and liquidated, thus increasing the Debtor's total debt for purposes of Subchapter V eligibility even higher.

> Circuit precedent for the proposition that debtors who file under chapters 9 and 12 bear the burden of proving eligibility); In re Johnson, Case No. 19-42063, 2021 WL 825156, at *4 (Bankr. N.D. Tex. 2021); In re Thurmon, 625 B.R. 417, 419 n.4 (Bankr. W.D. Mo. 2020); In re Blanchard, Case No. 19-12440, 2020 WL 4032411, at *1-2 (Bankr. E.D. La. July 16, 2020) (citing Wright); but see In re Body Transit, Inc., 613 B.R. 400, 409 n. 15 (Bankr. E.D. Pa. 2020) (stating that "[i]t is appropriate to place the burden of proof on [the creditor], as it is the de facto moving party"). This Court agrees with those courts concluding that the debtor bears the burden of proof to establish eligibility to proceed under subchapter V.

In re Blue, Case No. 21-80059, 2021 WL 1964085, at *4 (Bankr. M.D.N.C. May 7, 2021).

A. **THE DEBTOR'S SCHEDULED DEBTS EXCEED THE DEBT LIMITS IMPOSED UNDER SUBCHAPTER V**

The SBRA was enacted to "address reorganization of small businesses" by creating a new Subchapter V to Chapter 11 of the Bankruptcy Code. 116 Pub. L. 54, 1133 Stat. 1079 (Aug. 23, 2019). When enacted as part of the SBRA, § 1182(1) stated, "The term 'debtor' means a small business debtor." A "small business debtor" is defined in § 101(51D) as "a person engaged in commercial or business activities … that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition … [of] not more than $2,725,625 … not less than 50 percent of which arose from the commercial or business activities of the debtor."

However, on March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") became law. Pub. L. 116-136, 134 Stat. 281 (2020). The CARES Act amended § 1182(1) to read:

> The term "debtor" –
> (A)… means a person engaged in commercial or business activities … that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition … [of] not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not les than 50 percent of which arose from the commercial or business activities of the debtor…"

Thus, the language added to § 1182(1) by the CARES Act mirrors the definition of "small business debtor" under § 101(51D) except that it increased the debt limit to $7,500,000. However, the debt

limit increase under § 1182(1) was only a temporary measure and was set to expire on March 27, 2022.[3] Accordingly, as of the Petition Date, the debt limit has once again reverted to $2,725,625.

On April 15, 2022, the Debtor filed his Schedules and Statement of Financial Affairs. The Schedules indicate that as of the Petition Date, the Debtor's total liabilities equals $14,991,390.74 (the "Total Debt"). Of the Total Debt, the Debtor contends that $5,950,257.65[4] is noncontingent and liquidated. Accordingly, the Debtor's aggregate noncontingent and liquidated secured and unsecured debt exceeds the current debt limit for Subchapter V.

B.   THE DEBTOR IS NOT ENGAGED IN COMMERCIAL OR BUSINESS ACTIVITY

In addition to the debt limits imposed under Subchapter V, the definition of a "small business debtor" has two additional principal requirements. First, the debtor must be a person "engaged in commercial or business activities." 11 U.S.C. § 1182(1)(A). Second, fifty (50%) percent of the Debtor's total debt must arise "from the commercial or business activities of the debtor." Id.

The term "engaged" is an active verb and is used in the statute in its plain, ordinary connotation, meaning that the Debtor must be actively engaged in commercial or business activities at the time of filing. See In re Johnson, 2021 WL 825156, at *6 (Bankr. N.D. Texas Mar. 1, 2021); see also In re Thurman, 2020 WL 7249555 (Bankr. W.D. Mo. Dec. 8, 2020); cf In re Watford, 898 F.2d 1525, 1527 (11th Cir. 1990) (Eleventh Circuit holding that family famers must be engaged in farming operation at the time they file for Chapter 12 relief where § 101(18) defines a family farmer as an "individual … engaged in a farming operation…"); Hileman v. Pittsburg & Lake Erie Props. (In re Pittsburgh & Lake Erie Props.), 290 F.3d 516, 519 (3d Cir. 2002) (in

---

[3] It was originally set to expire on March 27, 2021, but was extended when President Biden signed the COVID-19 Bankruptcy Relief Extension Act of 2021.
[4] See Schedule D, Parts 2.1, 2.3, 2.4, 2.5, and 2.6 and Schedule E/F, Parts 4.3, 4.8, 4.12, 4.14, 4.15, 4.21, 4.24, and 4.25.

interpreting § 101(44), the Third Circuit held that the word "engaged" was used by Congress in its plain, ordinary meaning as present tense, and noted that "an entity that has abandoned being engaged in transporting goods and people does not on the most natural reading of this language concern a railroad, it concerns a former railroad."); In re Banes, 355 B.R. 532, 535 (Bankr. M.D.N.C. 2006) (debtor not health care business because no longer engaged in the practice of dentistry; "engaged in" is present tense).

