UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

MICHAEL KASTRENAKES,            Case No. 8:22-bk-01210-CED
                                                    Chapter 11
                                                    Subchapter V

           Debtor.
_____/

**DEBTOR'S AMENDED RESPONSE IN OPPOSITION TO
THE SUBCHAPTER V ELIGIBILITY OBJECTION**

Michael Kastrenakes (the "**Debtor**") responds in opposition to *Vasiloudes and Cygram's Objection to the Debtor's Subchapter V Designation* (Doc. No. 29) (the "**Eligibility Objection**") and *NextGear Capital, Inc.'s Joinder to Objection to Subchapter V Designation* (Doc. No. 46) (the "**Joinder**") and, for the reasons set forth herein, respectfully requests the entry of an order overruling the Eligibility Objection and finding that the Debtor is eligible to proceed under Subchapter V.  In support of his response, the Debtor represents the following:

**Introduction**

The statutory test for Subchapter V eligibility has four requirements: (1) the Debtor must be a person; (2) the Debtor's aggregate **noncontingent liquidated** secured and unsecured debts as of the date of the filing must not exceed $7,500,000 **excluding debts owed to affiliates or insiders**; (3) the Debtor must be "engaged in commercial or business activities"; and (4) at least fifty percent (50%) of the Debtor's debt must have arisen from "commercial or business activities" of the Debtor.  11 U.S.C. § 1182(1)(A).

Dr. Panyiotis Vasiloudes and Cygram Heritage, LLLP (the "**Vasiloudes Creditors**") and NextGear Capital, Inc. ("**NextGear**" and together with the Vasiloudes Creditors, the "**Objecting Creditors**") assert that the Debtor does not satisfy prongs 2 through 4 of the eligibility test.  The

Eligibility Objection asserts that the Debtor is not eligible for relief under Subchapter V because: (1) the Debtor's noncontingent liquidated scheduled debts exceed the debt limitation, which it asserts decreased from $7.5 million on March 26, 2022, to $2,725,625 on March 27, 2022; (2) the Debtor was not engaged in commercial or business activities as of the filing date; and (3) the Debtor has not established that at least fifty percent (50%) of his noncontingent liquidated debts arose from commercial or business activities. The Joinder joins the Eligibility Objection, but simply asserts that the Debtor's total scheduled debts of $14,991,390.74 exceed both the $7.5 million debt limit and the reduced $2,725,625 debt limit.

The Debtor is eligible for relief under Subchapter V and the Eligibility Objection should be overruled because: (1) as of the filing date, the Debtor's **noncontingent liquidated** secured and unsecured debts were $3,085,322.27 excluding debts owed to affiliates or insiders, and that is significantly less than the applicable $7.5[1] million debt limitation; (2) as of filing date, the Debtor was engaged in collecting accounts receivable, liquidating and monetizing other non-liquid assets, and pursuing claims held by entities owned by the Debtor, and such activities constitute commercial or business activities; and (2) $3,058,900.55of the Debtor's $3,085,322.27 scheduled noncontingent liquidated debts excluding debts owed to affiliates or insiders, or ninety-nine percent (99%), were incurred to sustain commercial enterprises owned and operated by the Debtor.

## Statement of Facts

The Debtor filed this Chapter 11 case on March 27, 2022 (the "**Petition Date**") and made an election to proceed under Subchapter V following the failure of multiple businesses in which he had an ownership interest, including restaurants, real estate investment companies, rental car

---

[1] This case was filed on March 27, 2022, when the $7.5 million debt limit was in place pursuant to the CARES Act, as amended by the COVID-19 Bankruptcy Relief Extension Act of 2021. Fed. R. Bankr. P. 9006(a) applies to the computation of the period that is "two years after the date of enactment", therefore the $7.5 million debt limit remained in effect until March 28, 2022. *See* Section I of Argument below.

agencies, and auto sales, leasing, and financing companies. Despite these business failures, the Debtor was engaged wind-down activities related to these businesses, managing other business investments for the benefit of creditors, and managing entities in which he does not hold an ownership interest.

