UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

MICHAEL KASTRENAKES,                    Case No. 8:22-bk-1210-CED

      Debtor.

_____/


### Disclosure Statement and Plan of Reorganization for Debtor Under Chapter 11


### Background


### A.  Description and History of the Debtor's Businesses

The Debtor is an individual, who is the Director of Sales for Mid-Atlantic Finance Co., Inc. ("**Mid-Atlantic**") and the President of Consumer Auto Xchange ("**Consumer Auto**").   He receives approximately $15,000.00 per month in compensation from Mid-Atlantic and approximately $6,666.67 per month in compensation from Consumer Auto.   The Debtor does not have any ownership interest in Mid-Atlantic or Consumer Auto, for a total of approximately $21,666.67.

Prior to his employment with Mid-Atlantic, the Debtor derived the bulk of his income from ownership interests in various entities, including restaurants, real estate investment companies, rental car agencies, auto sales, auto leasing, and auto financing as set forth below:

| Entity | Ownership Interest | Status |
|---|---|---|
| Preferred Rent-A-Car, Inc. | 0% | No assets or operations; Voluntary dissolution 10/3/2008 |
| Pinellas Auto Sales & Service, Inc. | Unknown | No assets or operations; Voluntary dissolution 1/4/1993 |
| New Wave Auto Finance, Inc. ("**New Wave Finance**") | 100% | Administrative dissolution 9/24/2021 |
| Thrifty Auto Service, LLC | 100% | No assets or operations; Administrative dissolution 9/25/2009 |
| Platinum Auto Finance B, LLC | 100% | Formed but never any assets or operations; Administrative dissolution |

| | | 9/28/2012 |
|---|---|---|
| Platinum Auto Finance C, LLC | 100% | Formed but never any assets or operations; Administrative dissolution 9/28/2012 |
| Healthy You Tampa Bay, LLC | 50% | Formed but never any assets or operations; Administrative dissolution 9/28/2012 |
| Platinum RE Holdings, LLC | 50% | Single asset real estate entity; property sold in 2021; no remaining assets or operations |
| Pasadena Acceptance Finance, LLC | Unknown | Has negative equity and insufficient cash flow to service its debt |
| New Wave Acceptance, LLC ("**New Wave Acceptance**") | 50% | Has negative equity and insufficient cash flow to service its debt |
| MLH Solutions 2, LLC | 50% | No assets or operations Administrative dissolution 9/24/2021 |
| KTK, LLC | Unknown | No assets or operations; Administrative dissolution 9/27/2019 |
| Price Rent-A-Car, L.C. | 100% | No assets or operations; Administrative dissolution 10/4/2002 |
| MK&B Enterprises, Inc. | Unknown | No assets or operations; Administrative dissolution 9/26/2008 |
| MK Automotive, Inc. d/b/a New Wave Auto Sales ("**New Wave Sales**") | 100% | Has negative equity and insufficient cash flow to service its debt |
| Preferred Vehicle Lease, Inc. | Unknown | No assets or operations; Voluntary dissolution 9/2/2003 |
| Preferred Car Sales, Inc. | Unknown | No assets or operations; Administrative dissolution 10/4/2002 |
| Instant Car Offer, LLC | 16% | No assets or operations; Administrative dissolution 9/24/2021 |

As of the Petition Date, New Wave Finance and MK Auto each had accounts receivable with a face value of more than $1.3 million in, for a total of more than $2.6 million.   Collectability of the receivables is uncertain.   In addition, the receivables are pledged to creditors of New Wave Finance and MK Auto.

New Wave Acceptance remains active with the State of Florida to permit the Debtor to liquidate and monetize its assets and otherwise wind it down.   As of the Petition Date, New Wave Acceptance owned stock in Atlas Bank (a Puerto Rican bank).   Currently, the market for the stock is uncertain, however, the Debtor is continuing his efforts to sell or exchange the Atlas Bank shares for the benefit of creditors.

The Debtor's remaining business interests are passive investments in entities in which he holds a minority interest and a fifty percent (50%) interest in an offshore reinsurance company.   A list of these interests is set forth below:

| Entity | Ownership Interest | Liens |
|---|---|---|
| Platinum Auto Finance of Tampa Bay, LLC ("**Platinum Auto Finance Tampa Bay**") | 13% | |
| CallPass, LLC ("**CallPass**") | 37,240 units (3.687129%) | Membership interests are pledged to CPX Holdings, LLC ("CPX") |
| Ximplipay,                LLC ("**Ximplipay**") | 4.9 units (4.9%) | Membership interests are pledged to CPX |
| Kaz Reinsurance FL LLC ("**Kaz Reinsurance**") | 50% | Membership interests are pledged to First Home Bank |

Platinum Auto Finance Tampa Bay is operating; however, the Debtor does not control its operations.   The company is highly leveraged and has negative retained earnings.   Accordingly, it has not been making distributions to members.

CallPass is operating and has historically made quarterly distributions to its members, however, the Debtor did not receive any distributions in 2021.   The Debtor's distributions, if any, from CallPass are encumbered by liens in favor of CPX Holdings, LLC ("**CPX**") pursuant to a Membership Units Pledge and Security Agreement.

Ximplipay is operating and has historically made quarterly distributions to its members.   As reflected by the Debtor's K-1 from Ximplipay, the Debtor received $31,325 in distributions in 2021.   The Debtor's distributions, if any, from Ximplipay are encumbered by liens in favor of CPX pursuant to a Membership Units Pledge and Security Agreement.

Kaz Reinsurance is an offshore reinsurance company that operated in conjunction with the Debtor's auto sales and leasing businesses.   As of the Petition Date, Kaz had approximately $400,000 on deposit in bank accounts, active reinsurance contracts, as well as pending and potential claims.   The Debtor believes that there will be dividends available upon expiration of

4891-1519-4132, v. 12

the reinsurance contracts, however, Kaz is not currently making distributions to its members.   The Debtor's distributions, if any, from Kaz Reinsurance are encumbered by liens in favor of First Home Bank pursuant to a pledge.

Immediately prior to becoming the Director of Sales for Mid-Atlantic and the President of Consumer Auto, the Debtor owned and operated a consortium of auto businesses that sold, leased, and financed vehicles (the "**Auto Businesses**"), primarily in the subprime market.   At their peak, the Auto Businesses were a $60 million enterprise with multiple locations and approximately 75 employees.   Unfortunately, their cost of operating capital was high—approximately 14%.   That resulted in thin margins in an industry with high default rates.

