UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

MICHAEL KASTRENAKES,

    Debtor.
_____/

Case No.: 8:22-bk-01210-CED
Chapter: 11

# OMITTED CREDITORS' OBJECTION
# TO ADEQUACY OF DISCLOSURE AND TO
# CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION

Pursuant to Federal Rules of Bankruptcy Procedure 3017(a) and 3020(b)(1), Bankruptcy Code §§1125 and 1129, and other applicable law, Dr. Panayiotis Vasiloudes ("Vasiloudes"), Cygram Heritage, LLLP ("Heritage"), Cygram Holdings, L.P. ("Holdings"), Panevas, LLC ("Panevas"), Trifon Houvardas ("Houvardas"), and K&M Insurance Investors, LLC ("K&M"), collectively referred to herein as the "Omitted Creditors," object on the following grounds to the "Disclosure Statement and Plan of Reorganization for the Debtor Under Chapter 11" (the "Plan") [Doc. No. 96], proposed on July 1, 2022, by Michael Kastrenakes (the "Debtor"):

    **A.**    **Debtor, Related Parties and Estate Property:**

    1.    The Debtor is an individual who resides in Pinellas County, Florida, and is the husband of Maria Kokolakis Kastrenakes ("Ms. Kastrenakes"), a non-filing party-in-interest in the above-captioned bankruptcy case (this "Bankruptcy Case"). Ms. Kastrenakes and the Debtor (together, the "Kastrenakeses") have been involved together

as husband and wife in the restaurant business, the real estate business, and most notably the automobile business for many years.

2.      Prior to initiating this Reorganization, the Kastrenakeses owned and operated a consortium of auto businesses that sold, leased, and financed vehicles (collectively, the "Auto Business").  However, as of the date of initiating this Reorganization, the Debtor takes the position that all of the Auto Businesses had all "shut down" and "ceased operations."  However, the Auto Business does appear to be operating, through a labyrinth of business entities in which the Debtor has been involved, but now claims to have no interest or only a small interest.

3.      Throughout this Reorganization, the Debtor has attempted to attribute the failure of his finances relating to the Auto Business to COVID-19, even though all market indicia established that COVID-19 and its ramifications created unprecedented demand for used automobiles during the very years that the Debtor's financial fortunes seem to have plummeted.

4.      The Omitted Creditors were all investors in business entities controlled by the Kastrenakeses that failed.  Through the use of shifting shell entities, false financial data, artificially inflated and fraudulent financial and tax documents, and intentional misstatements concerning material facts with respect to the business, financial, and legal affairs of the Debtor's entities, the Debtor induced the Omitted Creditors to invest money.  He then removed the money to other ventures that they had no interest in, to buy automobile inventory and pay off the debts of those other entities.

5.    The Debtor's fraud in dealing with the Omitted Creditors was not isolated. The Debtor also failed to pay the Florida Department of Revenue (the "FDOR") nearly $5,000,000 in sales tax liability. The business entity that owed the money to the FDOR is one of the business entities in which some of the Omitted Creditors were investors. With Florida's sales tax for automobiles at six (6%) percent, $5,000,000 in sales tax liability translates to $83,000,000 in automobile sales. Nobody knows where that money went.

6.    Just before the Debtor's tax fraud became exposed, but when the Debtor was already aware that these problems could no longer be concealed, the Debtor made a series of tearful confessions and promises to Vasiloudes, some involving Ms. Kastrenakes and the various other Omitted Creditors.[1] They vowed to work out of the situation in a satisfactory manner, admitting that the investment funds of some or all of the Omitted Creditors were largely or completely stolen for other ventures. But then the Kastrenakeses repudiated those promises, diverting assets to trusts settled for their children.

