## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In Re:                                                          CASE NO. 8:22-bk-01210-CED
                                                                Chapter 11

MICHAEL KASTRENAKES,

Debtor.

_____/

## SECURED CREDITOR WESTLAKE FLOORING COMPANY, LLC'S OBJECTION TO DEBTOR'S CHAPTER 11 DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION [DE 96]

Secured Creditor Westlake Flooring Company, LLC ("Westlake"), under FED. R. BANKR. P. 3017(a) and 3020(b)(1), Bankruptcy Code §§ 1125 and 1129, and Local Rule 3020-1, objects to Debtor Michael Kastrenakes' ("Debtor") Chapter 11 Disclosure Statement and Plan of Reorganization ("Plan," DE 96).

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this objection under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

2.      Venue is proper in this Court under 28 U.S.C. § 1409.

3.      The statutory predicates for the relief requested are contained in sections 506(a), 524(e), 1111(b), 1122, 1123, and 1129 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, as amended ("Bankruptcy Code").

CASE NO.: 8:22-bk-01210-CED

## BACKGROUND OF THE CASE

4.    Debtor is the president and sole owner of MK Automotive, Inc. ("MK Automotive"), an enterprise that sells used motor vehicles.

5.    On or about November 28, 2019, MK Automotive executed a Promissory Note and Loan and Security Agreement ("PNLSA") in favor of Westlake. A copy of the PNLSA is attached as Exhibit A.

6.    Under the PNLSA, Westlake provided MK Automotive a line of credit of $500,000.00 to floor vehicles into its inventory ("Floorplan").

7.    MK Automotive pledged as a continuing security interest all of its assets and properties to secure payment of its liabilities to Westlake under the PNLSA, and authorized Westlake to file UCC filing statement and any amendments and continuation statements thereto to preserve Westlake's security interest. *See* Ex. A at 2.

8.    Contemporaneously with executing the PNLSA, Debtor executed an Individual and Personal Guaranty ("Guaranty"). A copy of the Guaranty is attached as Exhibit B.

9.    Section 2(a) of the Guaranty states:

> Guaranty Obligations. Guarantor hereby voluntarily, unconditionally, and absolutely guarantees: (i) the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of all Liabilities; and (ii) the full and prompt performance of all the terms,

- 2 -
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

CASE NO.: 8:22-bk-01210-CED

> covenants, conditions, and agreements related to the Liabilities. Guarantor further agrees to pay all expenses, including attorneys' fees and court costs (including, in each case, those relating to bankruptcy and appeals), paid or incurred by Lender or its Affiliates in endeavoring to collect on any Liabilities, and in enforcing this Guaranty or in defending any claims by Borrower or Guarantor related to any of the Liabilities plus interest on such amounts at the lesser of (A) fifteen percent (15%) per annum, compounded daily, or (B) the maximum rate permitted by Law. Interest on such amounts paid or incurred by Lender shall be computed from the date of payment made by Lender and shall be payable on demand.

Ex. B at 1.

10.     Section 2(b) of the Guaranty states in part:

> General Nature of Guaranty. Guarantor acknowledges that this Guaranty is a guaranty of payment and not of collection, and that his or her obligations hereunder shall be absolute, unconditional and unaffected by: . . . (viii) the voluntary or involuntary . . . bankruptcy . . . (ix) the release or discharge of Borrower or any other Guarantor from the performance or observance of any agreements, covenants, terms, or conditions in connection with any of the Liabilities, by operation of Law or otherwise . . .

Id. at 1–2.

11.     Section 2(f) of the Guaranty states:

> Security Interest. For the purpose of securing this Guaranty, Guarantor hereby grants Lender a security interest in all of Guarantor's assets and personal properties, now owned and hereinafter acquired, wherever located, including all vehicles, inventory, parts and accessories inventory, equipment, goods, fixtures, accounts, deposit accounts, accounts receivable, holdback

CASE NO.: 8:22-bk-01210-CED

> reserves, manufacturer rebates and incentive payments, payment intangibles, instruments, commercial tort claims, letter of creditor rights, investment property, securities and securities accounts, and general intangibles of Guarantor; any cash, money, or other property of Guarantor; all accessions to, substitutions for, and all replacements of any of the foregoing; all chattel paper, documents, instruments, monies, documents of title, residues and property of any kind related to any of the foregoing; all books and records of Guarantor related to any of the foregoing, including without limitation, computer programs, print-outs, and other computer hardware and software materials and records pertaining to any of the foregoing; together with all proceeds and products of the foregoing, including, without limitation, proceeds of insurance policies insurance any of the foregoing (collectively, "Collateral"). The security interest granted in this Guaranty is in addition to and not in substitution of any right of offset, netting, or reclamation that Lender may have against Guarantor pursuant to any contract or applicable law.

