UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                                Chapter 11

MICHAEL KASTRENAKES,                                Case No. 8:22-bk-01210-CED

      Debtor.
_____/

**RESPONSE OF NEXTGEAR CAPITAL, INC.
TO DEBTOR'S OBJECTION TO CLAIM NO. 11**

    NextGear Capital, Inc. (the "NextGear"), by and through its undersigned counsel, hereby files its response (the "Response") to Debtor's Objection to Claim No. 11 (the "Claim Objection"). In support of this Response, the NextGear respectfully states as follows:

**PRELIMINARY STATEMENT**

    1.    On June 2, 2022, NextGear filed Claim No. 11 in the total amount of $1,237,031.70 ("Proof of Claim") as a general unsecured claim based upon the Debtor's individual personal Guaranty (the "Guaranty") of a Demand and Promissory Note and Loan and Security Agreement (the "Note") executed by MK Automotive, Inc., d/b/a New Wave Auto Sales ("Dealer").

    2.    On August 26, 2022, Debtor filed its Claim Objection asserting that the Proof of Claim should be disallowed in its entirety based upon certain Dealer affirmative defenses and Dealer counterclaims filed by Debtor in Adversary Proceeding 8:22-ap-00012-CED (the "Removed Action").

    3.    Debtor claims that he intends to file a motion to consolidate his Claim Objection with the Removed Action for purposes of discovery and trial.

## **ARGUMENT**

NextGear hereby timely submits this Response to the Claim Objection, and requests that the Court overrule the Claim Objection.

### THE VALID AGREEMENT TO ARBITRATE DEBTOR CLAIMS SHOULD BE ENFORCED

The Debtor agreed that all claims asserted against NextGear must be submitted to arbitration. Section 5(e) of the Debtor Guaranty contains the following arbitration provision:

Dispute Resolution; Waiver of Class Action Rights.

(i) In the unlikely event that Lender is unable to resolve a dispute or claim that Guarantor may have, Guarantor agrees to arbitrate any such dispute or claim. This agreement to arbitrate is intended to be broadly interpreted, and includes (i) all disputes, claims and counterclaims arising out of or relating to this Guaranty or any aspect of Guarantor's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (ii) all disputes, claims and counterclaims that may have arisen before this Guaranty or any prior contract or agreement between Guarantor and Lender; and (iii) any disputes, claims and counterclaims that may arise after the termination of this Guaranty. Additionally, Guarantor acknowledges that Lender may (but shall in no event be required to) arbitrate any dispute or claim that it may have against Guarantor, with any such arbitration being governed by the provisions of this Section 5(i). Guarantor, at his or her election, may opt-out of the arbitration provisions set forth in Sections 5(i)(i), 5(i)(iii) and 5(i)(iv) by providing written notice of his or her election to opt-out no later than thirty (30) days after Guarantor's execution of this Guaranty, which notice shall be provided to Lender pursuant to Section 5(d) ("Opt-Out Notice"), provided that such Opt-Out Notice shall become effective only upon Guarantor's receipt of written confirmation from Lender that such Opt-Out Notice has been received by Lender within the required time period. Guarantor acknowledges and agrees that, irrespective of any Opt-Out Notice or any written confirmation thereof, Guarantor shall in all events be subject to the provisions of Section 5(i)(ii).

(ii) ANY ARBITRATION PROCEEDING UNDER THIS GUARANTY WILL TAKE PLACE ON AN INDIVIDUAL BASIS. CLASS ARBITRATIONS AND CLASS ACTIONS OF ANY KIND (WHETHER PURSUED THROUGH ARBITRATION OR THROUGH THE COURTS) ARE NOT PERMITTED. GUARANTOR AGREES THAT IT MAY BRING CLAIMS AGAINST LENDER ONLY IN HIS OR HER INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. GUARANTOR AGREES THAT, BY ENTERING INTO THIS GUARANTY, GUARANTOR IS WAIVING HIS OR HER RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR OTHER

SIMILAR REPRESENTATIVE PROCEEDING. UNLESS CONSENTED TO IN WRITING BY LENDER, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE SIZE OF BORROWER'S CREDIT LINE, THE INTEREST RATE TO WHICH ADVANCES ARE SUBJECT AND CERTAIN FEES CHARGED TO BORROWER, AS WELL AS THE SIZE AND DATES OF SPECIFIC ADVANCES AND WHAT (IF ANY) GUARANTIES ARE REQUIRED, ARE UNIQUE, '1'0 AND NEGOTIATED BY BORROWER (AND, IF APPLICABLE, GUARANTOR), AND THAT SUCH FACTORS WILL AND DO VARY AMONG BORROWERS AND OTHER GUARANTORS,

