**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| In re: | Case No.:    8:22-bk-01210-CED |
| MICHAEL KASTRENAKES, | CHAPTER 11 |
| Debtor. | |

**CREDITOR FIRST HOME BANK'S AMENDED OBJECTION TO DEBTOR'S UNOPPOSED FIRST AMENDMENT TO DEBTOR'S PLAN OF REORGANIZATION[1]**

Creditor First Home Bank ("**FHB**"), under Federal Rule of Bankruptcy Procedure 3020(b)(1), Bankruptcy Code §§ 1125 and 1129, Local Rule 3020-1, and applicable law, objects to Debtor Michael Kastrenakes' (the "**Debtor**") Unopposed Amendment to Debtor's Plan of Reorganization (the "**First Amendment**") [Doc. No. 164] to the "Disclosure Statement and Plan of Reorganization" (the "**Plan**") [Doc. No. 96] and states as follows:

**I.     PRELIMINARY STATEMENT**

The First Amendment is the product of a mediation attended by the Debtor and six other Class 8 and Class 10 Creditors (the "Vasiloudes Creditors") whereby the Debtor and the Vasiloudes Creditors have reached a tentative settlement agreement to resolve the voluminous adversary proceedings stemming from the Vasiloudes Creditor's failed investments and business relationships with the Debtor.

---

[1] The Debtor filed the First Amendment on October 31, 2022. Given the Debtor filed the First Amendment eight days before the Court's November 8, 2022 rescheduled confirmation hearing, FHB filed a Preliminary Objection to the Unopposed Amendment to Debtor's Plan of Reorganization [Doc. No. 180] on November 7, 2022 out of an abundance of caution. This Amended Objection amends FHB's Preliminary Objection.

While FHB was not privy to the settlement discussions between the Debtor and the Vasiloudes Creditors, the consideration paid to the Vasiloudes Creditors under the settlement agreement comes at the direct expense of and harm to FHB which is ironic given that FHB was not a party to the underlying litigation nor invited to attend the mediation.

Specifically, the First Amendment proposes resolving the Vasiloudes Creditors' claims against the Debtor by: (1)- substituting certain real property collateral currently owned by the Vasiloudes Creditors and pledged as security for FHB's loan for aged accounts receivables owned by various entities of the Debtor; (2)- limiting a Vasiloudes Creditor's personal guaranty liability to FHB; and (3)- by enjoining FHB from pursing collection efforts against the Vasiloudes Creditors.

The First Amendment also seeks to reduce FHB's claim by almost $800,000.00 by transferring ownership to FHB of certain investments in a speculative start-up company and a reinsurance company (both of which are closely held companies).

While the Debtor and the Vasiloudes creditors argue settlement of the Vasiloudes Creditors' claims is in the best interest of the Bankruptcy Estate, the extraordinary relief proposed in the First Amendment is not fair and equitable to FHB.  The First Amendment's proposed "stock for debt" substitution fails to provide FHB with the "indubitable equivalent" of the real property currently securing FHB's loan.  Further, the Vasiloudes Creditors are not contributing any assets to the Debtor's reorganization, so they are not entitled to a section 105(a) injunction.  Finally, an injunction in favor of the Vasiloudes Creditors would not be fair or equitable given the Vasiloudes Creditors have used their adversary proceedings to frustrate the Debtor's reorganization efforts, and injunctive relief would grant the Vasiloudes Creditors relief under the Bankruptcy Code

without the Vasiloudes Creditors having to subject themselves to the Court's jurisdiction, reporting requirements and fiduciary obligations.

Accordingly, the Plan does not meet the confirmation requirements under Bankruptcy Code § 1125, and confirmation should be denied.

## II.     FACTUAL BACKGROUND

The Debtor filed his Chapter 11 Petition on April 19, 2022 (the "**Petition Date**").

Prior to the Petition Date, First Home extended a loan (the "**FHB Loan**") to Non-debtor New Wave Acceptance, LLC dated October 19, 2016 in the amount of $2,000,000.00.

In connection with the FHB Loan, the Debtor and Non-debtor Dr. Panayiotis Vasiloudes[2] ("**Dr. Vasiloudes**") executed personal guarantees thereby, *jointly and severally*, guarantying repayment of the FHB Loan extended to New Wave Acceptance, LLC.

The primary security for the FHB Loan is a mortgage on certain commercial real property located in Pinellas County, Florida that is currently owned by Non-debtor Panevas, LLC[3], a closely-held entity managed by Dr. Vasiloudes (the "**Real Property Collateral**"). The Real Property Collateral primarily consists of commercial property adjacent United States Highway 1 and is currently leased by a national automobile retailer.