As with the term "engaged in," the terms "commercial," "business," and "activity," each have long-standing common meanings. The term "commercial" in the context of § 101(51D) "is commonly defined as 'of or relating to commerce,' 'commerce' is commonly defined as 'he exchange or buying and selling of commodities on a large scale involving transportation from place to place,' and 'commodity' is commonly defined as 'an economic good.'" In re Johnson, 2021 WL 825156 at *8 (quoting Commercial, Merriam-Webster Online Dictionary (2021) (www.merriamwebster.com/dictionary/commercial); Commerce, Merriam-Webster Online Dictionary (2021) (www.meriam-webster.com/dictionary/commerce); and Commodity, Merriam-Webster Online Dictionary (2021) (www.meriamwebster.com/dictionary/commodity).

"Business" in the context of § 101(51D) "is commonly defined as being 'commercial or mercantile' in nature, 'mercantile' is commonly defined as 'of or relating to merchants or trading,' and 'merchant' is commonly defined as 'a buyer and seller of commodities for profit.'" Id. (quoting Business, Merriam-Webster Online Dictionary (2021) (www.merriamwebster.com/dictionary/business); Mercantile, Merriam-Webster Online Dictionary (2021) (www.meriam-webster.com/dictionary/mercantile); and Merchant, Merriam-Webster Online Dictionary (2021) (www.meriamwebster.com/dictionary/merchant). The term "activity" mainly connotes "the quality or state of being active : behavior or actions of a particular

kind." <u>Activity</u>, Merriam-Webster Online Dictionary (2022) (https://www.merriam-webster.com/dictionary/activity).

"Thus, applying the ordinary meaning of 'commercial or business activities' to the language of section 101(51D), a person engaged in 'commercial or business activities' is a person engaged in the exchange or buying and selling of economic goods or services for profit." <u>In re Johnson</u>, 2021 WL 825156 at *8. The Debtor does not meet this requirement.

i. **The Debtors 1099 and W-2 Income**

The Debtor is an individual who is currently employed as the Director of Sales for Mid-Atlantic and President of Consumer Auto. [Doc. 12]. The Debtor has no employees and owes no wages. The Debtor has no ownership interest in either Mid-Atlantic or Consumer Auto, and instead is employed as a 1099 and W-2 employee respectively. <u>Id.</u> However, merely being employed by an operating company, with no ownership interest in the employer, does not constitute "commercial or business activities." <u>See</u> <u>In re Johnson</u>, 2021 WL 825156 at *7-8.

In the case of <u>In re Johnson</u>, 2021 WL 825156, the debtors acknowledged that neither of them were engaged in the exchange or buying and selling of any economic goods or services for their own profit. The court held that in absence of an ownership interest in the debtor's employer, the debtor could not be said to have been engaged in the "exchange or buying and selling of any economic goods or services for the Debtor's indirect profit." <u>In re Johnson</u>, 2021 WL 825156, at *8. "Put simply, Cord is nothing more than an employee of El Reno with heightened obligations to the company on account of his role as an officer. As such, Cord does not qualify as a small business debtor under section 101(51D)." <u>Id.</u> In its examination of the statutory language, the <u>Johnson</u> court reasoned as follows:

> Application of the foregoing interpretation of "commercial or business activities" to the facts and circumstances of this case is also consistent with the specific context in which the language is used and with the broader context of the Bankruptcy Code

as a whole. As previously indicated, the small business debtor provisions of the Bankruptcy Code are designed to confer benefits that will facilitate the expedient and cost-efficient reorganization of an eligible debtor's business. Authorizing a W-2 employee of a non-debtor company, even one having the title of President, to access such benefits would do nothing to advance the reorganizational interests of the non-debtor company or to otherwise maintain the ongoing operations of the non-debtor company.

Id.

Thus, the Debtor's mere employment status is not enough to avail the Debtor to the status of a "small business debtor." See also In re Rickerson, 636 B.R. 416, 426-27 (Bankr. W.D. Penn. 2021) (holding that the "common use of the language does not equate ordinary employment with a small business, and therefore the Court finds that the Debtor's employment by OPTUM does not constitute engaging in commercial or business activities within the meaning of Section 1182(1)(A).").