As of the Petition Date, the Debtor owned (and continues to own) fifty percent (50%) of Kaz Reinsurance FL LLC ("**Kaz**"), an offshore reinsurance company. Kaz is an active entity with assets and operations. As of the Petition Date, Kaz had approximately $400,000 on deposit in bank accounts, active reinsurance contracts, as well as pending and potential claims. The Debtor believes that there will be dividends available upon expiration of the reinsurance contracts. As of the Petition Date, the Debtor was and remains actively involved in managing his investment in Kaz for the benefit of creditors.

As of the Petition Date, the Debtor owned (and continues to own) one hundred percent (100%) of New Wave Auto Finance, Inc. ("**New Wave Finance**") and MK Automotive, Inc. d/b/a New Wave Auto Sales ("**MK Auto**"). As of the Petition Date, New Wave Finance and MK Auto each had more than $1.3 million in accounts receivable outstanding, for a total of more than $2.6 million in receivables. The Debtor is engaged in efforts to collect the receivables of New Wave Finance and MK Auto. The accounts receivable reports contain customer sensitive information but are available in redacted format upon request to counsel for the Debtor.

As of the Petition Date, the Debtor owned (and continues to own) fifty percent (50%) of New Wave Acceptance, LLC ("**New Wave Acceptance**") and was (and continues to be) a Manager of New Wave Acceptance. Accordingly, the Debtor has fiduciary duties and related obligations to the company, its members, and its creditors pursuant to the Operating Agreement as well as Chapter 605 of the Florida Revised Limited Liability Company Act. As of the Petition

Date, the Debtor was actively engaged in managing New Wave Acceptance. New Wave Acceptance remains active with the State of Florida to permit the Debtor to liquidate and monetize its assets and otherwise wind it down. As of the Petition Date, New Wave Acceptance owned stock in Atlas Bank (a Puerto Rican bank) which the Debtor believes has significant value. The Debtor is continuing his efforts to sell or exchange the Atlas Bank shares. New Wave Acceptance is also a defendant in two lawsuits, one brought by the Vasiloudes Creditors, and one brought by First Home Bank. The Debtor continues to manage the pending litigation on behalf of New Wave Acceptance.

As of the Petition Date, the Debtor owned (and continues to own) minority interests in Platinum Auto Finance of Tampa Bay, LLC ("**Platinum Auto Finance**") (13%), CallPass, LLC ("**CallPass**") (3.69%), and Ximplipay, LLC (**Ximplipay**") (4.9%). All of the entities are active with the State of Florida, and are operating entities with assets. CallPass and Ximplipay have historically made distributions to their members, including the Debtor. As of the Petition Date, the Debtor was and remains actively involved in managing his investments in CallPass and Ximplipay for the benefit of creditors. Platinum Auto Finance is also a defendant in two lawsuits, one brought by the Vasiloudes Creditors and one brought by Thomas Zervas and Papaspanos Konstantinos.

In addition, the Debtor is currently employed as the Director of Sales for Mid-Atlantic Finance Co., Inc. ("**Mid-Atlantic**") and the President of Consumer Auto Xchange ("**Consumer Auto**"), companies in which he does not have an ownership interest.

## Argument

At issue are the second, third, and fourth prongs of the statutory test, i.e. whether (2) the Debtor's aggregate **noncontingent liquidated** secured and unsecured debts as of the date of the

filing exceed $7,500,000 **excluding debts owed to affiliates or insiders**; (3) the Debtor was "engaged in commercial or business activities" as of the Petition Date; and (4) at least fifty percent (50%) of the Debtor's debt arose from "commercial or business activities" of the Debtor. As set forth below, Debtor satisfies all three of these prongs (and the first prong is not in dispute) and is therefore eligible to proceed under Subchapter V.

**I.    As of the Petition Date, the Debtor's noncontingent liquidated secured and unsecured debts were significantly less than the applicable debt limitation.**

   **A.    The debt limit applicable to this case is $7.5 million pursuant to the CARES Act, as amended.**

The debt limit applicable to this case is $7.5 million as provided by the CARES Act, Public Law 116-136. The CARES Act was enacted on March 27, 2020. Section 1113 of the CARES Act, subsection (5), provided as follows: "On the date that is one year after the date of enactment of this Act, Section 1182(1) of title 11 United States Code, is amended to read as follows: "(1) Debtor – the term 'debtor' means a small business debtor." Subsequently, on March 27, 2021, the COVID-19 Bankruptcy Relief Extension Act of 2021 was enacted, and it amended the sunset provision in Section 1113 of the CARES Act to substitute "two years" for "one year" in the sunset provision.