The Debtor managed Platinum Auto Finance Tampa Bay until 2017 when the company decided to change course.   After the Debtor's departure as manager, the company took a downward spiral, which resulted in a capital call to all members and a conversion of debt to membership interests. In order to preserve his ownership interests, the Debtor was required to contribute $1.1 million. The Debtor infused $300,000 in cash and borrowed the remaining funds to cover his capital call. Today, the company has negative retained earnings and is not making any distributions to members.

In 2018, Capital One Auto Finance ceased direct lending to finance companies and failed to renew New Wave Finance's $6.5 million line of credit.   This required New Wave Finance to sell off its negotiable paper portfolio at a significant discount in order to pay the maturing line of credit.

In 2018, New Wave Sales partnered with another company to conduct offsite sales events throughout Florida.   This partnership resulted in exponential growth.   However, in 2019 and 2020, New Wave Sales experienced significant losses due to chargebacks from early termination of warranties and after-market products as well as buy backs due to allegations of misrepresentation by the partner company.   New Wave Sales terminated the business relationship, but the expenses had already been incurred.   The company hoped to recoup its losses in March and April of 2020, which are typically some of the busiest months in the auto sales industry. Unfortunately, in March 2020, the COVID-19 pandemic forced an immediate, but temporary shutdown of the Auto Businesses.   The businesses reopened and worked hard to rebound.   New Wave Sales applied for $2 million in disaster relief assistance.

While the request for relief was pending, New Wave Sales had a continuing need for funding from its secured lender, NextGear Capital, Inc. ("**NextGear**").   On April 15, 2020, New Wave Sales reached an agreement with NextGear regarding the parties' continued lending relationship. Unbeknownst to New Wave Sales and the Debtor, while the parties were negotiating the terms of the agreement, NextGear sent letters to New Wave Sales' creditors, including Bank of America, Centerstate Bank, Jefferson Bank of Florida, Automotive Finance Corporation, CT Corporation System, Republic Bank & Trust Company, and Great America Financial Services Corporation (the "**Finance Companies**").   The letters indicated that New Wave Sales was in default on its obligations to NextGear and that NextGear intended to repossess and sell New Wave Sales' inventory.

After sending the letters, NextGear admitted to New Wave Sales that the letters should not have been sent to the Finance Companies.  However, the damage had already been done.  Upon receipt, the Finance Companies discontinued New Wave Sales' lines of credit and ceased doing business with New Wave.  This caused a ripple effect throughout the Auto Businesses and ultimately caused them all to shut down.

After the Auto Businesses ceased operations, litigation ensued.  On March 9, 2021, Thomas Zervas ("**Zervas**") and Konstantinos Papaspanos ("**Papaspanos**") filed a two-count complaint in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida against New Wave Finance, the Debtor, and Maria Kastrenakes seeking to collect on a promissory note and for unjust enrichment.  *See* Case No. 21-001223-CI (the "**Zervas Papasnos Litigation**").  On August 12, 2020, NextGear filed a five-count complaint in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida (the "**NextGear Litigation**") against, inter alia, New Wave Sales and New Wave Finance seeking damages and replevin, and against the Debtor and Maria Kastrenakes seeking to collect on a personal guarantee.  *See* Case No. 20-003846-CI.

On February 20, 2022, Dr. Panayiotis Vasiloudes ("**Vasiloudes**") and Cygram Heritage, LLLP ("**Cygram**") filed a seven-count complaint in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida against, inter alia, New Wave Acceptance, Platinum Auto Finance Tampa Bay, New Wave Sales, New Wave Finance, Maria Kastrenakes, and the Debtor in connection with loans made to, investments made in, and guarantees executed in connection with the Auto Businesses.  *See* Case No. 2022-CA-000829-CI.  On February 28, 2022, Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, Cygram Holdings, LP, Trifon Houvardas, and K&M Insurance Investors, LLC filed a five-count complaint against, inter alia, the Debtor in connection with loans made to, investments made in, and guarantees executed in connection with the Auto Businesses.  *See* Case No. 2022-CA-000956-CI and together with Case No. 2022-CA-000829-CI, collectively, the ("**Vasiloudes Litigation**").

Prior to the Petition Date, the Florida Department of Revenue (the "**FDOR**") asserted that the Debtor owed it approximately $2 million as a responsible party in connection with sales and use taxes payable by the Debtor's Auto Businesses and as criminal restitution.   The Debtor entered into a settlement agreement with the FDOR.   The Debtor obtained the funds for the settlement amount by borrowing funds from CPX Holdings, with the balance coming from non-debtor sources.   The CPX Holdings loan is secured by a pledge of the Debtor's membership interests in CallPass and Ximplipay and is perfected by a UCC-1 financing statement filed with the Florida Secured Transaction Registry, Document No. 20220091038X.

Given the failed business ventures, the litigation stemming therefrom, and mounting legal bills to defend the litigation, the Debtor had no choice but to file this Chapter 11 case in an effort to restructure his debts for the benefit of all creditors.   On March 27, 2022 (the "**Petition Date**"), the Debtor filed with United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "**Bankruptcy Court**") a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and made an election to proceed under Subchapter V of the Small Business Reorganization Act of 2019, as amended.   On June 13, 2022, the Debtor filed an amended petition eliminating the Subchapter V election.

On April 6, 2022, the Debtor filed a complaint and a motion with the Bankruptcy Court seeking an injunction to prohibit the plaintiffs in the NextGear Litigation, the Zervas Papaspanos Litigation, and the Vasiloudes Litigation (collectively, the "**State Court Litigation**") from proceeding against Maria Kastrenakes pending confirmation of a plan.   Thereafter, the Debtor removed the State Court Litigation to the Bankruptcy Court.   Several parties to the removed litigation have filed motions to remand to state court.   The motions for remand are set for hearing on August 8, 2022.