7.    Although not the only creditors of the Kastrenakeses, the Omitted Creditors filed lawsuits in Pinellas County Circuit Court (the "State Court") during March 2022, that were the direct cause of the Debtor's chapter 11 filing. Shortly before initiating this Reorganization, the Debtor pled guilty to tax fraud in the context of a criminal case pending in the State Court.[2] The Kastrenakeses paid a large tax liability just before the

---

[1] The Debtor confided that his conduct was not just fraudulent toward Vasiloudes and his family, but that it was criminal. For purposes of this Reorganization, the most important point is that the relevant claims of the Omitted Creditors not be ignored or trivialized.
[2] State of Florida v. Michael Kastrenakes, Case No.: 20-11345-CF, in the Circuit Court of the

3

filing, and Ms. Kastrenakes formed a business entity[3] to handle the logistics of the payment which appears to be vulnerable under Bankruptcy Code §547, among other things.  However, it remains to be seen whether the FDOR still has claims unpaid, or whether there is continuing liability.

8. On March 27, 2022 (the "Petition Date"), the Debtor filed a voluntary chapter 11 petition (the "Petition") electing treatment as a Subchapter V case under the provisions of the Small Business Reorganization Act of 2019.  However, the Debtor has dropped this designation and is proceeding under chapter 11.

### B. Adversary Proceedings Removed From State Court:

9. The Debtor is or claims to be a party to a total of five (5) actions (collectively, the "State Actions"), initiated by various creditors against the Debtor or insiders of the Debtor in the Sixth Judicial Circuit in and for Pinellas County, Florida (the "State Court").  The Debtor has systematically removed each of the State Actions. Following removal, each of these removed adversary proceedings (collectively, the "Removed Adversary Proceedings") has been slowed by remand motions, the requirement for Rule 26 conferences, and motions to dismiss.  None of the State Actions are close to adjudication.

---

Sixth Judicial Circuit, in and for Pinellas County, Florida (the "Criminal Case").
[3] CPX, LLC ("CPX") was formed by Ms. Kastrenakes days before the Debtor initiated this Reorganization.  Any real or imagined claim CPX may possess in this Reorganization arises in the context of the Kastrenakeses' self-dealing, at the expense of arms' length creditors and this estate.

10. **NextGear Adversary Proceeding:**[4]  The Debtor has removed the underlying State Action,[5] that was initiated by one of the Kastrenakeses' larger creditors against them, and some of their business entities involved in the Auto Business.

11. **Zervas Adversary Proceeding:**[6]  Similarly, the Debtor has removed another State Action[7] filed by two (2) other creditors of the Kastrenakeses from the State Court to this Court, where it is also pending as an adversary proceeding, also relating to the Auto Business.

12. **New Wave Adversary Proceeding:**[8]  On February 20, 2022, some of the Omitted Creditors commenced this State Action[9] in State Court, and the Debtor removed

---

[4] NextGear Capital, Inc. v. MK Automotive, Inc., d/b/a New Wave Auto Sales; Maria J. Kastrenakes; Michael Kastrenakes; New Wave Auto Finance, LLC; Automotive Finance Corporation; Centerstate Bank, N.A., Ascentium Capital, LLC; Republic Bank and Trust Company; Great America Financial Services Corporation; U.S. Small Business Administration, and Unknown Persons-in-Possession, Case No. 8:22-ap-00112-CED, pending in the United States Bankruptcy Court Middle District of Florida Tampa Division (the "Removed NextGear Proceeding").

[5] NextGear Capital, Inc. v. MK Automotive, Inc., d/b/a New Wave Auto Sales; Maria J. Kastrenakes; Michael Kastrenakes; New Wave Auto Finance, LLC; Automotive Finance Corporation; Centerstate Bank, N.A., Ascentium Capital, LLC; Republic Bank and Trust Company; Great America Financial Services Corporation; U.S. Small Business Administration, and Unknown Persons-in-Possession, Case No.: 22-003846-CI, in the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County, Florida (the "NextGear Case").

[6] Thomas Zervas and Konstantinos Papaspanos v. Platinum Auto Finance, LLC n/k/a New Wave Auto Finance, LLC, Michael Kastrenakes, and Maria Kastrenakes, Adv. Proc. No. 8:22-ap-00122-CED, pending in the United States Bankruptcy Court Middle District of Florida Tampa Division (the "Removed Zervas Proceeding").