> By execution here, Guarantor authorizes Lender to file any financing or continuation statements under the UCC with respect to the security interest in the Collateral granted hereunder.

Ex. B at 2.

12.    The Guaranty further provides that Debtor's failure to make full payment of any amount owed is an event of default. Ex. B at 4.

13.    On December 3, 2018, Westlake recorded a UCC-1 Financing Statement in the Florida Secured Transaction Registry, Number 201807146276 ("UCC-1"), against MK Automotive and Debtor. A copy of the UCC-1 is attached as Exhibit C.

CASE NO.: 8:22-bk-01210-CED

14.     Thereafter, MK Automotive used the Floorplan to purchase vehicles into its inventory including a 2016 GMC 3500 Sierra, VIN 1GT42YE8XGF112773 ("Vehicle").

15.     On March 27, 2022 ("Petition Date"), Debtor commenced this bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code. *See* DE 1.

16.     As of the Petition Date, Debtor, as guarantor for MK Automotive, owed, and still owes, Westlake $26,885.09.

17.     Upon information and belief, MK Automotive is still in possession of the Vehicle, or has sold the Vehicle but failed to satisfy the outstanding obligation owed to Westlake.

## WESTLAKE'S CLAIM

18.     On May 26, 2022, Westlake filed its Proof of Claim ("POC," Claim No. 9). A copy of the POC is attached as Exhibit D.

19.     Westlake stated it was a secured creditor, based upon the UCC-1, and held a secured lien on all of Debtor's assets and personal property. POC § 9.

20.     Westlake is owed the principal of $26,885.09, accrued interest of 10% per annum from the Petition Date, plus attorney's fees and costs.

21.     On July 21, 2022, Debtor filed the Plan.

22.     Debtor has not filed an objection to Westlake's POC.

CASE NO.: 8:22-bk-01210-CED

## TREATMENT OF WESTLAKE'S SECURED CLAIM UNDER THE PLAN

23.    Despite Westlake's duly filed POC that establishes its secured status, the Plan makes no provisions to satisfy Westlake's claim as a secured creditor. The Plan omits Westlake as a secured claim, despite other floorplan obligations that Debtor guaranteed being identified in Class 8 of the Plan.

24.    Westlake is relegated to Class 9, an impaired class to be treated as a non-priority unsecured claim entitled to only a *pro rata* share of projected disposable income in accordance with Exhibit B of the Plan.

## OBJECTIONS TO CONFIRMATION

**A.    The Plan Is Not Fair and Equitable.**

"The Debtor has the burden of proof on each element of 1129(a) and (b)." *In re New Midland Plaza Assoc.*, 247 B.R. 877, 883 (Bankr. S.D. Fla. 2000). "The appropriate standard of proof at the hearing on confirmation is the clear and convincing evidence standard, rather than the preponderance of the evidence standard." *Id.* Preponderance means that the existence of a fact is simply more likely than not, while clear and convincing is a higher standard and requires a high probability of success." *Id.* "A Chapter 11 plan may be confirmed only if each class of creditors affected by the plan consents." *In re Westport Holdings Tampa, LP*, 604 B.R. 82, 86 (Bankr. M.D. Fla. 2019).

CASE NO.: 8:22-bk-01210-CED

Here, the Plan is not fair and equitable under the standards of § 1129(b)(2). The Bankruptcy Code mandates that under no circumstance may the Plan be confirmed unless "the plan . . . is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). "11 U.S.C. § 1129(b)(2)(i)(I), (II) requires that the holder of such claim retain its liens securing such claim and that such creditor receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim. Under this provision the creditor must be paid the amount of its allowed secured claim together with a market rate of interest." *In re DiMaria*, 202 B.R. 634, 640 (Bankr. S.D. Fla. 1996).