(iii)  Any dispute or claim subject to arbitration pursuant to this Section 5(i) shall be submitted to binding arbitration administered by the Judicial Arbitration and Mediation Service ("JAMS") pursuant to its Comprehensive Arbitration Rules and Procedures as then in effect (the "JAMS Comprehensive Rules"); provided, however, that any dispute or claim that is subject to arbitration pursuant to this Section 5(i) and that involves disputes or claims where the aggregate amount reasonably in dispute or controversy is less than $100,000, shall be submitted to binding arbitration administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures as in effect as of the effective date of this Guaranty (the "JAMS Streamlined Rules"), The disputes and claims subject to arbitration pursuant to this Section 5(i) will be resolved by a single arbitrator selected pursuant to the JAMS Comprehensive Rules or the JAMS Streamlined Rules, as the case may he, The arbitrator shall be bound by and shall strictly enforce the terms of this Guaranty and may not limit, expand or otherwise modify any term or provision of this Guaranty or any other contract or document between Guarantor and Lender. The arbitrator shall not have the power to award to Guarantor any damages that are excluded or that have been waived by Guarantor under this Guaranty, and Guarantor irrevocably waives any claim that it may have thereto. The arbitrator shall not have the power to order pre-hearing discovery of documents or the taking of depositions. The arbitrator shall render a written decision within six (6) months after being selected, Any arbitration will be held in Indianapolis, Indiana (or its greater metro area). Each Party will bear its own expenses in the arbitration and will share equally the costs of the arbitration; provided, however, that the arbitrator may, in his or her discretion, award costs and fees to the prevailing Party. The result of any arbitration shall be final and binding upon the Parties. Judgment upon any arbitration award may be entered in any court having jurisdiction over the award or over the applicable party or its assets.

(iv)  This Guaranty evidences transactions in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Section 5(i), notwithstanding the provisions of Section 5(g).

By executing the Debtor Guaranty, Debtor agreed to arbitrate any dispute he may have with NextGear. The broad language of the arbitration provision covers any past, present, or future claims that might arise under any legal theory. There is no question the Debtor Guaranty arbitration provision is valid and that the issues raised in the Claim Objection are within the scope of the arbitration provision.

The Debtor Guaranty claims are well within the broad scope of the arbitration agreement. The agreement covers "all disputes, claims and counterclaims arising out of or relating to the Guaranty or any aspect of Guarantor's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory." An agreement to arbitrate claims "arising out of" a contract is extremely broad, covering "any dispute between contracting parties that is in any way connected with their contract." *Sweet Dreams Unlimited, Inc. v. Dial-a-Mattress Int'l.*, F.3d 639, 642-43 (7th Cir. 1993). Debtor has therefore agreed that he would arbitrate any and all claims he intends to bring against NextGear. *See, e.g., PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 242 (1987); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F.Supp.2d 734, 740-41 (N.D. Ill. 2010) (requiring arbitration of claims connected with plaintiffs' contracts).

Debtor and NextGear agreed that all claims Debtor may hold against NextGear would be resolved through arbitration. Both NextGear and Debtor consented to the arbitration forum, and NextGear consents to the Debtor commencing arbitration to resolve the issues raised in the Claim Objection.

### THE DEBTOR HAS FAILED TO CARRY HIS BURDEN OF PROOF

A properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim. *See* Fed. R. Bankr. P. 3001(f). The Proof of Claim is sufficient to state a

valid claim against the Debtor, contains Exhibits detailing the amount due and the related contracts, and, therefore, the Proof of Claim constitutes *prima facie* evidence of the validity of the amount owed to the NextGear (the " Underlying Debt").

A valid basis exists for allowance of the Proof of Claim. The Debtor alleges that he has defenses to the Claim, but these defenses ignore the unambiguous terms of the contractual agreements by and between Dealer, the Debtor and NextGear.

To overcome the *prima facie* evidence of the validity of the Proof of Claim and Underlying Debt, the objecting party must come forth with evidence which, if believed, *would refute at least one of the allegations essential to the claim. See Sherman v. Novak, Trustee (In re Reilly)*, 245 B.R. 768, 773 (2nd Cir. BAP 2000) (emphasis added). It is often said that the objector must produce evidence equal in force to the *prima facie* case. *See In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991), *quoting 3 L. King, Collier on Bankruptcy*, § 502.02 at 502-22 (15th ed. 1991).

The Debtor has failed to produce any evidence (and certainly not "evidence equal in force to the *prima facie* case made by the Proof of Claim) that, if proven, would refute the Proof of Claim. In fact, the Debtor asserts only bare allegations that are unsupported by any evidence and unverified by the Debtor. Therefore, the Debtor has wholly failed to carry his burden of producing evidence to refute any allegations essential to the Underlying Debt.