On April 20, 2022, FHB commenced a state court action styled *First Home Bank v. Panayiotis Vasiloudes et al.*, Pinellas County Circuit Court Case Number: 22-0001852-CI (the "**FHB Action**"), thereby seeking to enforce Dr. Vasiloudes' personal guarantee obligation and to foreclose the mortgage lien on the commercial property owned by Panevas, LLC.

---

[2] Dr. Vasiloudes is member of the Class 8 and Class 10 Creditors (i.e., the Vasiloudes Creditors).
[3] Panevas, LLC is member of the Class 8 and Class 10 Creditors (i.e., the Vasiloudes Creditors).

On June 6, 2022, FHB filed its proof of claim (Claim No. 14) in this Case in the amount of $1,674,992.40.

On July 7, 2022, the Debtor filed the Plan. Pursuant to the express terms of the Plan, the Debtor proposed paying FHB's claim in full and listed FHB's claim as unimpaired.

On August 25, 2022, FHB filed a motion for summary judgment in the FHB Action, and the state court had scheduled a hearing on the summary judgment motion for January 19, 2023.

On October 31, 2022, the Debtor filed the First Amendment seeking to cramdown FHB's $1,674,992.40 claim to $900,000.00. In consideration for the $774,992.40 cramdown of FHB's claim, the Debtor proposes to transfer the following property to FHB:

- **Shares of Atlas FinTech Holdings, Corp.**: Atlas FinTech is a privately-held financial services technology **start-up** company. The shares are currently owned by Non-Debtor New Wave Acceptance, LLC (i.e., the borrower for the FHB Loan) (the "**Atlas FinTech Stock**"); *and*

- **The Debtor's 50 percent membership interest in Kaz Reinsurance, Ltd.**: Kaz Reinsurance, Ltd. is a reinsurer of auto insurance policies. Kaz Reinsurance, LTD.'s only asset is an investment portfolio consisting of reinsurance premiums held at Doyle Wealth Management, Inc. (which can't be liquidated because those premiums are needed to pay future claims). The Debtor and his wife, Maria Kastrenakes ("**Ms. Kastrenakes**") each own 50 percent of the membership interests of Kaz Reinsurance, LTD. Under the First Amendment, Ms. Katrenakes would retain her 50 percent membership interest in Kaz Reinsurance, LTD (the "**Kaz Reinsurance Membership Interests**").

In addition to the "stock for debt" transfer, the First Amendment seeks to substitute the Real Property Collateral (currently owned by Panevas, LLC) securing the FHB Loan with aged

4

accounts receivables owned by various entities controlled by the Debtor. The Debtor has not provided FHB with any information regarding the aged receivables.

The First Amendment also seeks to limit Dr. Vasiloudes' unlimited personal guaranty liability owed to FHB to fifty percent and add Ms. Kastrenakes as a personal guarantor for the remaining fifty percent owed to FHB.

Finally, the First Amendment seeks entry of a third-party injunction under section 105(a) to enjoin FHB from continuing its collection efforts against Dr. Vasiloudes and Panevas LLC in the FHB Action.

### III.     ARGUMENT

FHB objects to the First Amendment on the following grounds: (1)- the First Amendment's proposed "stock for debt" transfer and the proposed substitution of collateral does not meet the "indubitable equivalent" standard as required by 11 USC § 1129(b); (2)- the Vasiloudes Creditors are not entitled to the extraordinary remedy of injunctive relief under 11 USC § 105(a); and (3)- the Debtor has not provided adequate information in its disclosure statement needed by FHB to properly evaluate the First Amendment.

**A.     The First Amendment fails to provide FHB with the "indubitable equivalent" for value of the cramdown and the Real Property Collateral substitution.**

FHB's claim against the Debtor is based on the Debtor's contractual obligations owed to FHB under his personal guaranty executed in connection with the FHB Loan. The current collateral securing the FHB Loan is not owned by the Debtor and is not property of the Bankruptcy Estate. Accordingly, the Debtor's proposed cramdown and collateral substitution is not possible under 11 USC § 1129(b) which only applies to secured creditors and property of the Bankruptcy Estate. However, even if 11 USC § 1129(b) does apply to FHB's claim, the First Amendment fails

to provide FHB with the "indubitable equivalent" for the proposed cramdown and substitution of the Real Property Collateral.