### ii. The Debtor's Passive Investments

In addition to his 1099 and W-2 compensation, the Debtor has identified four (4) entities that are "[t]he Debtor's **sole remaining** business interests" – Platinum Auto Finance of Tampa Bay, LLC ("Platinum Tampa Bay"), CallPass, LLC ("CallPass"), Ximplipay, LLC ("Ximplipay"), and Kas Reinsurance FL LLC ("Kaz Reinsurance"), all of whom are together referred to herein as the "Passive Entities." [Doc. 12 at 3-4 (emphasis added)]. The Debtor refers to these interests as "passive investments" in which he holds a "minority interest and a fifty percent (50%) interest in an offshore reinsurance company."

Because the Debtor's interests in each of the Passive Entities is "passive," the Debtor does not indicate that he is actually involved in any of the commercial or business activity of Passive Entities. The Debtor derives no salary from any of the Passive Entities. And while Debtor at one time managed Platinum Tampa Bay, he was forced to depart as manager in 2017 – well before the Petition Date. [Doc. 12 at 5]. Moreover, Kaz Reinsurance's business operations seemed

to have been tethered to the now Defunct Entities, and has plummeted as the Defunct Entities failed. [Doc. 12 at 4].

### iii. The Debtor's Defunct Entities

The Debtor identifies eighteen (18) "defunct" entities (collectively, the "Defunct Entities") that he previously was involved in prior to his employment with Mid-Atlantic. [Doc. 12 at 2-3]. The Debtor has stated that as of the Petition Date, each of the Defunct Entities "are now defunct in some fashion – either because the companies or their assets were sold, surrendered, repossessed, or replevied, and therefore they have no assets; the companies are not operating; the companies have negative earnings; or the companies have negative equity." Id. Fourteen (14) of the identified Defunct Entities are represented to have been administratively or voluntarily dissolved prior to the Petition Date and have no assets or operations. Id. Of the remaining four (4), one is identified as a "[s]ingle asset real estate entity" whose property was sold in 2021 and has no remaining assets or operations. The remaining three (3) Defunct Entities – Pasadena Acceptance Finance, LLC, New Wave Acceptance LLC ("NWA"), and MK Automotive, Inc. d/b/a/ New Wave Auto Sales ("MK Automotive") – are each represented to have "negative equity and insufficient cash flow to service its debts." The Debtor confirms that each of the "Auto Businesses" have "ceased operations" prior to the Petition Date. Id. at 7. Nowhere does the Debtor indicate that he is engaged in any activity, let alone commercial or business activity, currently on behalf of the Defunct Entities as of the Petition Date. Instead, the Debtor has confirmed that each of the Defunct Entities were required to "shut down." [Doc. 12 at 7].

In the case of In re Thurmon, 625 B.R. 417, the debtors operated two pharmacies but closed the businesses in April 2020 and sold all the assets. Id. at 420. The debtors then filed for bankruptcy in August 2020. Id. The bankruptcy court rejected the debtors' argument that they were engaged in commercial or business activities because their non-operational pharmacies

9

remained in good standing under Missouri law. Id. at 423. The court reasoned that maintain an empty shell company in good standing was not enough to qualify as a Subchapter V debtor. Id.

Similarly, in In re Johnson, 2021 WL 825156, the individual debtors filed a joint chapter 7 case but later attempted to convert the same to a Subchapter V case. Id. at *1. One of the debtors owned and managed several oil and gas companies that were defunct before the petition date. Id. at *2. As of the petition date, neither of the debtors owned an interest in any operating business. Id. at *3. Accordingly, the bankruptcy court found that because "the evidence is clear that each of the Defunct Companies had ceased all commercial and business activities prior to the Petition Date and that Cord was not occupied with or otherwise busty in – i.e. 'engaged in' – any commercial or business activities with respect to the Defunct Companies" the debtors "failed to establish that Cord qualifies as a small business debtor for purposes of subchapter V of chapter 11 based upon his prior ownership and management of the Defunct Companies." Id. at *7

As in Thurmon and Johnson, the Debtor is not engaged in any commercial or business activity to reorganize and therefore is not eligible to proceed under Subchapter V and the designation should be stricken. See also In re McCune, 635 B.R. 409, 421-22 (Bankr. D. N.M. 2021) (holding individual debtors no eligible for subchapter V relief, despite ownership interest in defunct entity, where defunct entity "closed its doors and has no operated actively since 2016, and [debtor] voluntarily 'suspended' the corporation in 2019. [Entity] currently has no assets (other than 'some outstanding accounts receivable'), no revenue, no employees, no customers, and no vendors. Debtors are not involved in operating [entity], winding up or starting up its operations, collecting its accounts receivable, liquidating its assets, or conducting any other activities related to [entity], except defending claims in state court litigation by filing an appeal of an adverse judgment against [entity] and Debtors.")