Pursuant to Fed. R. Bankr. P. 9006(a), the 2-year period during which debtors could file a petition and elect Subchapter V status, qualifying for the increased $7.5 million debt limit, expired on Monday, March 28, 2022. This case was filed on March 27, 2022, therefore, the applicable debt limit for eligibility is $7.5 million.

Rule 9006(a) reads as follows:

(a) Computing Time. The following rules apply in computing any time period specified in these rules, in the Federal Rules of Civil Procedure, in any local rule or court order, or in any statute that does not specify a method of computing time.

5

> (1) Period Stated in Days or a Longer Unit. When the period is stated in days or a longer unit of time: (A) exclude the day of the event that triggers the period; (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Rule 9006(a) has been applied by bankruptcy courts interpreting many varied statutes and rules. It has been applied, among other contexts, (1) to extend the 30-day period in §547(c)(3), *In re Daniel,* 619 B.R. 635, 641 (Bankr. W.D. Tex. 2020)(stating that the majority view was to apply Rule 9006(a) to extend the 30 day period and rejecting the argument that Rule 9006(a) could not apply to extend a 'substantive' right); (2) to extend the one year period in §727(e) for the trustee to request a revocation of a discharge, *In re Runkle,* 333 B.R. 734, 738-39 (Bankr. D. Md. 2005); and (3) to extend the sixty-day period for a creditor to file a nondischargeability complaint set forth in Fed. R. Bankr. P. 4007(c), *In re Weber,* 444 B.R. 516, 520 (Bankr. E.D. Pa. 2010).[2]

In *In re General Creations, Inc.,* 343 B.R. 548, 550-551 (Bankr.W.D. Va. 2006), the Court ruled that Rule 9006(a) applied to the computation of the applicable 2-year period set forth in Section 546(a). The language being interpreted by the court there ("two years after the entry of the order for relief") is similar to the language in the CARES Act, as amended ("two years after the date of enactment"). The court in *In re General Creations* held that Rule 9006(a) applied to the computation of the two-year period. The last day of the period computed in that case was a Friday. The order for relief had been filed on July 22, 2003, thus, the two-year period began to

---

[2] In *In re Gray,* 492 B.R. 923, 926 (Bankr. M.D. Fla. 2013), Judge Williamson ruled that Fed. R. Bankr. P. 9006(a) did not apply to extend the deadline for filing an objection to discharge when the deadline had fallen on a Sunday, because the deadline for filing had been set by court order for a date certain – March 1, 2013 and then extended by agreed order to another date certain – March 31, 2013. "By its express terms, Rule 9006 applies only where a time period must be computed-not when a fixed time to act is set." *Id.*

run on July 23, 2003. The two-year period therefore expired on July 22, 2003, two calendar years from July 23, 2003. *Id.*

Applying Rule 9006(a) to computing the 2-year period specified in the amended CARES Act under the anniversary rule reasoning of *In re General Creations,* the enactment date of March 27, 2020, which triggered the two year period is excluded, and the two year period began to run on March 28, 2020, and expired on March 27, 2022. However, because March 27, 2022 was a Sunday, Rule 9006(a)(1)(C) provides that the period continued to run until the end of the next day, or Monday, March 28, 2022. Therefore, this case, which was filed on March 27, 2022, is governed by the CARES Act, as amended by the Covid-10 Bankruptcy Act, and qualifies for the increased $7.5 debt limit. *See also In re Runkle,* 333 B,R, 734, 738-39 (Bankr.D. Md. 2005)(applying Rule 9006(a) to extend one year period set forth in Section 727(e)(1) for the trustee to request the revocation of a discharge by one day when last day fell on Sunday).[3]

    **B.**    **The Debtor's aggregate noncontingent liquidated secured and unsecured debts totaled $3,085,322.27 as of the Petition Date, excluding debts owed to affiliates or insiders.**

The Debtor's schedules reflect that as of the Petition Date the Debtor had $14,991,390.74 in total debt. However, only $3,085,322.27 of that debt counts toward the $7.5 million debt limit because Section 1182(1)(A) of the Bankruptcy Code excludes contingent debt, unliquidated debt, and debts owed to affiliates or insiders. The noncontingent, liquidated, non-insider obligations are comprised of the following:

| | |
|---|---|
| Courtney Leasing | 540,273.08 |
| CPX Holdings, LLC | 885,000.00 |
| Grow Financial | 26,421.72 |