On May 16, 2022, two new complaints were filed against the Debtor in the Bankruptcy Court: *Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, and Cygram Holdings, L.P. vs. Michael Kastrenakes*, Adv. Case No. 8:22-ap-95-CED and *Cygram Heritage, LLLP, Derivatively, on behalf of New Wave Acceptance, LLC vs. Michael Kastrenakes and New Wave Acceptance, LLC*, Adv. Case No. 8:22-ap-96-CED.   Both complaints assert that the Debtor's obligation to the creditors should be excepted from discharge under various subsections of 11 U.S.C. § 523.   One of the complaints also contains a count for civil theft and seeks treble damages.   The Debtor is filed motions to dismiss both complaints for failure to state a cause of action.   The motions to dismiss are set for hearing on August 8, 2022.

On June 20, 2022, an additional complaint was filed against the Debtor in the Bankruptcy Court: *Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, Cygram Holdings, L.P., Trifon Houvardas, and K&M Insurance Investors, LLC vs. Michael Kastrenakes*, Adv. Case No. 8:22-ap-118-CED. The complaint objects to and seeks to equitably subordinate the claims of various family members of the Debtor.   The Debtor is filing a motion to dismiss the equitable subordination complaint.

Below is a list of the currently pending litigation (the "**Pending Litigation**"):

| Style | Case No. |
|---|---|
| In re:   Michael **Kastrenakes**, Debtor | 22-bk-1210 |
| **Kastrenakes** v. NextGear Capital, Inc., Panayiotis Vasiloudes, Cygram Heritage, LLLP, Thomas Zervas, and Konstantinos Papaspanos | 22-ap-55 |
| Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, and Cygram Holdings, LP v. **Kastrenakes** | 22-ap-95 |
| Cygram Heritage, LLLP o/b/o New Wave Acceptance v. **Kastrenakes** | 22-ap-96 |
| NextGear Capital v. MK Automotive, Inc. d/b/a New Wave Auto Sales, Maria J. Kastrenakes, **Kastrenakes,** New Wave Auto Finance, LLC, Automotive Finance Corporation, CenterState Bank, N.A., Ascentium Capital, LLC, Republic Bank and Trust Company, GreatAmerica Financial Services Corporation, U.S. Small Business Administration, and Unknown Persons in Possession* | 22-ap-112 |
| Dr. Panayiotis Vasiloudes and Cygram Heritage, LLLP v. **Kastrenakes**, Maria Kokolakis Kastrenakes, New Wave Acceptance, LLC, Platinum Auto Finance, LLC n/k/a New Wave Auto Finance, LLC, and MK Automotive, Inc. d/b/a New Wave Auto Sales* | 22-ap-113 |
| Panayiotis Vasiloudes, MD, PhD, Cygram Heritage, LLLP, Cygram Holdings, LP, Trifon Houvardas, and K&M Insurance Investors, LLC v. **Kastrenakes**, William Hilgenfeldt, Thomas K. Rowe, and Kevin E. Hawkins* | 22-ap-114 |
| Panayiotis Vasiloudes, MD, PhD, Cygram Heritage, LLLP, Cygram Holdings, LP, and Panevas, LLC v. Maria Kastrenakes, individually and as Trustee for the Maria Kastrenakes Irrevocable Trust, the Emmanuel Kastrenakes Irrevocable Trust, the Evangelia Kastrenakes Irrevocable Trust, the John Kastrenakes Irrevocable Trust, and the Joseph Kastrenakes Irrevocable Trust* | 22-ap-115 |

| Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, Cygram Holdings, LP, Trifon Houvardas, and K&M Insurance Investors, LLC v. **Kastrenakes**, Maria Kastrenakes, CPX Holdings, LLC, Pagona Kokolakis, and Evangeline Kastrenakes | 22-ap-118 |
| Thomas Zervas and Konstantinos Papaspanos v. Platinum Auto Finance, LLC n/k/a New Wave Auto Finance, **Kastrenakes,** and Maria J. Kastrenakes* | 22-ap-122 |

## B.  Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A**.   The liquidation analysis reflects that creditors will receive at least as much under the Plan as they would receive in a chapter 7 liquidation.

## C.  Ability to make future plan payments and operate without further reorganization

The Debtor must also show that he will have enough cash over the life of the Plan to make the required plan payments.

Pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code, in exchange for: (1) the Consensual CPX Subordination (as defined below), and (2) the contribution of fifty percent (50%) of the net (after payment of applicable taxes) quarterly distributions received by Maria Kastrenakes on account of her 45% interest in Consumer Auto up to a maximum of $25,000 per quarter (collectively, the "**Maria Kastrenakes Contribution**"), the Plan provides for the settlement of any claim, interest, or cause of action of the Joint Creditors against Maria Kastrenakes (the "**Maria Kastrenakes Settlement**"), the Debtor's spouse, regardless of whether such claim, interest, or cause of action was asserted by any creditor prior to the Petition Date, including (without limitation) the claims or Causes of Action asserted in the Pending Litigation. For purposes of this Plan, the term "**Consensual CPX Subordination**" shall mean the consensual limited subordination of the claim and liens held the CPX (which is 100% owned by Maria Kastrenakes) to permit distributions made on account of the Debtor's interests in CallPass and Ximplipay to be contributed by the Debtor to make payments under the Plan; provided, however, that such consensual subordination shall not apply to any "Distributions to Pay Taxes" or any distributions arising from "Liquidation Events" [1], as such terms are defined in the operating agreements for CallPass and Ximplipay. In the event of any "Distributions to Pay Taxes," CPX may permit such distribution to be made directly to the Debtor for the purposes of satisfying any tax obligations of the Debtor arising from distributions made on account of the Debtor's interests in CallPass and Ximplipay. Furthermore, in the event of any distributions arising from "Liquidation Events," CPX shall only consensually subordinate its claim and liens to permit up to fifty percent (50%) of such distributions to be contributed by the Debtor to make any remaining payments to allowed Class 8

---

[1]  For purposes of disclosure, the operating agreements for CallPass and Ximplipay define "Liquidating Events" as "(a) a resolution duly adopted by the Managers, and approved by a Majority in Interest of the Members, to dissolve and terminate the Company; (b) the sale of all or substantially all of the Company's assets and the cessation by the Company of its business; or (c) the entry by a court of competent jurisdiction of a final decree that the Company be dissolved."

claims under the Plan. Moreover, in the event of a conversion of the Debtor's bankruptcy case to Chapter 7 of the Bankruptcy Code or the subsequent appointment of a trustee in the Debtor's bankruptcy case, notwithstanding the Consensual CPX Subordination, CPX shall not have been deemed to have subordinated its claim and liens to permit any distribution or liquidation of the assets of the Debtor's estate, including the Debtor's interests in CallPass and Ximplipay, without giving full effect to the priority, extent, and validity of CPX's liens as existed on the Petition Date. The releases contained in this Plan are instrumental to the Maria Kastrenakes Settlement and are incorporated herein by reference.   Mrs. Kastrenakes will contribute to the Estate the Maria Kastrenakes Contribution on the Effective Date.