[7] Thomas Zervas and Konstantinos Papaspanos v. Platinum Auto Finance, LLC n/k/a New Wave Auto Finance, LLC, Michael Kastrenakes, and Maria Kastrenakes, Case No.: 21-001223-CI, in the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County, Florida (the "Zervas Case").

[8] Dr. Panayiotis Vasiloudes and Cygram Heritage, LLLP v. Michael Kastrenakes; Maria Kokolakis Kastrenakes; New Wave Acceptance LLC; Platinum Auto Finance, LLC n/k/a New Wave Auto Finance, LLC, and MK Automotive, Inc., d/b/a New Wave Auto Sales, Adv. Proc. No. 8:22-ap-00113-CED, pending in the United States Bankruptcy Court Middle District of Florida Tampa Division (the "Removed New Wave Proceeding").

the action to this Court. A set of unliquidated claims is asserted against the Debtor and others that are tied to his mishandling of the Auto Business, with Ms. Kastrenakes also a defendant.

13. **ICO Adversary Proceeding:**[10] On February 28, 2022, some of the Omitted Creditors commenced this State Action[11] shortly before the Debtor initiated this Reorganization, this being one of the obvious reasons for the Petition being filed. Although a different business entity is involved, the Debtor's methods are consistent with all of the allegations in the New Wave Adversary Proceeding.

14. **The Removed Trusts Proceeding:**[12] On May 20, 2022, some of the Omitted Creditors commenced this State Action[13] against Ms. Kastrenakes and a set of

---

[9] Dr. Panayiotis Vasiloudes and Cygram Heritage, LLLP v. Michael Kastrenakes; Maria Kokolakis Kastrenakes; New Wave Acceptance LLC; Platinum Auto Finance, LLC n/k/a New Wave Auto Finance, LLC, and MK Automotive, Inc., d/b/a New Wave Auto Sales, Adv. Proc. No.: 22-000829-CI, in the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County, Florida (the "New Wave Case").

[10] Panayiotis Vasiloudes, Cygram Heritage, LLLP, Cygram Holdings, L.P., Trifon Houvardas, and K&M Insurance Investors, LLC v. Michael Kastrenakes; William Hilgenfeldt, Thomas K. Rowe, and Kevin E. Hawkins, Adv. Proc. No. 8:22-ap-00114-CED, pending in the United States Bankruptcy Court Middle District of Florida Tampa Division (the "Removed ICO Proceeding").

[11] Panayiotis Vasiloudes, Cygram Heritage, LLLP, Cygram Holdings, L.P., Trifon Houvardas, and K&M Insurance Investors, LLC v. Michael Kastrenakes; William Hilgenfeldt, Thomas K. Rowe, and Kevin E. Hawkin, Case No.: 22-000956-CI, in the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County, Florida (the "ICO Case").

[12] Panayiotis Vasiloudes, M.D. PH.D., and Cygram Heritage, LLLP, Cygram Holdings, L.P., and Panevas, L.L.C. v. Maria Kastrenakes, individually and as trustee for the Maria Kastrenakes Irrevocable Trust; The Emmanuel Kastrenakes Irrevocable Trust; The Evangelia Kastrenakes Irrevocable Trust, The John Kastrenakes Irrevocable Trust, and The Joseph Kastrenakes Irrevocable Trust, Case No. 8:22-ap-00115-CED, pending in the United States Bankruptcy Court Middle District of Florida Tampa Division (the "Removed Trusts Proceeding").

[13] Panayiotis Vasiloudes, M.D. PH.D., and Cygram Heritage, LLLP, Cygram Holdings, L.P., and Panevas, L.L.C. v. Maria Kastrenakes, individually and as trustee for the Maria Kastrenakes Irrevocable Trust; The Emmanuel Kastrenakes Irrevocable Trust; The Evangelia Kastrenakes Irrevocable Trust, The John Kastrenakes Irrevocable Trust, and The Joseph Kastrenakes

trusts (the "Concealed Family Trusts") that she formed for herself and her children to receive closing sale proceeds for properties liquidated in advance of this Reorganization at a time that the Kastrenakeses and the Auto Business were insolvent or in the zone of insolvency. Although the plaintiffs sought no relief against the Debtor or his assets, the Debtor has removed and now apparently takes responsibility for some role in forming and funding the Concealed Family Trusts. This has greatly complicated the issue of remand. It is peculiar that the Debtor did not list any of the Concealed Family Trusts in his bankruptcy schedules or statement of affairs, but now believes that they are subject to this Court's "core" jurisdiction.