The Plan ignores Westlake's status as a secured creditor by failing to provide for its full, unimpaired satisfaction. Westlake's POC was filed on July 29, 2022, which pre-dates the Plan. Debtor was on notice that Westlake is a secured creditor, but has not treated Westlake as a secured creditor in the Plan. "Pursuant to section 502(a), a timely filed proof of claim is deemed allowed, unless a party in interest . . . objects[.]" *In re Edwards*, 603 B.R. 516, 520 (Bankr. S.D. Fla. 2019).

The Plan is not confirmable because it unfairly strips Westlake's security lien under the Guaranty and UCC-1, and it will not receive either the value of Debtor's assets or the amount of its claim. *In re Midway Inv., Ltd.*, 187 B.R. 382, 390 (Bankr. S.D. Fla. 1995) (denying confirmation of proposed plan of reorganization finding it

CASE NO.: 8:22-bk-01210-CED

was not fair and equitable because it failed to ensure secured creditor would retain its lien, receive value of the asset, or its claim). For the Plan to be confirmable, Debtor must resort to the "cram-down" provisions of § 1129(b).

1.    **The Plan Does Not Meet the Cramdown Requirements of § 1129(b)(2)(A)(i)(I).**

Again, Debtor must establish the requirements of the cramdown by a preponderance of the evidence. *See, e.g.*, *In re SM 104 Ltd.*, 160 B.R. 202, 214 (Bankr. S.D. Fla. 1993) ("Debtor's burden to prove each of the requirements of confirmation by a preponderance of the evidence."); *In re Immenhausen Corp.,* 172 B.R. 343, 347 (Bankr. M.D. Fla. 1994) ("It should be noted at the outset that in order to confirm a plan of reorganization, a debtor has the burden of proof as to each element of § 1129(a) of the Bankruptcy Code"). Debtor, as the Plan proponent, has not met this burden and the Plan cannot be confirmed.

A plan confirmed under the Bankruptcy Code's cram-down provisions must be "fair and equitable." *In re Miami Ctr. Assoc., Ltd.*, 144 B.R. 937, 939 (Bankr. S.D. Fla. 1992) (when debtor requests cramdown, "to confirm the plan absent compliance with § 1129(a)(8), the court must find that the plan meets the minimum requirements of a fair and equitable plan under § 1129(b)(2)"). Section 1129(b)(2)(A) defines "fair and equitable" to mean that secured creditors, like Westlake: "(1) retain the liens securing such claims and (2) receive cash payments totaling at least the allowed amount of such claim as of the effective date of the plan,

of at least the value of such holder's interest in the estate's interest in such property or the indubitable equivalent of such claims." 11 U.S.C. § 1129(b)(2)(A). The Plan does not address whether Westlake will retain its secured lien.

Of similar importance is the Plan's improper treatment of Westlake's claim. There is no provision for payments towards the principal or any interest, and no provision for a payment period to satisfy Westlake with the present value of its secured claim. Westlake may receive full payment of its claim immediately and the Plan must provide for an appropriate interest rate to provide Westlake with the present value of its claim. *In re Gramercy Twins Assoc.*, 187 B.R. 112, 122 (Bankr. S.D.N.Y. 1995) (citing *Rake v. Wade*, 508 U.S. 464, 475 n.8 (1993) ("[w]hen a claim is paid off pursuant to a stream of future payments, a creditor receives the 'present value' of its claim only if the total amount of the deferred payments includes the amount of interest to compensate the creditor for the decreased value of the claim caused by the delayed payments.")).

If confirmed, Westlake will only receive a *pro rata* share of disposable income with nineteen other unsecured creditors who are owed over $21,000,000.00. This falls short of the equitable requirements for the Plan to be confirmed. *In re Immenhausen Corp.* 172 B.R. 343, 350 (Bankr. M.D. Fla. 1994) (concluding proposed plan was not fair and equitable and would not allow secured creditor to "realize the indubitable equivalent of its claim and would certainly not receive in the

deferred cash payments totaling at least the allowed amount of its claim, both of which are requirements for cramdown under § 1129(b)(2)(A)(ii) and (iii)). Section 1129(b)(2)(A) protects the "right of a secured creditor to the value of its collateral, [which] is a property right protected by the Fifth Amended [to the U.S. Constitution]." *In re Townley*, 256 B.R. 697, 700 (Bankr. D.N.J. 2000). The "indubitable equivalence language" of § 1129(b)(2)(A)(iii) is intended to follow the strict approach taken by Judge Learned Hand in *In re Murel Holding Corp.*, 75 F.2d 941 (2d Cir. 1935), which, to stay away from exceeding "constitutional limitations," precludes a statute from depriving a secured creditor of "his money or at least the property [securing the debt owing to him] . . . unless by a substitute of the most indubitable equivalent." *Id* at 942.