### DEBTOR IS THE WRONG PARTY TO ASSERT DEALER CLAIMS

To support the Claim Objection, the Debtor attempts to assert defenses and counterclaims against NextGear related to NextGear communications to third parties related to the Dealer and NextGear repossessing the defaulted Dealer's inventory collateral. The Debtor lacks standing to assert the defenses and counterclaims because the Debtor is not a party to the Note agreement that he claims was breached, and the Debtor did not own the inventory collateral upon which his Claim

Objection is based. At all times NextGear acted in accordance with the terms of the Note and Guaranty.

The Debtor executed the Guaranty, in which he agreed to be liable to NextGear for the full and prompt payment of all Note liabilities and waived possible Dealer defenses. Section 2(b) of the Guaranty provides:

> 2(b) <u>General Nature of Guaranty</u>. Guarantor acknowledges that this Guaranty is a guaranty of payment and not of collection, and that his or her obligations hereunder shall be absolute, unconditional, and unaffected by: (i) the waiver of the performance or observance by Borrower or any Guarantor of any agreement, covenant, term, or condition to be performed or observed by Borrower or any such Guarantor, as the case may be; (ii) the extension of time for the payment of any sums owing or payable with respect to any of the Liabilities or the time for performance of any other obligation arising out of or relating to any of the Liabilities; (iii) the modification, alteration, or amendment of any obligation arising out of or relating to any of the Liabilities; (iv) **any failure, delay, or omission by Lender to enforce, assert, or exercise any right, power, or remedy in connection with any of the Liabilities**; (v) the genuineness, validity, or enforceability of any of the Liabilities or any document related thereto; (vi) **the existence, value, or condition of, or failure of Lender to perfect its lien against, any security pledged in connection with the Liabilities**; (vii) **the release of any security pledged in connection with the Liabilities, or the release, modification, waiver, or failure to enforce any other guaranty, pledge, or security agreement**; (viii) the voluntary or involuntary liquidation, dissolution, sale of all or substantially all of the property, **marshalling of assets** and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition, or readjustment or other similar application or proceeding affecting Borrower or any assets of Borrower; (ix) the release or discharge of Borrower or any other Guarantor from the performance or observance of any agreements, covenants, terms, or conditions in connection with any of the Liabilities, by operation of Law or otherwise; (x) the default of Borrower in any obligations to Guarantor or any torts committed by Borrower against Guarantor, even if Lender is alleged to be complicit or to have committed a direct tort against Guarantor; or (xi) any change in Borrower's ownership, entity type, legal structure, or state of organization or formation, or in Guarantor's relationship to Borrower or any other Guarantor.

Not only does the Debtor lack standing to assert an alleged breach of contract claim exclusively belonging to the Dealer, but the Debtor explicitly waived all rights related to Dealer collateral.

Because of Dealer's payment default, NextGear took steps to secure its collateral. The Debtor's Claim Objection illogically alleges that NextGear's recovery of its collateral subsequent to Dealer's default supports the Claim Objection. This assertion is nonsense. The Dealer consensually granted NextGear a security interest in all collateral, including vehicle inventory. The Note and Ind. Code 26-1-9.1-609[1] explicitly provide for recovery of collateral after default, thus no facts in this case can support the Debtor Claim Objection.

NextGear's recovery of the collateral was authorized by the Dealer when Dealer and NextGear agreed in the Note that the collateral would include all titles, vehicles and other inventory then owned or thereafter acquired by the Dealer. In Section 2 of the Note, the Dealer granted to NextGear a security interest in all collateral, including vehicle inventory, to secure the Indebtedness owed to NextGear under the Note.

NextGear exercised its rights to the collateral upon Dealer's default. In Section 6 of the Note, NextGear and Dealer defined an event of default under the Note to include, among other things, any of the following:

(a)   Borrower or any Guarantor fails to perform any of its obligations, undertakings or covenants under the Note or under any other Loan Documents […].
(b) Borrower or any Guarantor breaches or otherwise violates any provision of the Note or any other Loan Documents.
[...]

When the Dealer failed to make timely payments to NextGear when due under the Note and Advance Schedule thereto, the Dealer breached its payment obligations under Sections 4(f)

---

[1] Indiana law applies. See Note, Sec. 20.

and 5(f) of the Note, thereby triggering an Event of Default under Section 6(a) of the Note. Sections 4(f) and 5(f) of the Note state, in relevant part:

> 4(f): [Dealer shall] hold all amounts received from the sale of any Unit of Lender Financed Inventory in the form as received in trust for the sole benefit of and for Lender, and [shall] remit such funds satisfying all amounts due Lender and owing by Borrower for such Unit of Lender Financed Inventory, in each case within twenty-four (24) hours of Borrower's receipt of such funds (or receipt of such funds by any Affiliate of Borrower);
>
> 5(f): Borrower shall pay all Liabilities, without notice, that concern or relate to a Floorplan Advance for any Unit of Lender Financed Inventory on or before the Maturity Date. […]