Section 1129(b)(1) states that a plan can be confirmed even when all impaired classes have not voted to accept the plan "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). A plan is "fair and equitable" with respect to a class of secured claims, if the plan provides –

> (i)    (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent the allowed amount of such claims; and
>
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
>
> (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with s liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
>
> (iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2)(A)(i) – (iii).

In order for a Chapter 11 plan's treatment of a secured creditor's claim to qualify as being the "indubitable equivalent" of that claim, for "cramdown" purposes, treatment must be completely compensatory and no reasonable doubt exists that the creditor will be paid in full. *In re Riddle*, 444 B.R. 681 (Bankr. N.D. Ga. 2011).

Further, a secured creditor's ability to quickly liquidate the property that is to be distributed to it under a proposed Chapter 11 plan in satisfaction of its claim is a most important consideration in deciding, for "cramdown" purposes, whether the plan provides the creditor with the "indubitable

equivalent" of its claim, because of the impossibility of predicting future market conditions with indubitable certainty. *In re Richfield 81 Partners II, LLC*, 447 B.R. 653 (Bankr. N.D. Ga. 2011).

Any valuation of surrendered collateral in the dirt-for-debt context, for purposes of assessing whether the surrendered collateral provides a dissenting secured creditor with the "indubitable equivalent" of its claim, should be conservative in order to avoid shifting undue risk of the market to the secured creditor *In re Ponce de Leon*, 1403, Inc., 523 B.R. 349 (Bankr. D. P.R. 2014). When a proposed Chapter 11 plan purports to substitute or alter a secured creditor's collateral, a creditor receives indubitable equivalence of its claim, within the meaning of the "cramdown" provision, only if the substituted collateral does not increase the creditor's exposure to risk. *In re Investment Company of The Southwest, Inc.*, 341 B.R. 298, 46 Bankr. Ct. Dec. (CRR).

Here, the First Amendment proposes a "stock for debt" transfer whereby FHB's $1,674,992.40 claim would be reduced to $900,000.00. In consideration for the nearly $800,000.00 cramdown, the Debtor would transfer ownership to FHB of the Atlas FinTech Stock (which is currently not property of the Bankruptcy Estate) as well as ownership of the Debtor's membership interests in Kaz Reinsurance, LTD. Further, the First Amendment seeks to substitute the Real Property Collateral (currently owned by Panevas, LLC) securing the FHB Loan with aged accounts receivables owned by various entities controlled by the Debtor. For obvious reasons, the First Amendment's "stock for debt" transfer and collateral substitution do not provide FHB with

the indubitable equivalent required under 11 U.S.C. § 1129(b)(1). Without question, FHB would not have accepted such collateral with the FHB Loan was originally made.

        **1.      The value of the Atlas FinTech Stock and Kaz Reinsurance, LTD. Membership Interests are not equivalent to the proposed $774,992.40 cramdown of FHB's Claim.**

For a Chapter 11 plan's treatment of a secured creditor's claim to qualify as being "indubitable equivalent" of that claim, for cramdown purposes, treatment must be completely compensatory. *In re Sugarleaf Timber, LLC*, 529 B.R. 317 (M.D. Fla. 2015). Here, the proposed transfer of the Atlas FinTech Stock and Kaz Reinsurance Membership Interests do not provide FHB with the indubitably equivalent of the $744,992.40 reduction to FHB's claim.

Atlas FinTech Holdings, Corp. is a closely held financial services technology company that is a start-up. According to Atlas FinTech Holdings, Corp.'s website,[4] Atlas FinTech Holdings, Corp. "plans" to offer banking related services, but does not give any specifics of when it will offer such services or as to the value of the company. Likewise, Kaz Reinsurance LTD. is a closely held private reinsurance company owned by the Debtor and his wife. Because Atlas FinTech Holdings, Corp. and Kaz Reinsurance, LTD. are private entities, there is not a public market for FHB to liquidate each security to obtain the "indubitable equivalent" of the proposed $774,992.40 cramdown of its Claim.[5]

The First Amendment's "stock for debt" transfer creates certain business risks for FHB. First, in attempting to liquidate the Atlas FinTech Stock and the Kaz Reinsurance Membership Interests, FHB would likely be offering an "unregistered security" for sale, thereby violating numerous state and federal securities laws as well as banking regulations governing FHB's core

---

[4] http://www.atlasfintechholdings.com/
[5] On November 30, 2022, FHB issued discovery requests to both Atlas FinTech Holdings Corp. and Kaz Reinsurance, LTD.

banking activities. Further, any efforts to sell or transfer these securities to third-party purchasers would potentially violate certain restrictions on the transferability of each interest contained in the governing corporate documents (i.e., bylaws, shareholder agreements, etc.) for each entity, thus subjecting FHB to further liability. Finally, because Kaz Reinsurance, LTD. is a reinsurer, it must retain some portion of the premiums currently invested at Doyle Wealth Management, Inc. to pay future claims. Any efforts to liquidate those insurance premiums would subject FHB to additional regulatory risk and potentially expose FHB to future insurance claims.