**C.    THE DEBTOR HAS FAILED TO SHOW THAT THE BUSINESS DEBT IS MORE THAN 50% OF ALL DEBT**

As noted above, in determining eligibility under § 1182(1)(A) the Debtor must have "aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition … of [$2,725,625] …**not less than 50 percent of which arose from the commercial or business activities of the debtor.**" (emphasis added).

"The test for determining whether a debt should be classified as a business debt, rather than as a consumer debt, is whether it was incurred with an eye toward profit …[c]ourts must look at the substance of the transaction and the borrower's purposes in obtaining the loan, rather than merely looking at the form of the transaction." In re Martin, 2013 WL 5423954, at *6 (S.D. Tex. Sept. 26, 2013); See also In re Booth, 858 F.2d 1051, 1055 (5th Cir. 1988) (a debt incurred with an eye toward profit is a business debt, rather than consumer debt.)." In re Ventura, 615 B.R. 1, 19 (Bankr. E.D.N.Y. 2020).

The Debtor has not established that "not less than 50 percent of [his] debt" arose from commercial or business activities as required by § 1182(1)(A). See In re Crilly, 2020 WL 3549848, at *9 (Bankr. W.D. Okla. 2020) ("The key to identifying a small business debtor is … whether more than 50% of the debtor's debts arose from commercial or business activities.") (citing In re Ventura, 615 B.R. 1, 13 (Bankr. E.D.N.Y. 2020)); In re Blue, 2021 WL 1964085, at *8 (Bankr. M.D.N.C. May 7, 2021).

The Debtor's Schedules indicate that the Debtor has $5,950,857.65 of aggregate "noncontingent liquidated secured and unsecured debt." In the Debtor's Case Management Summary, the Debtor identified the following "Secured Creditors":

1. Wells Fargo in the approximate amount of $718,000 in connection with mortgage lien against the Debtor's Homestead.

2. Southstate Bank in the approximate amount of $147,000 in connection with a second mortgage lien against the Homestead.

3. Grow Financial in the approximate amount of $26,000 in connection with a lien on a 2018 Audi A5.

4. New York Life Insurance and Annuity Corporation in the approximate amount of $46,000 in connection with loans secured by the cash surrender value of two whole life insurance policies in the Debtor's name.

5. CPX in the original principal amount of $885,000.00 in connection with a pledge of all the Debtor's rights, title, and interest in 4.9 units of Ximplipay and 37,420 units of membership interest in CallPass, together with all the Debtor's rights to distributions, dividends, and proceeds therefrom.

None of the identified Secured Debt arises from any commercial or business activity of the Debtor. In the event the Debtor attempts to argue that the debt owed to CPX Holdings, LLC ("CPX") arises from the Debtor's operations of the Defunct Entities simply because the Debtor incurred the funds to purportedly resolve his criminal liability to the State for Florida stemming from the Debtor's failure to pay sales and use taxes to the Florida Department of Revenue, the Debtor is mistaken. First, tax liability is not a voluntary debt that arises as a result of a profit motive and therefore should not be considered "business debt" for purposes of determining eligibility under § 1182(1)(A). See IRS v. Westberry (In re Westberry), 215 F.3d 589, 591 (6th Cir. 2000) (holding that "tax debt is 'incurred' differently from a consumer debt" because it is not "voluntary on the part of the taxpayer."). Second, the criminal restitution that the Debtor was required to pay to the Florida Department of Revenue was not arise from the Debtor's commercial or business activity through the Defunct Entities, but instead arose due to the Debtor's fraudulent conduct in the Debtor's theft of State funds.[5]

---

[5] The "Probable Cause Affidavit" executed by Philip J. Wilk, a Revenue Investigator – Criminal Enforcement with the State of Florida, Department of Revenue, attached to the "Felony Information" sheet filed in Case Styled State of Florida v. Michael Kastrenakes, Case No. 20-11345-CF, provides that Mr. Wilk "reviewed bank statements and signature cards for the MK Automotive, Inc. bank accounts at Jefferson Bank, Harbor Community Bank and Center

The remainder of the Debtor's listed debt are comprised of the following unsecured debts:

1. $545,818.42 to Courtney Leasing;
2. $374,500 to Jeff Hacket;
3. $185,000 to Irene Pappas;
4. $1,000,000 to Evangeline Kastrenakes;
5. $1,850,000 to Pagon Kokolakis;
6. $23,000 to SouthState Bank;
7. $119,743.11 to U.S. Bank, N.A.; and
8. $29,749.48 to Westlake Flooring Co., LLC

Given the lack of details contained within the Schedules for each of the foregoing, Vasiloudes and Cygram presently are unsure as to what the purpose of each of the foregoing debt obligations were for and whether or not any of the foregoing sums were utilized in connection with the Debtor's commercial and business activities. To the extent each of the foregoing debt obligations were incurred in connection with the Debtor's fraud scheme perpetrated on Vasiloudes, Cygram, and others, then Vasiloudes and Cygram would submit that such debt was not incurred for purposes of a legitimate commercial or business activity.