---

[3] In *In re Runkle,* the Court also discussed the "substantive" versus "procedural" distinction adopted by some courts, and stated that based upon *American Canoe Ass'n, Inc. v. City of Attalla,* 363 F.3d 1085, 1088 (11th Cir. 2004), the Eleventh Circuit is among those who have determined that it is not necessary to make a distinction between "substantive" and "procedural" for purposes of determining whether Rule 9006(a) applies.

| | |
|---|---|
| Irene Pappas, Trustee of the Irene | 185,000.00 |
| Jeff Hackett | 374,500.00 |
| New York Life Insurance and Annuity Corp. | 46,501.00 |
| SouthState Bank | 146,945.64 |
| SouthState Bank | 23,361.00 |
| U.S. Bank | 119,743.11 |
| Well Fargo Mortgage | 707,827.24 |
| Westlake Flooring Co., LLC | 29,749.48 |
| Total | $3,085,322.27 |

The remaining $11,906,068.40 in scheduled debt was contingent or unliquidated, or both, or a debt owed to an insider. The Debtor satisfies the first prong of the statutory test is because the Debtor's qualifying debt is significantly less than the applicable $7.5 million debt limit.

**II.     The Debtor is engaged in commercial or business activities within the meaning of Section 1182(1)(A) of the Bankruptcy Code.**

"Commercial or business activities" within the context of § 1182(1)(A), a phrase not defined by the Bankruptcy Code, has been interpreted broadly by the courts, including those in this district. *See, e.g. In re Vertical Mac,* 2021 WL 3668037, *3 (Bankr. M.D. Fla. 2021); *In re Ikalowych,* 269 B.R. 261, 277 (Bankr. D. Co. 2021). Indeed, in *In Re Ellingsworth Residential Comm. Ass'n, Inc.,* 2021 WL 3908525 (M.D. Fla. 2021), the District Court held that the phrase "commercial or business activities" did not require that the debtor's actions be motivated by profit; therefore, a debtor engaged in a not-for-profit business could qualify for Subchapter V status. *Id.* at *3. The activities of the Debtor in this case certainly qualify him to elect Subchapter V status, both under the plain meaning of the statute and the case law interpreting it.

**A.     The Debtor is engaged in collecting accounts receivable, liquidating and monetizing other non-liquid assets, and pursuing claims held by entities owned by the Debtor, and such activities constitute commercial or business activities.**

A debtor does not have to have an operating business to be eligible to proceed under Subchapter V. "[H]ad Congress utilized the term operations instead of activities, an operating

8

business would be required, but it did not. Congress could have chosen different terms, but instead chose very broad language." *In re Offer Space, LLC,* 629 B.R. 299, 306 (Bankr. D. Utah 2021).

*In re Vertical Mac Construction, LLC,* 2021 WL 3668037, *3 (Bankr. M.D. Fla. 2021), the court held that the term "activities" in the context of "commercial and business activities" was broad and could include activities undertaken in the context of the winddown of a business that was no longer operating, including maintaining bank accounts, working with insurance adjusters and defense counsel to resolve construction claims, and engaging in efforts to sell assets. *Id.*

As set forth in the Statement of Facts above, which the Debtor adopts and incorporates herein, these are precisely the activities that the Debtor is engaged in. The Debtor is actively collecting accounts receivable, liquidating and monetizing other non-liquid assets, and pursuing claims held by entities owned by the Debtor, and such activities constitute commercial or business activities within the meaning of Section 1182(A)(1) of the Bankruptcy Code.