The Debtor's financial projections show that the Debtor will have projected disposable income (for the period commencing on the Effective Date of the Plan and ending five years thereafter as set forth on **Exhibit B**.   The Debtor intends to sell his homestead, which he owns as tenants by the entireties with his spouse, Maria Kastrenakes, and reinvest in a smaller homestead in order to reduce the carrying costs (i.e. mortgage, taxes, insurance, maintenance, repairs, utilities, etc.). The Debtor projects that downsizing will save several thousand dollars per month.   This savings increases the projected disposable income as set forth more particularly on Exhibit B.

Notwithstanding the Debtor's prepetition payment to the FDOR, the FDOR unexpectedly filed a proof of claim (Claim No. 2), which asserts a priority claim in the amount of $951,761.82 and a general unsecured claim in the amount of $951,761.82, for a total of $1,903,523.64 (the "**FDOR Claim**").   The Debtor intends to file an objection to the FDOR Claim.   Allowance of the FDOR claim will significantly and adversely affect the feasibility of the Plan.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1:   Summary

This Plan of Reorganization (the *"***Plan**"*)* under chapter 11 of the Bankruptcy Code (the "**Bankruptcy Code**") proposes to pay creditors of Michael Kastrenakes (the "**Debtor***"*) from his net disposable income and the Maria Kastrenakes Contribution.   The Debtor, as reorganized pursuant to this Plan, is hereafter referred to as the "**Reorganized Debtor**" in this Bankruptcy Case (the "**Reorganized Case**").

This Plan provides for:   1 class of priority claims;

6 classes of secured claims; and

2 classes of non-priority unsecured claims.

All creditors should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2:    Classification of Claims and Interests

2.01    **Class 1 ......................**    All allowed claims entitled to priority under § 507(a) of the Bankruptcy Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

2.02    **Class 2 ......................**    The secured claim of Wells Fargo Home Mortgage ("**Wells Fargo**"), secured by a mortgage on the Debtor's homestead property located at 1755 McCauley Rd., Clearwater, Florida (the "**Homestead Property**"), to the extent allowed as a secured claim under § 506 of the Bankruptcy Code. Wells Fargo filed Claim No. 4 as a secured claim in the amount of $707,827.24.

2.03    **Class 3 ......................**    The secured claim of SouthState Bank ("**SouthState**"), secured by a mortgage on the Debtor's homestead property located at 1755 McCauley Rd., Clearwater, Florida, to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.   Southstate filed Claim No. 8 as a secured claim in the amount of $146,945.64.

2.04    **Class 4 ......................**    The secured claim of CPX Holdings ("**CPX**"), secured by a lien on the Debtor's membership interests in Ximplipay and CallPass.   CPX filed Claim No. 13 as a secured claim in the amount of $885,763.77.

2.05    **Class 5 ......................**    The secured claim of First Home Bank ("**First Home**"), secured by a lien on the Debtor's membership interests in Kaz.   First Home filed Claim No. 14 as a secured claim in the amount of $1,674,992.40.

2.06    **Class 6 ......................**    The secured claim of Grow Financial ("**Grow**"), secured by a lien on the Debtor's 2018 Audi A5.   Grow filed Claim No. 6 in the amount of $26,421.72.

2.07    **Class 7………………**    The secured claim of New York Life Insurance and Annuity Corp. ("**NY Life**"), secured by a lien on the Debtor's three (3) life insurance policies. NY Life is listed in the schedules as holding a secured claim in the amount of $46,501.00.

4891-1519-4132, v. 12

| 2.08 | **Class 8……………..** | Class 8 is comprised of NextGear, HF Financial, LLC ("**HF**"), Jeff Hackett ("**Hackett**"), Papaspanos, and Zervas (the "**Joint Creditors**"). NextGear filed an unsecured claim in the amount of $1,237,031.70. HF Financial was listed in the schedules as holding an unsecured claim in the amount of $815,000, however, it was scheduled as contingent, unliquidated, and disputed and HF Financial did NOT file a proof of claim. Hackett was listed in the schedules as holding an unsecured claim in the amount of $374,500. Papaspanos and Zervas filed a joint claim, Claim No. 3, as an unsecured claim in the amount of $285,735. |

| 2.09 | **Class 9 .....................** | All non-priority unsecured claims allowed under § 502 of the Bankruptcy Code not otherwise classified herein. The filed unsecured claims total more than $21 million. The Debtor reserves the right to object to any claims. |

---

### Article 3:   Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| 3.01 | **Unclassified claims** | Under § 1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes. |

| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid in full on the Effective Date of this Plan, in cash, or on such other terms as may be agreed on by the holder of the claim and the Debtor. |

| 3.03 | **Priority tax claims** | Each holder of a priority tax claim will be paid a total value as of the Effective Date of the allowed amount of such claim in four annual installments equal to 25% of such claim. Each annual payment will include all accrued interest on the applicable claim at the rate of 3.25% per annum from the Effective Date. The first annual installment shall be due on the first anniversary of the Effective Date and the last annual installment shall be due on or before the fifth anniversary of the Effective Date. |

| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid timely as they come due. |

| 3.05 | **Prospective quarterly fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to a case under another chapter of the Bankruptcy Code. |