15. When all of the Removed Adversary Proceedings have been fully adjudicated, the claims and liabilities of the relevant parties will be determined. Until the pleadings are framed, discovery is completed, and the causes of action are either adjudicated or settled in some manner, the Kastrenakeses' overall ability to reorganize will remain in limbo. This is particularly frustrating to the Omitted Creditors who make up the preponderance of the Debtor's debt, and have had discovery outstanding to the Kastrenakeses and others in two (2) of the State Actions for over four (4) months.

    **C.**    <u>**Summary of Developments During this Reorganization**</u>**:**

16. There are four (4) additional adversary proceedings that have not been removed but were commenced before this Court and seek relief under the Bankruptcy Code (collectively, the "Core Adversary Proceedings").

---

<u>Irrevocable Trust</u>, Case No. 22-CI-2403, in the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County, Florida (the "Trusts Case").

17. **The Injunction Adversary Proceeding:**[14] At the outset of this Reorganization, the Debtor sought an injunction against himself and Ms. Kastrenakes from any litigation by the plaintiffs identified in the NextGear Case, the Zervas Case, the New Wave Case, and the ICO Case. Whether the Injunction Adversary Proceeding is moot as a result of the various removals referenced above remains an issue to be decided. The Injunction Adversary Proceeding does not expressly address the Trusts Case, but it is clear that the Debtor does not want his wife sued even on cases where he is not named. The Debtor's rationale for requesting relief under Bankruptcy Code §105(a) is premised upon her anticipated but undisclosed planned contribution to her husband's reorganization effort.

18. **The Dischargeability Adversary Proceeding:**[15] The Omitted Creditors have objected to the Debtor's discharge under Bankruptcy Code §523(a)(2)(4) and (6), based upon all of the conduct articulated in their complaints initiated the New Wave Case and the ICO Case. Confirmability of the Plan cannot be determined until the Dischargeability Adversary Proceeding is adjudicated or otherwise resolved.

19. **The Derivative Adversary Proceeding:**[16] New Wave is a business entity that was half owned by Vasiloudes and other Omitted Creditors, and by the Debtor.

---

[14] Michael Kastrenakes v. Nextgear Capital, Inc., Panayiotis Vasiloudes, Cygram Heritage, LLLP, Thomas Zervas, and Konstantinos Papaspanos, Adv. Proc. No. 8:22-ap-00055-CED, pending in the United States Bankruptcy Court Middle District of Florida Tampa Division (the "Injunction Proceeding").

[15] Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, and Cygram Holdings, L.P. v. Michael Kastrenakes, Adv. Proc. No. 8:22-ap-00095-CED, pending in the United States Bankruptcy Court Middle District of Florida Tampa Division (the "Dischargeability Adversary Proceeding").

[16] Cygram Heritage, LLLP, Derivatively, on behalf of New Wave Acceptance, LLC v. Michael Kastrenakes and New Wave Acceptance, LLC, Adv. Proc. No. 8:22-ap-00096-CED, pending in

Vasiloudes put money in, and the Debtor secretly withdrew it to pay debts and buy inventory for other businesses owned by his wife or in-laws. On behalf of non-debtor New Wave, the plaintiffs have initiated the Derivative Adversary Proceeding to pursue derivative claims on behalf of New Wave under Bankruptcy Code §523(a)(2)(4) and (6).

20. **The Equitable Subordination Adversary Proceeding:**[17] Pursuant to Bankruptcy Code §510(c), the Omitted Creditors seek to subordination of claims asserted by the Debtor's immediate family and their wholly-owned business entities. Information and documentation supporting these claims has not been forthcoming. If the Debtor's obligations to his mother, wife, mother-in-law, or wife's company are truly arms' length, that would be important to the Debtor's reorganization efforts.