Courts have held that a plan providing for a dissenting secured creditor to receive less than the property securing its claim may be confirmed only if the value of the property being conveyed to the creditor, based on a "conservative" valuation that considers the uncertainty in the valuation process, is equal to its secured claim. *See In re Bannerman*, No. 10-1053, 2010 WL 4260003, at *4 (Bankr. E.D.N.C. Oct. 20, 2010) (citing *In re Simons*, 113 B.R. 942, 947 (Bankr. W.D. Tex. 1990)). Here, the Plan does not call for any property to be conveyed to Westlake. The Plan offers no legal basis for its unfair and inequitable treatment of Westlake's secured claim and does not support the cramming down of Westlake's claim.

CASE NO.: 8:22-bk-01210-CED

**B.      The Plan Does Not Meet the Requirements of Bankruptcy Code §
1129(a).**

Section 1129(a)(1) provides that the Court may not confirm a plan unless the

"plan complies with the applicable provisions of the Bankruptcy Code." 11 U.S.C.

§ 1129(a)(1). "Section 1122(a) expressly provides that only substantially similar

claims may be placed in the same class. . . . [M]any courts, including five circuit

courts of appeal, while recognizing that § 1122 does not explicitly forbid a plan

proponent from placing similar claims in separate classes, have imposed significant

limited on the ability of a plan proponent to do so." *In re SM 104, Ltd.*, 160 B.R.

202, 216 (Bankr. S.D. Fla. 1993). Regardless, one clear rule has emerged: "thou shalt

not classify similar claims differently in order to gerrymander an affirmative vote on

a reorganization plan." *Matter of Greystone III Joint Venture,* 995 F. 2d 1274, 1279

(5th Cir. 1991).

"If a plan unfairly creates too many or too few classes, if the classifications

are designed to manipulate class voting, or if the classification scheme violates basic

priority rights, the plan cannot be confirmed." *In re Austin Ocala, Ltd.*, 152 B.R.

773, 775 (Bankr. M.D. Fla. 1993). "Section 1123(a)(4) [of the Bankruptcy Code]

states that a plan 'shall … provide the same treatment for each claim or interest of a

particular class, unless the holder of a particular claim or interest agrees to a less

favorable treatment of such particular claim or interest …." *In re Winn-Dixie Stores,

Inc.*, 356 B.R. 239, 244 (Bankr. M.D. Fla. 2006) (quoting 11 U.S.C. § 1123(a)(4)).

CASE NO.: 8:22-bk-01210-CED

Here, the Plan improperly places Westlake's secured claim with Debtor's non-priority, unsecured creditors. Westlake's claim is not substantially similar to non-priority, unsecured creditors due to its perfected secured lien. Westlake has a secured lien on all of Debtor's personal property. Classes 4–6 are substantially similar to Westlake's secured claim because they all have liens on Debtor's personal property. Debtor provides no legal basis for improperly placing Westlake in Class 9 of the Plan instead of Classes 4–6.

## CONCLUSION

Westlake hereby objects to the Plan, requests that Debtor's request for Plan confirmation be denied, and for Westlake be awarded such other relief that is just and proper.

Dated: September 8, 2022

Respectfully submitted,

/s/ James R. Liebler, II
JAMES R. LIEBLER, II
Florida Bar No. 115348
**LIEBLER, GONZALEZ & PORTUONDO**
44 West Flagler Street, 25th Floor
Miami, FL 33130
Tel: (305) 379-0400
Email: service@lgplaw.com
*Counsel for Westlake Flooring*
*Company, LLC*

**CASE NO.: 8:22-bk-01210-CED**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 8th day of September, 2022, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ James R. Liebler, II*
JAMES R. LIEBLER, II