"Maturity Date" is defined in the Appendix to the Note at Paragraph 41:

> (41) "Maturity Date" shall mean (a) for all Liabilities concerning or relating to a Floorplan Advance or a Receivable Advance, the earlier of the last day of the current Period or the day on which Lender declares a Maturity Event; (b) for all Liabilities not directly related to a Floorplan Advance or a Receivable Advance, ten (10) days after the date such Liability is posted to Borrower's account; and (c) for One Day Loans, the date such One Day Loan is posted to Borrower's account. Notwithstanding the foregoing, upon the declaration of an Event of Default by Lender, the Maturity Date for all Liabilities shall be the earlier of (i) the date on which such Event of Default is declared by Lender, or (ii) the date on which such Event of Default first occurred. In the event the Maturity Date is not a Business Day, the Maturity Date shall be deemed to be the next Business Day.

NextGear and Dealer agreed in Section 7(a) of the Note that upon an Event of Default:

> Lender shall have all rights and remedies available hereunder and under the other Loan Documents, and all rights and remedies available to Lender at law or in equity, including the rights and remedies of a secured party under the UCC. These rights and remedies include the right to…enter into Borrower's premises with or without legal process, but without force and to take possession of and remove any collateral; and to notify any account debtors or any person obligated on collateral to make payment or otherwise render performance to or for the benefit of Lender.

NextGear's recovery of its collateral was authorized by agreement of NextGear and Dealer and by the UCC as adopted in Indiana by statute. All vehicles and titles were collateral securing the Dealer obligations to NextGear, and upon Dealer's default NextGear exercised its contractual rights to the collateral pursuant to the terms of the Note. That is not the basis for the Claim Objection; rather, it is the standard remedy in the world of secured transactions.

The very Exhibit A emails which Debtor purports to rely on for his Claim Objection are premised upon Dealer's default in payment obligations to NextGear. NextGear, as a secured creditor, has rights to recover its collateral, and pursuant to the terms of the Note 7(a) and the UCC, NextGear was required to provide notice to third parties that may hold an interest in the collateral that NextGear intended to exercise its rights as a secured creditor. *See* Ind. Code 26-1-9.1-611(b).

## TORTIOUS INTERFERENCE

The Debtor's Claim Objection related to tortious interference also fails. The Claim Objection does not even allege that Plaintiff interfered with any specific contract interest of the Debtor. "The elements of an action for tortious interference are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducements of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. All of the elements must be shown to establish this tort." *Melton v. Ousley*, 925 N.E.2d 430, 440 (Ind. Ct. App. 2010) (internal citation omitted).

"Additionally, our Supreme Court has held that 'this tort requires some independent illegal action.'" *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind.2003).

Here, Debtor fails to establish basic elements of tortious interferences as well as an illegal action that constitutes intentional inducement of breach, and cannot establish absence of

justification. The Dealer authorized all Plaintiff communication. Sections 4(d) and 7(a) of the Note authorize NextGear to share any and all information regarding Dealer and its financial status to any and all persons. The Debtor lacks standing and fails to support a cause of action for tortious interference.

### RESERVATION OF RIGHT TO SUPPLEMENT

NextGear fully reserves all of its rights to subsequently: (i) object to any amendments or additions to the Claim Objection; and (ii) amend and/or supplement this Response to include additional information or documentation.

### CONCLUSION

For the reasons set forth herein, the Debtor has failed properly commence an arbitration of the issues raised in the Claim Objection and failed to overcome the *prima facie* evidence of the validity of the Proof of Claim. Therefore, the Claim Objection should be overruled as it applies to NextGear's Proof of Claim, and the Proof of Claim should be allowed in its entirety.

        **BOSE McKINNEY & EVANS LLP**
        *Attorneys for NextGear Capital, Inc.*

        */s/ David J. Jurkiewicz*
        David J. Jurkiewicz
        Admitted *Pro Hac Vice*
        Indiana Attorney No. 18018-53
        111 Monument Circle, Suite 2700
        Indianapolis, Indiana  46204
        Telephone: (317)  684-5000
        Facsimile: (317)  684-5173
        djurkiewicz@boselaw.com

Nicolette C. Vilmos  
Florida Bar No. 0469051  
NELSON MULLINS RILEY & SCARBOROUGH, LLP  
390 North Orange Avenue, Suite 1400  
Orlando, Florida  32801  
Telephone: (407) 839-4200  
Facsimile: (407) 425-8377  
nicolette.vilmos@nelsonmullins.com  
allison.abbott@nelsonmullins.com  

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing has been furnished via transmission of Notices of Electronic Filing on all counsel of record or *pro se* parties identified on the CM/ECF service list maintained by the Court on September 23, 2022.

 /s/ David J. Jurkiewicz  
David J. Jurkiewicz