The First Amendment also shifts certain financial risks to FHB. Specifically, the Atlas FinTech Stock is currently not an asset of the Bankruptcy Estate and is owned by New Wave Acceptance, LLC (i.e., the borrower for the FHB Loan). New Wave Acceptance, LLC is free to sell the Atlas FinTech Stock at any time and use the sale proceeds to pay down the FHB Loan. Accordingly, the burden and risk associated with liquidating the Atlas FinTech Stock should not be passed to FHB when New Wave Acceptance, LLC can liquidate that collateral now. Further, the fact the Vasiloudes Creditors are not receiving the Atlas FinTech Stock as consideration for the proposed settlement is an indication the stock is not a worthy substitute.

Given the illiquid nature of each security, it is questionable at best whether FHB could even legally offer for sale either of these securities let alone realize a value equivalent to the proposed $774,992.40 cramdown of FHB's claim. Finally, in the event FHB is not able to liquidate the Atlas FinTech Stock or the Kaz Reinsurance Membership Interests for the equivalent amount of the proposed cramdown, FHB would be enjoined under the proposed section 105(a) injunction from seeking a deficiency judgment against the Debtor or Dr. Vasiloudes, thus subjecting FHB to further prejudice.

Because the proposed First Amendment is not providing the "indubitable equivalent" to the proposed $774,992.40 cramdown, the First Amendment fails to meet the fair and equitable requirement under 11 USC § 1129.

### 2. The aged accounts receivables are not the "indubitable equivalent" of the Real Property Collateral currently securing the FHB Loan.

The Real Property Collateral, owned by Panevas, LLC (i.e., a Vasiloudes Creditor), is the primary collateral securing the FHB Loan. The Real Property Collateral consists of valuable improved property along a desirable portion of United States Highway 1 in Pinellas County, Florida and is currently leased by a well-known national automobile retailer that is conducting automobile sales.

Under the proposed First Amendment, the Debtor and the Vasiloudes Creditors propose substituting the Real Property Collateral for certain aged accounts receivables owned by various third-party entities controlled by the Debtor. For obvious reasons the aged accounts receivables are not the indubitable equivalent of the Real Property Collateral.

First, the Debtor has not provided FHB with any information needed to evaluate the aged accounts receivables. Under 11 USC § 1125, the Debtor is required to provide FHB with adequate information needed to properly equivalate the proposed plan. Section 1125(a) defines "adequate information" as "information of a kind, and in sufficient detail, as fair as reasonably practicable in light of the nature and history of the debtor and condition of the debtor's books and records" that would enable a hypothetical investor "to make an informed judgment about the plan." Here, the Debtor has not provided FHB with any information as to age of the accounts receivables, the nature of the accounts receivables, the creditworthiness of underlying debtor for each receivable, the amount of each receivable, etc. needed by FHB to properly evaluate the accounts receivables.

Secondly, the Debtor and the Vasiloudes Creditors are impermissibly shifting certain risks as to the collectability of the aged accounts receivables to FHB. Unlike the Real Property Collateral, which has an ascertainable value, the value of the aged accounts receivables is unknown and ultimately tied to the collectability of the aged accounts receivables. If the Debtor is confident as to the value of the aged accounts receivables, the Debtor should sell those receivables (which are owned by non-debtor entities) or attempt to collect those receivables and use the proceeds to pay off the FHB Loan. Alternatively, why don't the Vasiloudes Creditors take those aged accounts receivables as consideration for the settlement agreement? In short, stripping FHB's first-priority mortgage interest lien on the valuable real property securing the FHB Loan and substituting it with a lien on aged accounts receivables is really an attempt to shift the collection risk associated with those assets to FHB.

Given the collection risks associated with the aged accounts receivables along with the lack of information provided about those aged account receivables, the proposed First Amendment does not provide FHB with "no doubt" that its claim will be paid in full. Accordingly, the proposed collateral substitution fails the "indubitable equivalent" standard required under 11 USC § 1129(b), and confirmation must be denied.