WHEREFORE, Vasiloudes and Cygram respectfully move this Court to enter an order striking the designation of this chapter 11 case as a Subchapter V case under 11 U.S.C. § 1182, and granting any and all further relief as may be equitable and just.

DATED this 15th day of April, 2022.

/s/ John A. Anthony
**JOHN A. ANTHONY, ESQ.**
Florida Bar Number: 0731013
janthony@anthonyandpartners.com
**ANDREW J. GHEKAS, ESQ.**
Florida Bar Number: 0119169
aghekas@anthonyandpartners.com
**ANTHONY & PARTNERS, LLC**
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602

---

State Bank, obtained via subpoena from the Office of Bernie McCabe, State Attorney. These documents showed that Michael Kastrenakes was a signatory the accounts and exercised that authority. The monthly bank statements showed that Michael Kastrenakes had enough funds in the accounts to remit the collected sales tax and pay the Department of Revenue the taxes due."

Telephone: 813/273-5616<br>
Facsimile: 813/221-4113<br>
Attorneys for Vasiloudes and Cygram

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 15th day of April, 2022, a true and correct copy of the foregoing has been served through this Court's CM/ECF System, via E-mail, and/or U.S. Mail on the following parties:

**Notice has been served through E-mail to:**

Adam L Alpert on behalf of Creditor CPX Holdings, LLC
aalpert@bushross.com, bnkecf@bushross.com; ksprehn@bushross.com

Adam L Alpert on behalf of Interested Party Maria Kastrenakes
aalpert@bushross.com, bnkecf@bushross.com; ksprehn@bushross.com

John Blair Boyd on behalf of Creditor Grow Financial Federal Credit Union
bk@svllaw.com

Kathleen L DiSanto on behalf of Creditor CPX Holdings, LLC
kdisanto@bushross.com, bnkecf@bushross.com; ksprehn@bushross.com

Kathleen L DiSanto on behalf of Interested Party Maria Kastrenakes
kdisanto@bushross.com, bnkecf@bushross.com; ksprehn@bushross.com

Teresa M Hair on behalf of Creditor Wells Fargo Bank, N.A.
teresa.hair@brockandscott.com, WBECF@brockandscott.com

Amy Denton Harris on behalf of Debtor Michael Kastrenakes
aharris.ecf@srbp.com, srbpecf@srbp.com; aharris@srbp.com

Amy Denton Harris on behalf of Plaintiff Michael Kastrenakes
aharris.ecf@srbp.com, srbpecf@srbp.com; aharris@srbp.com

Danielle S Kemp on behalf of Creditor Courtney Leasing, Inc.
kempd@gtlaw.com, meyerp@gtlaw.com; FLService@gtlaw.com

Ruediger Mueller
trustee@tcmius.com, crm11@trustesolutions.net

Edward J. Peterson, III on behalf of Debtor Michael Kastrenakes
epeterson@srbp.com, epeterson.ecf@srbp.com; srbpecf@srbp.com

Edward J. Peterson, III on behalf of Plaintiff Michael Kastrenakes
epeterson@srbp.com, epeterson.ecf@srbp.com; srbpecf@srbp.com

United States Trustee - TPA
USTPRegion21.TP.ECF@USDOJ.GOV

Nicolette C Vilmos on behalf of Creditor NextGear Capital, Inc.
nicolette.vilmos@nelsonmullins.com, francis.santelices@nelsonmullins.com; christine.howard@nelsonmullins.com

Nicolette C Vilmos on behalf of Defendant NextGear Capital, Inc.
nicolette.vilmos@nelsonmullins.com, francis.santelices@nelsonmullins.com; christine.howard@nelsonmullins.com

Nathan A Wheatley on behalf of U.S. Trustee United States Trustee - TPA
nathan.a.wheatley@usdoj.gov

J Steven Wilkes on behalf of U.S. Trustee United States Trustee - TPA
steven.wilkes@usdoj.gov

**Notice has been served through U.S. Mail:**

Michael Kastrenakes
1755 McCauley Road
Clearwater, Florida 33764
Debtor

/s/ John A. Anthony
**ATTORNEY**