Other courts have also recognized that activities such as these on behalf of a business which is no longer operating constitute engagement in commercial or business activities for purposes of Section 1182(A)(1) of the Bankruptcy Code. *In re Ikalowych*, 620 B.R. 261, 284-285 (Bankr. D. Co. 2021) (performing wind-down work of about twelve hours a month such as storing business records and dealing with tax accountants and tax issues was engaging in commercial or business activities); *In re Port Arthur Steam Energy, L.P.,* 629 B.R. 233, 237 (Bankr. S.D. Tex. 2021) (the statute "does not require a debtor to maintain its core or historical activity on the petition date"; actively pursuing litigation against a third party and other wind down work qualified as active engagement in a commercial or business activity); *In re Offer Space, LLC,* 629 B.R. 299, 306 (Bankr. D. Utah 2021) (exploring counterclaims in a lawsuit, maintaining a bank account, managing assets consisting of stock, having accounts receivable and "taking reasonable steps to

pay its creditors and realize value for its assets" was active engagement in a commercial or business activity); *In re Wright,* 2020 WL 2193240, *3 (Bankr. E.D. La. July 16, 2020) (addressing residual business debt was engaging in business activities).

Movants rely heavily on *In re Johnson*, 2021 WL 825156 (Bankr. N.D. Tex. 2021). That case is distinguishable, however, because there it was undisputed that as of the petition date, the debtors were not involved in any activities on behalf of the former companies which they had previously operated. *Id.* at 7. No evidence was presented that the debtor in *Johnson* was occupied with any wind-down or other activities on behalf of those businesses. Another difference between the *Johnson* case and this one is the manner in which the debtor's Subchapter V election arose. The debtors in *Johnson* had filed a Chapter 7, and only elected to attempt to convert the case to a Subchapter V to avoid the United States Trustee's discharge objection. *Id.* at 1.

### B. The Debtor's employment with Mid-Atlantic Auto and Consumer Auto also qualify as commercial or business activities.

In addition to the wind-down activities discussed above, the Debtor is also actively engaged in commercial or business activities as the Director of Sales of Mid-Atlantic and the President of Consumer Auto. In *In re Ikalowych,* 629 B.R. 261, 286 (Bankr. D. Co. 2021), the Court held that "[u]nder the exceptionally broad scope of the Section 1182(1)(A) 'commercial or business activities' requirement, . . . the Debtor's work as a wage earner . . . constitutes 'commercial or business activities'". Likewise, the Debtor's work as the Director of Sales of Mid-Atlantic Auto and the President of Consumer Auto also qualifies as commercial or business activities which make him eligible to proceed under Subchapter V. The *Ikalowych* court recognized that this conclusion suggests that virtually all private sector wage earners could be considered to be engaged in "commercial or business activities". *Id at* 287. "There is no reason that 'commercial or business activities' are somehow reserved only for business titans, company owners, or management. Every

10

non-governmental worker has their role to play in private sector commerce or business." *Id.* The *Ikalowych* court pointed out, however, that this does not mean that every private sector wage earner is eligible for Subchapter V relief, due to the additional requirement that not less than 50% of the Debtor's aggregate noncontingent liquidated secured and unsecured debts must have arisen from the commercial or business activities of the Debtor. *Id.* The typical wage earner, reasoned the *Ikalowych* court, will "almost never be putting his own capital at risk and incurring debts which arise from his work." *Id.*

Again, the Objecting Creditors rely on *Johnson* for the proposition that a debtor who is an employee and officer of a company in which he has no ownership interest cannot be actively engaged in commercial or business activities for purposes of § 1182(1)(A). The *Johnson* court's holding was based on that court's view that to be engaged in "commercial or business activities" "a person must be engaged in the exchange or buying and selling of economic goods for profit", narrowly defined as the debtor's own profit. As discussed above, the Middle District of Florida in the *Ellingworth* case held that a profit motive was not necessary in order to qualify as a Subchapter V debtor. In addition, the debtor in *Johnson* did not contend that being an employee was engagement in commercial or business activities. Instead, he argued that he was engaged in commercial or business activities because he was an officer of an entity. The *Johnson* court rejected this argument and, without much reasoning, simply concluded that neither an employee nor an officer of a company can be engaged in commercial or business activities without an ownership interest. The Debtor submits that the *Ikalowych* court considered the issue of whether an employee is engaged in commercial or business activities and therefore can qualify as a Subchapter V debtor more carefully than did the *Johnson* court, and that the *Ikalowych* court reached the correct result.