4891-1519-4132, v. 12

**Article 4: Treatment of Claims and Interests Under the Plan**

4.01    **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1** - Priority Claims Excluding Those in Article 3 | ☐ Impaired ☒ Unimpaired | Class 1 is unimpaired by the Plan.  Each holder of an Allowed Class 1 Priority Claim will be paid in full, in cash, on the later of the Effective Date of the Plan and the date on which such claim is allowed by a final non-appealable order, or on such other terms as may be agreed on by the holder of the claim and the Debtor. |
| **Class 2**– Secured Claim of Wells Fargo | ☐ Impaired ☒ Unimpaired | Class 2 is unimpaired by the Plan.<br><br>The Debtor intends to sell the Homestead Property. The Class 2 Claim will be paid in full from the net proceeds from the sale of the Homestead Property. In the event that the Debtor does not sell the Homestead Property, the Debtor will pay the Class 2 Claim in accordance with the loan documents. |
| **Class 3** – Secured Claim of SouthState | ☐ Impaired ☒ Unimpaired | Class 3 is unimpaired by the Plan.<br><br>The Debtor intends to sell the Homestead Property. The Class 3 Claim will be paid in full from the net proceeds from the sale of the Homestead Property. In the event that the Debtor does not sell the Homestead Property, the Debtor will pay the Class 3 Claim in accordance with the loan documents. |
| **Class 4** – Secured Claims of CPX | ☒ Impaired ☐ Unimpaired | Class 4 is impaired by the Plan.<br><br>During the five-year period beginning on the Effective Date and continuing thereafter, CPX will subordinate its claim to Allowed Class 8 Claims and will consent to any distributions (limited to 50% of sale proceeds from sale of Ximplipay or CallPass) from CallPass and Ximplipay being used to fund payments to the Holders of Allowed Class 8 Claims.  CPX shall retain its lien and be entitled to |

enforce its lien after the conclusion of the five-year period beginning on the Effective Date.

| | | |
|---|---|---|
| **Class 5** –Secured Claim of First Home | ☐ Impaired<br>☒ Unimpaired | Class 5 is unimpaired by the Plan.<br><br>Commencing on the Effective Date and continuing on the same day of each month thereafter until the Allowed Class 5 Claim is paid in full, the Allowed Class 5 Claim shall be paid as follows: (i) Year 1—interest only at five percent (5%) per annum; (ii) Years 2-5—amortized over ten (10) years and paid in monthly installments of principal and interest at five percent (5%) per annum.  The Allowed Class 5 Claim shall mature and become due and payable in full on the fifth (5th) anniversary of the Effective Date. |
| **Class 6** – Secured Claim of Grow | ☒ Impaired<br>☐ Unimpaired | Class 6 is impaired by the Plan.<br><br>Commencing on the fifteenth (15th) of the month following the Effective Date and continuing on the same day of each month thereafter until the Allowed Class 6 Claim is paid in full, the Allowed Class 6 Claim shall be re-amortized over a period of eighty-four (84) months and paid in monthly installments of principal and interest at five percent (5%) per annum. |
| **Class 7** – Secured Claim of NY Life | ☒ Impaired<br>☐ Unimpaired | Class 7 is impaired by the Plan.<br><br>Commencing on the Effective Date and continuing on the same day of each month thereafter until the Allowed Class 7 Claim is paid in full, the Allowed Class 7 Claim shall be re-amortized to extend the term of the loan by twelve (12) months and paid in monthly installments of principal and interest at three percent (3%) per annum. |

4891-1519-4132, v. 12

| | | |
|---|---|---|
| **Class 8** – Claims of Joint Creditors | ☒ Impaired<br>☐ Unimpaired | Class 8 is impaired by the Plan.<br><br>Each Holder of an Allowed Class 8 Claim shall receive its *pro rata* share of the Maria Kastrenakes Contribution with the first distribution to be made on the first day of the calendar quarter following the Effective Date and continuing for 19 additional quarters for a total of 20 quarters. |
| **Class 9** – All Non-Priority Unsecured Claims Not Otherwise Classified | ☒ Impaired<br>☐ Unimpaired | Class 9 is impaired by the Plan.<br><br>Each Holder of an Allowed Class 9 Claim, excluding the Joint Creditors, shall receive its *pro rata* share of projected disposable income at the times and in the amounts set forth on Exhibit B. |

## Article 5:   Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed Claims** | A disputed claim is a claim that has not been allowed or disallowed by a non-appealable final order, and as to which either:<br><br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br><br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Distribution on a Disputed Claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a non-appealable final order. |
| 5.03 | **Settlement of Disputed Claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with the Court's approval and in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

13

| | | |
|---|---|---|
| 6.01 | **Assumed Contracts & Leases** | Except for executory contracts and unexpired leases that have been assumed before the Effective Date, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan. |

## Article 7: Means for Implementation of the Plan

| | | |
|---|---|---|
| 7.01 | **Funding Source for Plan Payments** | Payments required under the Plan will be funded from the Debtor's projected disposable income, as set forth on Exhibit B, and the Maria Kastrenakes Contribution. |
| 7.02 | **Distributions by Debtor** | All distributions under the Plan shall be made by the Debtor. |
| 7.03 | **Unclaimed Distributions** | If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within 90 days of the date such check was issued, then the Reorganized Debtor shall provide written notice to such Holder stating that, unless such Holder negotiates such check within 30 days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim. |
| | | If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Reorganized Debtor due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Reorganized Debtor as to such check within 30 days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.   Any unclaimed Distribution as described above shall revert to the Reorganized Debtor free of all claims. |
| 7.04 | **Vesting of Assets** | On the Effective Date, except as otherwise expressly provided in this Plan or in the Bankruptcy Code, all assets of the Debtor's estate (including any causes of action) shall vest in the Reorganized Debtor, free and clear of any and all liens, debts, obligations, claims, cure claims, liabilities, encumbrances, and all other interests of every kind and nature, and the Confirmation Order shall so provide. |

4891-1519-4132, v. 12

| 7.05 | **Default** | In the event of a default, which is not timely cured: (i) secured creditors may pursue their collateral and any other applicable remedies in any court of competent jurisdiction; and (ii) unsecured creditors may pursue any applicable remedies in any court of competent jurisdiction. |

## ▆ Article 8: General Provision

| 8.01 | **Definitions and Rules of Construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan. |
| 8.02 | **Effective Date** | The Effective Date of this Plan (the "**Effective Date**") is the first business day that is 14 days after the entry of the confirmation order.   If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan or such other agreement, document, or instrument. |
| 8.07 | **Retention of Jurisdiction** | Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Reorganization Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Reorganization Case that is permitted by applicable law, including any jurisdiction that is necessary or appropriate to ensure that the purposes and intent of the Plan are carried out. |

## Article 9: Discharge

| | | |
|---|---|---|
| 9.01 | **Discharge** | The Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent and at the time specified in Section 1141(d) of the Bankruptcy Code. |