21. **The Mediation:** The Omitted Creditors and the Kastrenakeses have participated in a continuing mediation process (the "Mediation") presided over by R. Scott Shuker, Esquire, with in-person mediation events occurring on April 22 and July 28, 2022. The process of Mediation is inconclusive at present, with the parties adjourning and due to resume in the future. A new participant on the second phase of Mediation has been BayFirst Bank, f/k/a First Home Bank ("FHB"), another creditor of the Debtor.

D. **Overview of the Plan as it Purports to Serve as a Disclosure Statement:**

---

the United States Bankruptcy Court Middle District of Florida Tampa Division (the "Derivative Adversary Proceeding").

[17] Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, Cygram Holdings, L.P., Trifon Houvardas, and K&M Insurance Investors, LLC v. Michael Kastrenakes, Maria Kastrenakes, CPX Holdings, LLC, Pagona Kokolakis, and Evangeline Kastrenakes, Adv. Proc. No. 8:22-ap-00114-CED, pending in the United States Bankruptcy Court Middle District of Florida Tampa Division (the "Equitable Subordination Adversary Proceeding").

22. The Plan purports to be both a disclosure statement and a plan of reorganization; however, it falls short in both respects. For example, but without limitation, the following significant misstatements and omissions are present:

   a. The Plan mischaracterizes the reasons for the Debtor's financial decline, blaming COVID-19 and other events in isolation, without fully explaining the guilty plea and the questions unanswered when one considers the gargantuan sales tax liability in relation to the Debtor's meager present assets.

   b. The Plan identifies an extensive list of business entities that the Debtor owns or has owned in whole or in part, without any meaningful explanation as to how each became worthless, and how each may have some relationship to other business entities that are currently operating successfully in the used car automobile sales industry.

   c. The Plan references the State Actions, but omits any reference to the Omitted Creditors for any purpose consistent with Bankruptcy Code §§ 1122 through 1129. Given that the Omitted Creditors are the stated reason of why the Debtor sought chapter 11 relief, and are involved in seven (7) of nine (9) adversary proceedings, this oversight is highly inappropriate.

   d. The Plan mentions a contribution by Ms. Kastrenakes, including subordination of one of the claims at issue in the Subordination

    Adversary Proceeding, and other emoluments that are difficult to quantify; however, it is impossible to tell whether Ms. Kastrenakes's contribution is equivalent with her own liability to the estate and its creditors. So, whether this would count for "new value" or otherwise justify cramdown is far from clear.

e. The treatment of classes one (1) through nine (9) is at best speculative and at least completely unfeasible.

f. The Debtor has a home at 1755 McCauley Road, Clearwater, Florida, estimated to be worth $2,500,000, and the Plan proposes that the Debtor will "downsize" to a new homestead and contribute none of those exempt assets in a manner consistent with the "absolute priority rule."[18] But even this provision is extremely vague and precatory, especially when one notes that the home is not presently on the market.

g. The Plan contains extensive third-party release language that is unprecedented in the Eleventh Circuit, including most notably a blanket release for Ms. Kastrenakes. The release of Ms. Kastrenakes is the clearest evidence that the Debtor understands the weight and amount of the claims that the Omitted Creditors are asserting against the Debtor, Ms. Kastrenakes, the Concealed Family Trusts, and related defendants identified in the Removed Adversary Proceedings.

---

[18] In an individual chapter 11 contested confirmation, the absolute priority rule requires that even exempt assets must be considered in order to confirm. See e.g. In re Gosman, 282 B.R. 45 (Bankr. S.D. Fla. 2002).

      h. The liquidation analysis of the Debtor appended as an exhibit to the Plan falls incredibly short of the requirements of chapter 11, in large measure because the Debtor has maintained a set of business entities as part of a deliberate shell game to defraud not only the FDOR, but other creditors as well.