      **B.**    **The Vasiloudes Creditors are not entitled to the extraordinary remedy of injunctive relief under 11 USC § 105(a).**

As part of the material consideration paid to the Vasiloudes Creditors under the settlement agreement memorialized in the First Amendment, the Debtor is seeking entry of a section 105(a) injunction to prevent FHB from continuing its collection efforts against Dr. Vasiloudes and Panevas, LLC in the FHB Action (i.e., the state court foreclosure action).

However, the Debtor has not and cannot meet its burden of proof demonstrating the necessity of an injunction under Section 105(a) of the Bankruptcy Code, which should not be

issued lightly but only after a fact-intensive inquiry and should be reserved for those unusual cases in which the bar order is necessary for the success of the reorganization, and only in situations in which such an order is fair and equitable under all facts and circumstances. *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1078 (11th Cir. 2015).

Recently, the 11th Circuit specifically adopted the seven-factor test set forth by the Sixth Circuit in *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002) for evaluating the appropriateness of a bar order enjoying a non-consenting creditor's claims against a non-debtor: (1) there is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) the non-debtor has contributed substantial assets to the reorganization; (3) the injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) the impacted class, or classes, has overwhelmingly voted to accept the plan; (5) the plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) the plan provides an opportunity for those claimants who choose not to settle to recover in full; and (7) the bankruptcy court made a record of specific factual findings that support its conclusions.

Here, a bar order against FHB does meet the *Dow Corning Factors*.

### 1. FHB's collections efforts against the Vasiloudes Creditors will not deplete the Estate's assets.

As noted by the *Dow Corning* Court, to enjoin a non-consenting creditor's claims against a non-debtor, there must an identity of interests between the debtor and the third party such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate. The classic example of such a relationship is a non-debtor insurer of the debtor that is

funding some portion of the debtor's plan, and an injunction is necessary to prevent wasting of that insurance policy defending against or paying for third-party claims. *See In re Matter of Munford, Inc.*, 97 F.3d 449, 452 (11th Cir. 1996).

Here, there is no special relationship between the Vasiloudes Creditors and the Debtor to justify a section 105(a) bar order. The Debtor and Dr. Vasiloudes are both co-guarantors of the FHB Loan and are both jointly and severally liable for the FHB Loan. FHB's collections efforts against Dr. Vasiloudes are completely independent of the Debtor and the Bankruptcy Estate. FHB's collection effort's only possible effect on the Debtor or the Bankruptcy Estate is a potential contribution claim that Dr. Vasiloudes *may* have against the Debtor in the future (which Dr. Vasiloudes currently does not have because FHB has not obtained a monetary judgment against Dr. Vasiloudes, and Dr. Vasiloudes has not made any payments on such judgment). Further, the Debtor and Panevas, LLC are completely independent (i.e., the Debtor is not a member, manager, or affiliate of Panevas, LLC), and FHB's efforts to foreclose its mortgage lien on the Real Property Collateral will not deplete the assets of the Bankruptcy Estate because the Real Property Collateral is not an asset of the Bankruptcy Estate nor necessary for the Debtor's reorganization.

    **2.**    **The Vasiloudes Creditors are not contributing any assets to the Bankruptcy Estate.**

Pursuant to the express terms of the First Amendment, the Vasiloudes Creditor are not contributing any funds, property, or other assets to the Debtor's reorganization, thus they are not entitled to an injunction.

The Vasiloudes Creditors' claims raised in the voluminous adversary proceedings are not assets, they are liabilities. The significant expense incurred by the Bankruptcy Estate in connection with those adversary proceedings are the result of the Vasiloudes Creditors' decision to initiate those claims (not FHB or any other creditor). Accordingly, the Vasiloudes Creditors' position that

they are now contributing to the Debtor's reorganization by removing the roadblock to confirmation created by their own adversary proceedings is not in the spirit of "contributing substantial assets" contemplated by *Dow Corning*.

Finally, to the degree the Vasiloudes Creditors are taking the position they have benefited the Bankruptcy Estate by leveraging the adversary proceeding to force the Debtor to pay FHB and the other creditors' claims, such position is unpersuasive. Dr. Vasiloudes remains jointly and severally liable for the FHB Loan along with New Wave Acceptance, LLC and the Debtor. Accordingly, Dr. Vasiloudes' premature contribution claim against the Debtor is really an attempt to shift responsibility for the FHB Loan to the Debtor and escape his unconditional guaranty liability by seeking an impermissible section 105(a) injunction.