The Objecting Creditors also cite *In re Rickerson,* 636 B.R. 416 (Bankr. W.D. Pa. 2021) for the proposition that an employee cannot be engaged in commercial or business activities. There, the court did briefly discuss *Ikalowych*. The *Rickerson* court's stated that if employment status were sufficient, virtually everyone would qualify as a Subchapter V debtor. Although the *Rickerson* court cited *Ikalowych,* it failed to address the *Ikalowych* court's finding that the requirement that 50% of a debtor's debts be related to its commercial or business activities ensures that most employees will not qualify for Subchapter V. The Debtor submits that: (1) the *Ikalowych* decision is better reasoned; (2) this Court should follow *Ikalowych*; (3) this Court should find that the Debtor is engaged in commercial or business activities as a result of his employment as Director of Sales for Mid-Atlantic Auto and President of Consumer Auto, considered together and in totality with the Debtor's wind-down activities on behalf of his business entities.

The sole remaining issue is whether at least fifty percent (50%) of the Debtor's debt arose from the commercial and business activities of the Debtor.

### III. More than fifty percent of the Debtor's aggregate noncontingent liquidated debt arose from the Debtor's commercial or business activities.

Section 11812(1)(A) requires that "not less than 50 percent of" the qualifying noncontigent, liquidated, non-insider debt arise from commercial or business activities of the Debtor. *In re Blue*, 630 B.R. 179, 190-91 (Bankr. M.D.N.C. 2021) holds that the plain language of § 1182(1)(A) does not mandate that the Debtor's scheduled business debts be related to her current business activities. The Debtor did not need to show a nexus between the business or commercial activities in which the debtor is currently engaged and the business and commercial activities from which the debts on the petition arose, as the bankruptcy administrator in the case had argued. *Id.* at 191. Accordingly, the Debtor in this case does not need to show that the debts on his bankruptcy petition arose from the same commercial or business activities in which he is currently engaged.

As set forth above, the Debtor's schedules reflect that as of the Petition Date the Debtor had $14,991,390.74 in total debt.  However, only $3,085,322.27 of that debt counts toward the $7.5 million debt limit because Section 1182(1)(A) of the Bankruptcy Code excludes contingent debt, unliquidated debt, and debts owed to affiliates or insiders.  The noncontingent, liquidated, non-insider obligations are comprised of the following:

| | |
|---|---|
| Courtney Leasing | 540,273.08 |
| CPX Holdings, LLC | 885,000.00 |
| Grow Financial | 26,421.72 |
| Irene Pappas, Trustee of the Irene | 185,000.00 |
| Jeff Hackett | 374,500.00 |
| New York Life Insurance and Annuity Corp. | 46,501.00 |
| SouthState Bank | 146,945.64 |
| SouthState Bank | 23,361.00 |
| U.S. Bank | 119,743.11 |
| Well Fargo Mortgage | 707,827.24 |
| Westlake Flooring Co., LLC | 29,749.48 |
| Total | $3,085,322.27 |

The remaining $11,906,068.40 in scheduled debt was contingent or unliquidated, or both, or a debt owed to an insider.

Of the $3,085,322.27 in noncontingent liquidated debts, $3,058,900.55 or ninety-nine percent (99%), were incurred to sustain commercial enterprises owned and operated by the Debtor. The only debt that did not arise from commercial or business activities was the car loan made to the Debtor by Grow Financial for the purchase of a 2018 Audi A5.  All of the other obligations listed above, including the first and second mortgages on the Debtor's homestead as well as the life insurance loans, were transactions where the Debtor borrowed funds collateralized by his personal assets for use by commercial or business enterprises that he owned or operated. Accordingly, the Debtor satisfies the fourth prong of the eligibility test.

WHEREFORE, the Debtor respectfully requests that this Court enter an order finding that the Debtor is eligible to proceed under Subchapter V, overruling the Eligibility Objection, and providing such other and further relief as is just and proper.

> */s/ Amy Denton Mayer*
> Edward J. Peterson (FBN 0014612)
> Amy Denton Mayer (FBN 0634506)
> Becky Ferrell Anton (FBN 0449342)
> Stichter, Riedel, Blain & Postler, P.A.
> 110 East Madison Street, Suite 200
> Tampa, Florida 33602
> Telephone:  (813) 229-0144
> Email:  epeterson@srbp.com ; amayer@srbp.com;
> bfanton@srbp.com
> Attorneys for Debtor

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that true and correct copies of the foregoing have been furnished on this 6th day of May, 2021, by the Court's CM/ECF electronic noticing to all parties receiving electronic noticing.

> */s/ Amy Denton Mayer*
> Amy Denton Mayer