## Article 10: Other Provisions

| | | |
|---|---|---|
| 10.02 | **General Injunction** | **Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all persons that have held, currently hold or may hold a claim, debt, or liability that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated claims, debts, or liabilities, other than actions brought to enforce any rights or obligations under the Plan: (a) commencing or continuing in any manner any action or other proceeding against the Debtor or his Assets or Estate; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or his Assets or Estate; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor or his Assets or Estate; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or his Assets or Estate; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or the Reorganized Debtor as applicable or the Estate under the Plan and the documents executed in connection therewith. The Debtor or the Reorganized Debtor as applicable shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation.** |
| 10.02 | **Release of Maria Kastrenakes** | **Maria Kastrenakes is a defendant in certain of the Pending Litigation. Mrs. Kastrenakes is making the Maria Kastrenakes Contribution, which includes a limited subordination of the Class 4 Secured Claims of CPX, to enable certain distributions from the CPX collateral to be distributed to Class 8. Accordingly, in conjunction with the Maria Kastrenakes Settlement and in consideration of the substantial contributions made and to be made by Mrs. Kastrenakes, the Plan** |

16

**provides for the granting of broad, third-party releases to Mrs. Kastrenakes by the Joint Creditors as set forth in detail below:**

**(a)    Rule 3016(c) Declaration.    In accordance with the requirements of Rule 3016(c), the provisions of this Article of the Plan shall operate to specifically release Mrs. Kastrenakes as further detailed below.   The funds contributed by Mrs. Kastrenakes are critical to the success of the Plan, and without the protection of Mrs. Kastrenakes by virtue of the releases described herein, the Plan would have no likelihood of success.    The Plan is dependent on the releases provided herein. Within this Section, bold print and italics are used to identify the exact nature of releases and to identify the parties subject to the release.**

**(b)    General Releases by Joint Creditors.    On the Effective Date, in consideration for the obligations of the Debtor, and the cash, instruments and other contracts, releases, written agreements or other documents to be entered into or delivered in connection with the Plan, all consideration distributed under the Plan, and in consideration of the contributions by Mrs. Kastrenakes, all Joint Creditors will be deemed to forever release, waive, discontinue and discharge all existing and future claims, obligations, proceedings, suits, judgments, damages, demands, debts, rights, Causes of Action, objections to the Claims of Mrs. Kastrenakes, and liabilities (other than the right to enforce the Debtor's or Mrs. Kastrenakes' obligations under the Plan and the contracts, instruments, releases, written agreements or other documents to be entered into or delivered in connection with the Plan) that are based in whole or in part on any act, failure to act, omission, transaction or other occurrence taking place on or prior to the Effective Date, including without limitation any claim such Holder had, has, or may have against Mrs. Kastrenakes, and including but not limited to all claims arising from the business activities, loans to, or contracts with, or the operations and activities of the Debtor.**

**(c)    General Releases by the Debtor and Estate.    On the Effective Date, and in consideration of the contributions by Mrs. Kastrenakes, the Debtor and the Estate shall be deemed to have released, waived, and discharged Mrs. Kastrenakes from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action, and liabilities whatsoever, including any Causes of Action pursuant to Chapter 5 of the Bankruptcy Code, inclusive, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, and based in whole or in part upon any act or omission, transaction, even or other occurrence taking place on or prior to the Effective Date.**

4891-1519-4132, v. 12

Dated:   July 21, 2022

*/s/ Michael Kastrenakes*
Michael Kastrenakes

*/s/ Amy Denton Mayer*
Edward J. Peterson (FBN 0014612)
Amy Denton Mayer (FBN 0634506)
Stichter, Riedel, Blain & Postler, P.A.
110 E. Madison Street, Suite 200
Tampa, Florida 33602-4718
Telephone: (813) 229-0144
Email: epeterson@srbp.com; amayer@srbp.com
Attorneys for Debtor

4891-1519-4132, v. 12

# EXHIBIT A

## MICHAEL KASTRENAKES
## LIQUIDATION ANALYSIS

| Assets | Chapter 11 Value | Chapter 7 Value |
|---|---|---|
| Funds on Deposit in Bank Accounts[1] | $21,680.27 | $21,680.27 |
| Real property located at 1755 McCauley Rd., Clearwater[2] | 0.00 | 0.00 |
| 2018 Audi A5[3] | 6,900.00 | 5,000.00 |
| Household Goods and Furnishings[4] | 30,506.00 | 15,000.00 |
| Sports Equipment[5] | 725.00 | 350.00 |
| Clothing, Shoes, and Personal Effects[6] | 200.00 | 100.00 |
| Jewelry[7] | 2,955.00 | 1,475.00 |
| Pets[8] | 0.00 | 0.00 |
| Memberships[9] | 0.00 | 0.00 |
| Life Insurance Policies[10] | 0.00 | 0.00 |
| Ownership Interests in Business Entities[11] | 0.00 | 0.00 |

[1] As reflected on the Debtor's May 2022 monthly operating report, as of May 31, 2022, the Debtor had $21,680.27 on deposit, $21,429.31 of which was in the debtor-in-possession account at Regions Bank and $250.96 of which was in the prepetition account at SouthState Bank. Of the total on deposit, $1,000 is exempt pursuant to Fla. Constitution, Art. X, §4(a)(2).

[2] The real property is the Debtor and his non-debtor wife's homestead. It has a just market value of $1,350,000 according to the Pinellas County Tax Collector. The property is encumbered by two mortgages totaling approximately $860,000. The remaining equity in the property is exempt pursuant to Fla. Constitution, Art. X, §4(a)(1).

[3] The Debtor owns a 2018 Audi A5 valued at $33,900.00, which is subject to a lien in favor of Grow Financial in the amount of $26,000.00. Of the total equity in the amount of $7,900, $1,000.00 is exempt pursuant to Fla. Stat. § 222.25(1).

[4] The Debtor and his non-debtor wife own various household goods and furnishings, electronics, artwork, collectibles, and sports and hobby equipment, as more particularly reflected on the appraisal attached to Doc. No. 36. The household goods and furnishings are owed as tenants by the entireties property. Therefore, they are only available for administration to joint creditors.

[5] The Debtor owns Callaway golf clubs and a Trek Bontrager, as more particularly reflected on the appraisal attached to Doc. No. 36.

[6] The Debtor owns clothing, shoes, and personal effects, as more particularly reflected on the appraisal attached to Doc. No. 36.