23. The portion of the Plan that is intended to serve as a "disclosure statement," whatever portion that may be, fails to provide "adequate information," as that term is utilized in Bankruptcy Code § 1125(a). The requirements of adequate disclosure have been given short shrift by the bench and bar in recent decades, and this is understandable in cases that lack complexity and uncertainty such as cases involving an apartment complex, a restaurant, a hotel, or some other business that is easy to evaluate in business terms; however, at its core this Reorganization is a fraud case and the Debtor is seeking to reorganize in the face of several fraud-based State Actions following a criminal guilty plea. This is the sort of case in which adequate disclosure is necessary to establish confirmability under Bankruptcy Code §1129.

24. In addition to all of the foregoing, it is impossible to see how any disclosure statement would have "adequate information" regarding any plan of reorganization until all of the Removed Adversary Proceedings and Core Adversary Proceedings are substantially further along.

25. Finally, the labyrinthian finances of the Kastrenakeses can only be fully understood when adequate opportunity has been given to review relevant 2021 federal tax filings for the Kastrenakeses (who have always filed jointly) and their various business

entities. This Court has understandably entered orders directing employment of an accounting firm that has handled Kastrenakes family accounting for many years and has entered orders extending the filing deadline through October 2022 (see Docs. 64, 74 and 88). Adequate information cannot be derived while tax returns remain unfiled.

### E.  Legal Issues Involving Confirmation Objections

26. The Bankruptcy Code mandates that a bankruptcy court can confirm a chapter 11 plan only if all of the requirements of Bankruptcy Code §1129(a) are met. The Bankruptcy Code does not define what the requirement that "a plan complies with the applicable provisions of this title," means. The United States Supreme Court has instructed bankruptcy courts that they may confirm plans "only if the court finds, inter alia, that the plan complies with the applicable provisions of the Code."[19] In a footnote, the Espinosa court went on to explain the principle that courts may raise, on their own initiative, certain non-jurisdictional barriers.[20] The Supreme Court directed that the statutes governing "confirmation of plan" do more than codify this principle; they require the bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue.

27. In Espinosa, the debtor proposed a plan that proposed to effectively rewrite substantive bankruptcy law on point. Instead, the debtor's plan in Espinosa provided a discharge of nondischargeable debt in a manner that was statutorily verboten. As in Espinosa, the Plan fails to comply with the requirements of Bankruptcy Code §§1122

---

[19] United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 276-77, 130 S. Ct. 1367 (2010).
[20] The Eleventh Circuit has given similar guidance in another context having some similarities to the case at bar. In re Lett, 632 F.3d 1216 (2011).

through 1129 in numerous respects.

### F. Allegations Relating to Basis for Plan Objection

28. **Classification:** The Plan fails to meet the requirements of Bankruptcy Code § 1129(a)(1). Specifically, the Omitted Creditors are omitted from the Plan, or else clearly misclassified contrary to Bankruptcy Code §1122.

29. **Absolute Priority Rule:** The Plan fails to meet the requirements of Bankruptcy Code § 1129(a)(1) for the additional reason that the absolute priority rule has been violated without any meaningful basis to invoke the "new value exception."[21]

30. **Insider Releases:** The Plan fails to meet the requirements of Bankruptcy Code § 1129(a)(1) for the additional reason that the insider releases provided in the Plan are completely inappropriate under the facts of this case.

31. **Good Faith:** The Plan fails to meet the requirements of Bankruptcy Code § 1129(a)(c). The Debtor at present is not proceeding in good faith, and has a primary goal of inoculating Ms. Kastrenakes and the Concealed Family Trusts from liability in a manner that is completely inconsistent with controlling law. Notwithstanding the high level of integrity of counsel for the Debtor, the Debtor himself is not proposing the Plan in good faith.

32. **Best Interests:** The Plan fails to meet the requirements of Bankruptcy Code § 1129(a)(7). Assuming that the Omitted Creditors will be classified in some

---

[21] The five (5) common law elements for establishing sufficient new value to trigger an exception to the absolute priority rule are either not clear at this time or else are clearly absent. See In re Bonner Mall Partnership, 2 F.3d 899 (9th Cir. 1993), motion to vacate denied, case dismissed sub nom. U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18 (1994).

manner, they will not accept the Plan. The Omitted Creditors are impaired, and they would recover the full amount of their allowed claims if the estate were properly augmented by pursuing claims against Ms. Kastrenakes, the Concealed Family Trusts, and various other insiders and business confidantes of the Debtor.