### 3. The Reorganization doesn't hinge on the Debtor being free from claims by the Vasiloudes Creditors, and it should not come at the expense of FHB. [6]

As noted by the *Downing Corning* Court, one factor the Court should consider is whether the injunction is essential to reorganization, namely, the reorganization hinges on the Debtor being free from indirect suits against parties who would have indemnity or contribution claims against the Debtor.

Here, the Debtor could reorganize his debt and pay his creditors even if the Vasiloudes' Creditors' claims are nondischargeable because the Debtor would still be afforded the protection of the automatic stay under 11 USC § 362 until he receives a discharge which would not be until the completion of payments under the Plan. 11 USC § 1141(d)(5). Accordingly, unless granted relief from the automatic stay, the Vasiloudes Creditors would be barred from collection activities

---

[6] On December 9, 2022, FHB filed its rejection of the Debtor's Plan.

against the Debtor.  Therefore, reorganization does not hinge on the Debtor being free from the claims of the Vasiloudes Creditors.

The voluminous adversary proceedings created by the Vasiloudes Creditors against the Debtor have certainly created an expense and burden on the Bankruptcy Estate.  Further, the adversary proceedings have unnecessarily delayed and frustrated the Debtor's reorganization efforts.  Accordingly, if the Court is going to enter a 105(a) injunction against a creditor, it should enter it against the Vasiloudes Creditors because it is the Vasiloudes Creditor's claims that are threating the Debtor's efforts to successfully reorganize (not FHB's collections efforts against the Real Property Collateral that is not part of the Bankruptcy Estate).

### 4. Under the current facts and circumstances, it is not fair and equitable to enter a section 105(a) injunction against FHB.

FHB's collections efforts in the FHB Action are limited to both collateral that is not part of the Bankruptcy Estate and against Dr. Vasiloudes, himself not a debtor under any bankruptcy proceeding,  who is unconditionally responsible for the FHB Loan.  Further, the collateral at issue in the FHB Action is not necessary or part of the Debtor's reorganization, and the Debtor and the Vasiloudes Creditors are not suffering irreparable harm.  Accordingly, FHB's collection efforts are not preventing the Debtor from achieving a successful reorganization, and it is not fair or equitable for an unnecessary injunction to be entered against FHB so that a settlement of claims (that do not involve FHB and were not caused or created by FHB) can be reached.

On the other hand, the Vasiloudes Creditors' adversary proceedings against the Debtor have made confirmation nearly impossible in this case.  While a settlement of the adversary proceedings may be beneficial to the Bankruptcy Estate, it should not come at the expense of FHB who has done nothing wrong and is not the party that has created the roadblocks to confirmation in this case.  Given these facts and circumstances, the Court's entry of a section 105(a) injunction

against FHB would be unfair and inequitable given that granting such relief to the Vasiloudes Creditors would reward them for their efforts to engineer a settlement to obtain the benefits of a bankruptcy protection without filing bankruptcy.

    **C.**    **The Debtor has not provided adequate information in its disclosure statement needed for FHB to properly evaluate the First Amendment**.

Finally, as discussed above, the Debtor has not provided FHB with any information let alone "adequate information" in its disclosure statement needed by FHB to properly evaluate the First Amendment. 11 USC § 1125. Specifically, the Debtor has not provided financial statements or disclosures regarding the Atlas FinTech Stock, Kaz Reinsurance, LTD, Dr. Vasiloudes or the aged accounts receivables. Further, FHB has not been afforded an opportunity to depose Dr. Vasiloudes or a representative of Kaz Reinsurance LTD., Atlas FinTech Holdings Corp., or the owners of the aged accounts receivables.

## IV.   CONCLUSION

Creditor First Home Bank objects to the First Amendment, requests that Debtor's request for confirmation be denied, and for FHB be awarded such other relief that is just and proper.

Dated: December 9, 2022

                      **THE LILES FIRM, P.A.**

                      */s/ Robert B. George*
                      **ROBERT B. GEORGE**
                      Florida Bar No. 0108995
                      **RYAN J. MITTAUER**
                      Florida Bar No. 091869
                      50 North Laura Street, Suite 1200
                      Jacksonville, Florida 32202
                      (904) 634-1100 – Telephone
                      (904) 634-1234 – Facsimile
                      E-mail: rgeorge@thelilesfirm.com
                                 rmittauer@thelilesfirm.com
                                 aperry@thelilesfirm.com

*Counsel for Creditor, First Home Bank*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th day of December, 2022, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

                                            */s/ Robert B. George*
                                            Attorney