[7] The Debtor owns jewelry and watches, as more particularly reflected on the appraisal attached to Doc. No. 36.

[8] The Debtor and his non-debtor spouse own a dog, which has no value other than sentimental value. The dog is not utilized for breeding and is not a show dog. .

[9] The Debtor holds a membership at Carlouel Yacht Club and a gym membership at Esporta. Neither membership is transferable and neither has any value.

[10] The Debtor has three New York Life Insurance term policies, which are exempt pursuant to Fla. Stat. §222.14.

[11] The Debtor had or has interests in the following business entities, which are no longer actively operating but may be liquidating their assets for distribution to their creditors and winding down:

| Entity | Ownership Interest | Status |
|---|---|---|
| Preferred Rent-A-Car, Inc. | 0% | No assets or operations; voluntary dissolution 10/3/2008 |
| Pinellas Auto Sales & Service, Inc. | Unknown | No assets or operations; voluntary dissolution 1/4/1993 |
| New Wave Auto Finance, Inc. ("New Wave Finance") | 100% | Administrative dissolution 9/24/2021 |
| Thrifty Auto Service, LLC | 100% | No assets or operations; administrative dissolution 9/25/2009 |
| Platinum Auto Finance B, LLC | 100% | Formed but never any assets or operations; administrative dissolution 9/28/2012 |
| Platinum Auto Finance C, LLC | 100% | Formed but never any assets or operations; administrative dissolution 9/28/2012 |
| Healthy You Tampa Bay, LLC | 50% | Formed but never any assets or operations; administrative dissolution 9/28/2012 |
| Platinum RE Holdings, LLC | 50% | Single asset real estate entity; property sold in 2021; no remaining assets or operations |
| Pasadena Acceptance Finance, LLC | Unknown | Has negative equity and insufficient cash flow to service its debt |
| New Wave Acceptance, LLC ("New Wave Acceptance") | 50% | Has negative equity and insufficient cash flow to service its debt |
| MLH Solutions 2, LLC | 50% | No assets or operations; administrative dissolution 9/24/2021 |
| KTK, LLC | Unknown | No assets or operations; administrative dissolution 9/27/2019 |
| Price Rent-A-Car, L.C. | 100% | No assets or operations; administrative dissolution 10/4/2002 |
| MK&B Enterprises, Inc. | Unknown | No assets or operations; administrative dissolution 9/26/2008 |
| MK Automotive, Inc. d/b/a New Wave Auto Sales ("New Wave Sales") | 100% | Has negative equity and insufficient cash flow to service its debt |
| Preferred Vehicle Lease, Inc. | Unknown | No assets or operations; voluntary dissolution 9/2/2003 |
| Preferred Car Sales, Inc. | Unknown | No assets or operations; administrative dissolution 10/4/2002 |
| Instant Car Offer, LLC | 16% | No assets or operations; administrative dissolution 9/24/2021 |

| Claims/Counterclaims[12] | Unknown | Unknown |
|---|---|---|
| **Total** | **$62,966.27** | **$43,605.27** |

### LIABILITIES

| Claims | Chapter 11 | Chapter 7 |
|---|---|---|
| Administrative Claims | $201,524.00[13] | $276,524.00[14] |
| Secured Claims[15] | 2,435,414.46 | 2,435,414.46 |
| Priority Claims[16] | 961,647.82 | 961,647.82 |
| Unsecured Claims[17] | 21,433,251.64 | 21,433,251.64 |
| **Total Claims** | **$25,031,837.92** | **$25,106,837.92** |

### ESTIMATED DISTRIBUTIONS TO CREDITORS

|  | Chapter 11 | Chapter 7 |
|---|---|---|
| Class 8 Joint Unsecured Creditors | Maria Kastrenakes Contribution | $0.00 |
| Class 9 Unsecured Creditors, Excluding Joint Creditors | Projected disposable income over 5 years | $0.00 |

---

The Debtor does not believe that these entities have assets in excess of their liabilities, which would be available for distribution to owners. Therefore, the Debtor's interest (if any remains) has no value.

| Entity | Ownership Interest | Status |
|---|---|---|
| Platinum Auto Finance of Tampa Bay, LLC ("Platinum Auto Finance Tampa Bay") | 13% | Platinum Auto Finance Tampa Bay is operating; however, the Debtor does not control its operations. The company is highly leveraged and has negative retained earnings. Accordingly, it has not been making distributions to members. |
| CallPass, LLC ("CallPass") | 37,240 units (3.687129%) | CallPass is operating and has historically made quarterly distributions to its members, however, the Debtor did not receive any distributions in 2021. The Debtor's distributions, if any, from CallPass are encumbered by liens in favor of CPX Holdings, LLC ("**CPX**") pursuant to a Membership Units Pledge and Security Agreement. |
| Ximplipay, LLC ("Ximplipay") | 4.9 units (4.9%) | Ximplipay is operating and has historically made quarterly distributions to its members. As reflected by the Debtor's K-1 from Ximplipay, the Debtor received $31,325 in distributions in 2021. The Debtor's distributions, if any, from Ximplipay are encumbered by liens in favor of CPX pursuant to a Membership Units Pledge and Security Agreement. |
| Kaz Reinsurance FL LLC ("Kaz Reinsurance") | 50% | Kaz Reinsurance is an offshore reinsurance company that operated in conjunction with the Debtor's auto sales and leasing businesses. As of the Petition Date, Kaz had approximately $400,000 on deposit in bank accounts, active reinsurance contracts, as well as pending and potential claims. The Debtor believes that there will be dividends available upon expiration of the reinsurance contracts, however, Kaz is not currently making distributions to its members. The Debtor's distributions, if any, from Kaz Reinsurance are encumbered by liens in favor of First Home Bank pursuant to a pledge. |
| Based upon the foregoing, the Debtor does not believe that the liquidation of the foregoing ownership interests would provide any distributions for unsecured creditors. | | |

[12] The Debtor has counterclaims against NextGear Capital as well as potential claims against various other parties in connection with his ownership and operation of various auto businesses. The precise nature, value, and collectability of the claims is unknown.

[13] Estimated; subject to adjustment based upon actual fees and costs incurred.

[14] Estimated Chapter 11 administrative expense claims plus estimated Chapter 7 administrative expense claims..