33.     **Non-Acceptance:**  The Plan fails to meet the requirements of Bankruptcy Code § 1129(a)(8). The Omitted Creditors, assuming that they are ultimately classified, are (a) impaired, (b) should be classified as a single class of fraud victims, and (c) have not accepted the Plan.

34.     **Feasibility:**  The Plan fails to meet the requirements of Bankruptcy Code § 1129(a)(11). The Plan is not feasible as written. The Debtor has defrauded the Omitted Creditors and others as the cornerstone of his Auto Business activities. To ratify and sanctify fraudulent misconduct by granting a discharge and third-party releases would have the effect of depriving the Omitted Creditors from their most likely sources of recovery while also placing the Debtor in a business plan that he cannot accomplish.

35.     **Cramdown:**  The Plan fails to meet the requirements of Bankruptcy Code § 1129(b). First, it is unlikely that the Plan will attract one accepting non-insider class, as required under Bankruptcy Code §1129(a)(10). Second, the Plan is not fair and equitable as it relates to the Omitted Creditors, as required under Bankruptcy Code §1129(b). Third, the Plan unfairly discriminates against the Omitted Creditors, under Bankruptcy Code §1129(b).

36.     **Alternatives to Confirmation:**  The Plan, whether viewed as a disclosure statement or plan of reorganization, does not account for the desirability of a straight

liquidation. A fiduciary for the Debtor's estate could likely pursue substantial claims for the benefit of creditors and easily fund a distribution far in excess of what the Debtor seems to propose in the Plan.

37. **Burden of Proof:** When a Chapter 11 plan of reorganization is advanced, the plan's proponent has the burden of proving by a preponderance of evidence that the plan complies with statutory requirements for confirmation.[22] Until the Kastrenakeses comply with discovery, provide tax documents, and comply with basic disclosure requirements, that burden cannot be met. Particularly while questions remain as to how New Wave could have incurred a $5,000,000 tax liability to the FDOR without posting the sort of revenues required to incur such liability, no plan having the contours of what the Debtor presently proposes can be confirmed.

## G. Reservation of Rights

38. The Omitted Creditors request the right to file or voice further objections to the Plan prior to or at the confirmation hearing scheduled to occur in this Reorganization, particularly once (a) the Core Adversary Proceedings and the Removed Adversary Proceedings have been further developed, (b) the Debtor and related taxpayers have filed tax returns that are relevant and discoverable in present contexts, and (c) adequate information appears in the form of a legally sufficient disclosure statement. The Omitted Creditors similarly reserve the right to withdraw or modify all such objections in the event that the Debtor responds satisfactorily to the Omitted Creditors' objections. It is expressly contemplated that the Omitted Creditors and the Debtor will continue to

---

[22] United States v. Arnold Baker Farms (In re Arnold Baker Farms), 177 B.R. 648, 654-55 (B.A.P. 9th Cir. 1994).

negotiate in good faith with parties in interest, in the Mediation and throughout the progress of this Reorganization.

WHEREFORE, the Omitted Creditors object to confirmation of the Plan and request the order of this Court:

a. sustaining these objections;

b. denying final approval of the Plan insofar as it purports to serve as a disclosure statement;

c. denying confirmation of the Plan, including cramdown if requested; and

d. granting all other relief consistent with the foregoing.

DATED this 29th day of July, 2022.