[15] Scheduled and filed secured claims. The Debtor reserves the right to object (in whole or in part) to any scheduled or filed claim.

[16] Scheduled and filed priority claims. The Debtor reserves the right to object (in whole or in part) to any scheduled or filed claim.

[17] Scheduled and filed unsecured claims. The Debtor reserves the right to object (in whole or in part) to any scheduled or filed claim.

# EXHIBIT B

| | April 2022 MOR | May 2022 MOR | Average MOR | Plan Year 1 | Plan Year 2 | Plan Year 3 | Plan Year 4 | Plan Year 5 |
|---|---|---|---|---|---|---|---|---|
| **CASH RECEIPTS** | | | | | | | | |
| W-2 and 1099 Income (Net) | 13,753.49 | 26,668.98 | 20,211.24 | 260,000.04 | 260,000.04 | 260,000.04 | 260,000.04 | 260,000.04 |
| Management Fees (CallPass) | 891.88 | 891.88 | 891.88 | 10,702.56 | 10,702.56 | 10,702.56 | 10,702.56 | 10,702.56 |
| Contribution from Maria Kastrenakes through CPX Holdings Subordination (Projected, NOT guaranteed; see Class 8) | | | | 31,325.00 | 31,325.00 | 31,325.00 | 31,325.00 | 31,325.00 |
| Contribution from Maria Kastrenakes from Consumer Auto Exchange (Projected, NOT guaranteed; see Class 8) | 3,000.00 | 6,717.55 | 4,858.78 | 24,000.00 | 24,000.00 | 24,000.00 | 24,000.00 | 24,000.00 |
| **TOTAL RECEIPTS** | 17,645.37 | 34,278.41 | 25,961.89 | 326,027.60 | 326,027.60 | 326,027.60 | 326,027.60 | 326,027.60 |
| | | | | | | | | |
| **CASH DISBURSEMENTS** | | | | | | | | |
| Charitable Contributions | 0.00 | 0.00 | 0.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| Gifts | 0.00 | 316.18 | 158.09 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| HOA Dues | 0.00 | 0.00 | 0.00 | 250.00 | 24,000.00 | 24,000.00 | 24,000.00 | 24,000.00 |
| Household Expenses/Food/Clothing | 2,204.72 | 2,995.11 | 2,599.92 | 24,000.00 | 24,000.00 | 24,000.00 | 24,000.00 | 24,000.00 |
| Household Repairs & Maintenance | 1,449.64 | 1,998.79 | 1,724.22 | 18,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 |
| Insurance | 3,652.57 | 1,560.00 | 2,606.29 | 21,720.00 | 21,720.00 | 21,720.00 | 21,720.00 | 21,720.00 |
| Medical/Dental Payments | 26.19 | 0.00 | 13.10 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Mortgage Payment(s) (Year 1 includes 1st mortgage, HELOC, RE taxes, and insurance) | 6,267.94 | 6,707.75 | 6,487.85 | 80,493.00 | - | - | - | - |
| Taxes - Real Estate | 0.00 | 0.00 | 0.00 | | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 |
| Taxes - Federal Income | 0.00 | 0.00 | 0.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 |
| Travel & Entertainment | 0.00 | 0.00 | 0.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 |
| Utilities (Electric, Gas, Water, Cable, Sanitation) | 837.39 | 1,851.70 | 1,344.55 | 22,920.00 | 10,200.00 | 10,200.00 | 10,200.00 | 10,200.00 |
| Vehicle Expenses | 444.61 | 723.25 | 583.93 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 |
| **TOTAL DISBURSEMENTS** | 14,883.06 | 16,152.78 | 15,517.92 | 238,783.00 | 177,320.00 | 177,320.00 | 177,320.00 | 177,320.00 |
| | | | | | | | | |
| **FUNDS AVAILABLE FOR PLAN PAYMENTS** | | | | 87,244.60 | 148,707.60 | 148,707.60 | 148,707.60 | 148,707.60 |
| | | | | | | | | |
| **PLAN PAYMENTS** | | | | | | | | |
| **Administrative Expense Claims** | | | | | | | | |
| Stichter, Riedel, Blain & Postler, P.A. (estimated at $200,000; subject to adjustment for actual fees/costs) | | | | 200,000.00 | - | - | - | - |
| Dr. Ruediger Mueller, Sub V Trustee | | | | 1,524.00 | | | | |
| **Priority Tax Claims** (Claim No. 2 of FDOR $1,903,523.64- Debtor intends to object to claim; Plan assumes disallowance of | | | | - | - | - | - | - |
| **Class 1**-Priority Claims (Claim No. 7 of IRS estimated at $9,886- Debtor intends to object to claim; Plan assumes disallowance of | | | | - | - | - | - | - |
| **Class 2**-Wells Fargo Bank (Payment included in above for Year 1, Claim will be paid in full from sale proceeds) | | | | - | - | - | - | - |
| **Class 3**-SouthState Bank (Payment included in above for Year 1, Claim will be paid in full from sale proceeds) | | | | - | - | - | - | - |
| **Class 4**-CPX Holdings, LLC (Payments Subordinated to Class 8 as set forth in the Plan) | | | | - | - | - | - | - |
| **Class 5**-First Home Bank ($550,000 int. only @5% yr. 1; amt. over 10 yrs. At 5% yrs. 2-5; balloon yr. 10 $274,306.84) | | | | 27,500.04 | 62,048.28 | 62,048.28 | 62,048.28 | 62,048.28 |
| **Class 6**-Grow Financial ($25,000 amt. over 84 months @ 5%) | | | | 4,240.20 | 4,240.20 | 4,240.20 | 4,240.20 | 4,240.20 |
| **Class 7**-NY Life ($45,000 amt. over 36 months @ 3%) | | | | 15,703.80 | 15,703.80 | 15,703.80 | 15,703.80 | 15,703.80 |
| **Class 8**-Joint Creditors (Projected, NOT guaranteed payments; actual distributions are set forth in Class 8) | | | | 55,325.00 | 55,325.00 | 55,325.00 | 55,325.00 | 55,325.00 |
| **UNSECURED CREDITORS** | | | | 304,293.04 | 137,317.28 | 137,317.28 | 137,317.28 | 137,317.28 |
| | | | | | | | | |
| **CREDITORS** | | | | (217,048.44) | 11,390.32 | 11,390.32 | 11,390.32 | 11,390.32 |