/s/ John A. Anthony
**JOHN A. ANTHONY, ESQ.**
Florida Bar Number: 0731013
janthony@anthonyandpartners.com
**ANDREW J. GHEKAS, ESQ.**
Florida Bar Number: 0119169
aghekas@anthonyandpartners.com
**ANTHONY & PARTNERS, LLC**
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602
Telephone: 813/273-5616
Facsimile: 813/221-4113
Attorneys for Omitted Creditors

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of July, 2022, a true and correct copy of the foregoing has been served via e-mail on the following parties:

Adam L Alpert on behalf of Creditor CPX Holdings, LLC
aalpert@bushross.com, bnkecf@bushross.com; ksprehn@bushross.com

17

Adam L Alpert on behalf of Interested Party Maria Kastrenakes
aalpert@bushross.com, bnkecf@bushross.com; ksprehn@bushross.com

John Blair Boyd on behalf of Creditor Grow Financial Federal Credit Union
bk@svllaw.com

Kathleen L DiSanto on behalf of Creditor CPX Holdings, LLC
kdisanto@bushross.com, bnkecf@bushross.com; ksprehn@bushross.com

Kathleen L DiSanto on behalf of Interested Party Maria Kastrenakes
kdisanto@bushross.com, bnkecf@bushross.com; ksprehn@bushross.com

Robert Bruce George on behalf of Creditor First Home Bank
rgeorge@thelilesfirm.com, aperry@thelilesfirm.com; rmittauer@thelilesfirm.com

Teresa M Hair on behalf of Creditor Wells Fargo Bank, N.A.
teresa.hair@brockandscott.com, WBECF@brockandscott.com

Danielle S Kemp on behalf of Creditor Courtney Leasing, Inc.
kempd@gtlaw.com, meyerp@gtlaw.com; FLService@gtlaw.com

Amy Denton Mayer on behalf of Debtor Michael Kastrenakes
amayer.ecf@srbp.com, srbpecf@srbp.com; aharris@srbp.com

Amy Denton Mayer on behalf of Plaintiff Michael Kastrenakes
amayer.ecf@srbp.com, srbpecf@srbp.com; aharris@srbp.com

Ruediger Mueller
trustee@tcmius.com, crm11@trustesolutions.net

Edward J. Peterson, III on behalf of Attorney Stichter, Riedel, Blain & Postler, P.A.
epeterson@srbp.com, epeterson.ecf@srbp.com; srbpecf@srbp.com

Edward J. Peterson, III on behalf of Debtor Michael Kastrenakes
epeterson@srbp.com, epeterson.ecf@srbp.com; srbpecf@srbp.com

Edward J. Peterson, III on behalf of Plaintiff Michael Kastrenakes
epeterson@srbp.com, epeterson.ecf@srbp.com; srbpecf@srbp.com

Robert C Schermer on behalf of Creditor SouthState Bank, N.A.
rschermer@manateelegal.com

United States Trustee - TPA
USTPRegion21.TP.ECF@USDOJ.GOV

Nicolette C Vilmos on behalf of Creditor NextGear Capital, Inc.

nicolette.vilmos@nelsonmullins.com, francis.santelices@nelsonmullins.com; allison.abbott@nelsonmullins.com

Nicolette C Vilmos on behalf of Defendant NextGear Capital, Inc.
nicolette.vilmos@nelsonmullins.com, francis.santelices@nelsonmullins.com; allison.abbott@nelsonmullins.com

Nathan A Wheatley on behalf of U.S. Trustee United States Trustee - TPA
nathan.a.wheatley@usdoj.gov

J Steven Wilkes on behalf of U.S. Trustee United States Trustee - TPA
steven.wilkes@usdoj.gov

Joel M. Aresty, P.A. on behalf of Platinum Auto Finance of Tampa Bay, LLC,
Aresty@Mac.com

Nicole Mariani Noel on behalf of Thomas Zervas and Konstantinos Papaspanos
nmnoel@kasslaw.com

Shirley Palumbo on behalf of Defendant William Hilgenfeldt
shirley.palumbo@gmlaw.com, bankruptcy@gmlaw.com; Edmund.Loos@gmlaw.com

I further certify that a true copy of the foregoing has been furnished by U.S. first class mail on the 29th day of July, 2022, to the following non-CM/ECF participants:

Michael Kastrenakes
1755 McCauley Road
Clearwater, Florida 33764
Debtor

/s/ John A. Anthony
**ATTORNEY**