IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

```
- - - - - - - - - - - - - - - :
IN RE:                          :
MICHAEL KASTRENAKES             :   Case No. 8:22-bk-01210-CED
          Debtor               :   Chapter 11
- - - - - - - - - - - - - - - :
KASTRENAKES v NEXTGEAR CAPITAL:    Adv. No. 8:22-ap-55-CED
VASILOUDES v KASTRENAKES et al:    Adv. No. 8:22-ap-95-CED
CYGRAM HERITAGE v KASTRENAKES :    Adv. No. 8:22-ap-96-CED
VASILOUDES v KASTRENAKES et al:    Adv. No. 8:22-ap-113-CED
VASILOUDES v KASTRENAKES et al:    Adv. No. 8:22-ap-114-CED
VASILOUDES et al v KASTRENAKES:    Adv. No. 8:22-ap-115-CED
VASILOUDES et al v KASTRENAKES:    Adv. No. 8:22-ap-118-CED
NEXTGEAR CAPITAL v KASTRENAKES:    Adv. No. 8:22-ap-112-CED
THOMAS ZERVAS v KASTRENAKES   :    Adv. No. 8:22-ap-122-CED
- - - - - - - - - - - - - - - :
                                   U.S. Courthouse
                                   801 North Florida Avenue
                                   Tampa, Florida 33602
                                   Held December 16, 2022
```

<u>TRANSCRIPT OF HEARING</u>

(1) Cont. Confirmation Hearing; Objection to Confirmation of Debtor's Plan of Reorganization and Objection of Adequacy of Disclosure Filed by John A. Anthony on behalf of Cygram Heritage, LLLP, Panayiotis Vasiloudes (Doc. #103)(Related Doc. #96); Joinder Notice In Omitted Creditors' Objection To Adequacy of Disclosure and to Confirmation of Debtor's Plan of Reorganization Filed by Nicole Mariani Noel on behalf of Creditor Thomas Zervas and Konstantinos Papaspanos (Doc. #138)(Related Doc. #103); Objection to Confirmation of Plan Filed by James Randolph Liebler II on behalf of Creditor Westlake Flooring Company, LLC (Doc. #140)(Related Doc. #96); Objection to Confirmation of Plan Filed by Nicolette C. Vilmos on behalf of Creditor NextGear Capital, Inc. (Doc. #177)(Related Doc. #164); Objection to Confirmation of Debtor's Unopposed First Amendment to Debtor's Plan of Reorganization Filed by Robert Bruce George on behalf of Creditor First Home Bank (Doc. #180)(Related Doc. #164); Objection to Confirmation of Plan, Objection to Disclosure Statement Filed by Nicolette C. Vilmos on behalf of Creditor NextGear Capital, Inc. (Doc. #141)(Related Doc. #96).....
*[NATURE OF PROCEEDINGS CONTINUED ON NEXT PAGE]*

BEFORE THE HONORABLE CARYL E. DELANO
CHIEF UNITED STATES BANKRUPTCY JUDGE

PROCEEDINGS DIGITALLY RECORDED BY COURT PERSONNEL
FROM IN-PERSON, ZOOM VIDEO CONFERENCE AND/OR TELEPHONE.
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE
APPROVED BY ADMINISTRATIVE OFFICE OF U.S. COURTS.

JOHNSON TRANSCRIPTION SERVICE
6532 Thoroughbred Loop
Odessa, Florida 33556
(813) 920-1466

*[NATURE OF PROCEEDINGS CONTINUED FROM PREVIOUS PAGE]*

.....(2) Cont. Objection to Claim No. 11 filed by NextGear Capital, Inc. Filed by Amy Denton Mayer on behalf of Debtor Michael Kastrenakes (Mayer, Amy) (Doc. #127); Response to Debtor's Objection to Claim No. 11 Filed by David J. Jurkiewicz on behalf of Creditor NextGear Capital, Inc. (Doc. #148)(Related Document #127); (3) Cont. Motion to Consolidate Objection to Claim No. 11 in 8:22-bk-1210-CED with Complaint in Adversary Case No. 8:22-ap-112-CED Filed by Amy Denton Mayer on behalf of Debtor Michael Kastrenakes (Doc. #152); (4) Objection to Claim No. 16 of Trifon Houvardas, Filed by Nicolette C. Vilmos on behalf of Creditor NextGear Capital, Inc. (Doc #168); (5) Objection to Claim No. 17 of Cygram Holdings, L.P. Filed by Nicolette C. Vilmos on behalf of Creditor NextGear Capital, Inc. (Doc. #169); (6) Objection to Claim No. 18 of Cygram Heritage, LLLP Filed by Nicolette C. Vilmos on behalf of Creditor NextGear Capital, Inc. (Doc. #170); (7) Objection to Claim No. 19 of Dr. Panayiotis Vasiloudes, Filed by Nicolette C. Vilmos on behalf of Creditor NextGear Capital, Inc. (Doc. #171); (8) Objection to Claim No. 20 of Cygram Heritage, LLLP Filed by Nicolette C. Vilmos on behalf of Creditor NextGear Capital, Inc. (Doc. #172); (9) Objection to Claim No. 15 of K&M Insurance Investors, LLC Filed by Nicolette C. Vilmos on behalf of Creditor NextGear Capital, Inc. (Doc. #173 - Response to NextGear Claim Objections Filed by John A. Anthony on behalf of K&M Insurance Investors, LLC, Cygram Heritage, LLLP, Derivatively, on behalf of New Wave Acceptance, LLC, Cygram Holdings, L.P., Trifon Houvardas, Cygram Heritage, LLLP, Panayiotis Vasiloudes (Doc. #174); (10) Motion to Approve Compromise of Controversy or Settlement Agreement, Related Case and Parties Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, Cygram Holdings, L.P., Panevas, LLC, Trifon Houvardas, and K&M Insurance Investors, LLC and related adversary proceedings, Filed by Amy Denton Mayer on behalf of Debtor Michael Kastrenakes (Doc. #178); Objection to Motion to Approve Compromise with Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, Cygram Holdings, L.P., Panevas, LLC, Trifon Houvardas, and K&M Insurance Investors, LLC Filed by Nicolette C. Vilmos on behalf of Creditor NextGear Capital, Inc. (Doc. #192) (Related Doc. #178); Supplemental Objection to Motion to Approve Compromise with Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, Cygram Holdings, L.P., Panevas, LLC, Trifon Houvardas, and K&M Insurance Investors, LLC - Bankruptcy Rule 6004 Filed by Nicolette C. Vilmos on behalf of Creditor NextGear Capital, Inc. (Doc. #198)(Related Doc. #178); Objection to Motion to Approve Compromise with Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, Cygram Holdings, L.P., Panevas, LLC, Trifon Houvardas, and K&M Insurance Investors, LLC Filed by Robert Bruce George on behalf of Creditor First Home Bank (Doc. #199)(Related Doc. #178); (11) Priority Status, Continued Objection to Claim No. 2 filed by State of Florida - Department of Revenue, Filed by Edward J. Peterson III on behalf of Debtor Michael Kastrenakes (Doc. #136); Response to Objection to Claim No. 2 Filed by Kristian S. Oldham on behalf of Creditor State Of Florida Dept. of Revenue (Doc. #154)(Related Doc. #136); Memorandum of Law in Opposition to Claim No. 2 of the Florida Department of Revenue Filed by Amy Denton Mayer on behalf of Debtor Michael Kastrenakes (Doc. #188)(Related Doc. #136); Memorandum In Support of Claim No. 2 Filed by Frederick F. Rudzik on behalf of Creditor State Of Florida Dept. of Revenue (Doc. #210)(Related Doc. #136); Response to Reply Brief: (I) in Support of (A) Debtors Objection to Claim No. 2 Filed by the State of Florida-Department of Revenue; and (B) Memorandum of Law in Opposition to Claim No. 2 of the Florida Department of Revenue and (II) in Opposition to the Memorandum of Law in Support of the Priority Portion of Claim No. 2 Filed by the Florida Department of Revenue Filed by Amy Denton Mayer on behalf of Debtor Michael Kastrenakes (Doc. #218)(Related Docs. #188, 210); (12) Motion for Protective Order and Omnibus Objection to NextGear Discovery Filed by John A. Anthony on behalf of Panevas, L.L.C., Cygram Heritage, LLLP, Cygram Holdings, L.P., Trifon Houvardas, K&M Insurance Investors, LLC, Panayiotis Vasiloudes (Doc. #194); Response to Vasiloudes Creditors' Omnibus Objection to NextGear Discovery and Motion for Protective Order Filed by Nicolette C. Vilmos on behalf of Creditor NextGear Capital, Inc. Doc. #206)(Related Doc. #194).....

*[NATURE OF PROCEEDINGS CONTINUED ON NEXT PAGE]*

*[NATURE OF PROCEEDINGS CONTINUED FROM PREVIOUS PAGE]*

.....(13) Objection to Claim No. 14 of First Home Bank, Filed by Nicolette C. Vilmos on behalf of Creditor NextGear Capital, Inc. (Doc. #167); Response to Creditor NextGear Capital, Inc.'s Objection to Claim No. 14 Filed by Robert Bruce George on behalf of Creditor First Home Bank (Doc. #207)(Related Doc. #167); (14) Amended Objection to Claim No. 13 of CPX Holdings, LLC, Filed by Nicolette C. Vilmos on behalf of Creditor NextGear Capital, Inc. (Doc. #176)(Related Doc. #166); Opposition Response to NextGear Capital, Inc.'s Amended Objection to Claim No. 13 filed by CPX Holdings, LLC Filed by Kathleen L. DiSanto on behalf of Creditor CPX Holdings, LLC (Doc. #209)(Related Doc. #176)

<u>APPEARANCES</u>
<u>VIA IN-PERSON, ZOOM, AND/OR TELEPHONE</u>

For the Debtor                    EDWARD J. PETERSON, III, Esq.
                                  AMY DENTON MAYER, Esquire
                                  Stichter, Riedel, Blain &
                                  Postler, P.A.
                                  110 East Madison St., Ste. 200
                                  Tampa, Florida 33602
                                  813-229-0144
                                  epeterson@srbp.com
                                  amayer.srbp.com

For the U.S. Trustee              BENJAMIN LAMBERS, Esquire
                                  Office of United States Trustee
                                  501 E. Polk Street
                                  Tampa, Florida 33602
                                  813-228-2000
                                  ben.lambers@usdoj.gov

For State of Florida,             FREDERICK F. RUDZIK, Esquire
Dept. of Revenue                  State of Florida
                                  Department of Revenue
                                  PO Box 6668
                                  Tallahassee, Florida 32314
                                  rudzikf@dor.state.fl.us

For NextGear Capital, Inc.        DAVID JURKIEWICZ, Esquire
                                  Bose McKinney & Evans
                                  135 N. Pennsylvania St. #2700
                                  Indianapolis, Indiana 46204
                                  317-684-5000
                                  djurkiewicz@boselaw.com

                                  NICOLETTE VILMOS, Esquire
                                  Nelson Mullins Broad and Cassel
                                  390 N. Orange Ave., Ste. 1400
                                  Orlando, Florida 32801
                                  407-839-4200
                                  nicolette.vilmos
                                  @nelsonmullins.com

For Westlake Flooring Co.         IRA SCOT SILVERSTEIN, Esquire
                                  Liebler, Gonzalaez & Portuondo
                                  44 W. Flagler St., 25th FL
                                  Miami, Florida 33130
                                  305-379-0400
                                  iss@lgplaw.com

APPEARANCES
VIA IN-PERSON, ZOOM, AND/OR TELEPHONE

For Automotive Finance          JENNIFER SMITH THOMAS, Esquire
Corp.                           Rumberger Kirk
                                300 S. Orange Ave.
                                Orlando, Florida 32801
                                407-839-4538
                                jthomas@rumberger.com

For the Vasiloudes              JOHN ANTHONY, Esquire
Creditors                       NICHOLAS LAFALCE, Esquire
                                Anthony & Partners
                                100 S. Ashley Dr., Ste. 1600
                                Tampa, Florida 33602
                                813-273-5616
                                janthony@anthonyandpartners.com
                                nlafalce@anthonyandpartners.com

For CPX Holdings,               KATHLEEN DISANTO, Esquire
Maria Kastrenakes,              Bush Ross, P.A.
Pagona Kokolakis, and           P.O. Box 3913
Evangeline Kastrenakes          Tampa, Florida 33601
                                813-224-9255
                                kdisanto@bushross.com

For State of Florida            KRISTIAN OLDHAM, Esquire
Dept. of Revenue                Florida Dept. of Revenue
                                2450 Shumard Oak Blvd.
                                Tallahassee, Florida 32399
                                850-617-8347
                                kristian.oldham@
                                floridarevenue.com

For First Home Bank             RYAN MITTAUER, Esquire
                                The Liles Firm
                                50 N. Laura St., Ste. 1200
                                Jacksonville, Florida 32202
                                904-634-1100
                                rmittauer@thelilesfirm.com

For Thomas Rowe Adv. 114        SEAN WAGNER, Esquire
                                Clearwater Businses Law
                                1802 N. Belcher Rd., Ste. 120
                                Clearwater, Florida 33765
                                727-314-3865
                                sean@clearwaterbusinesslaw.com

```
Also appearing              JAMES MCAULEY, Esquire
                            Moffa Sutton & Donini
                            3500 Financial Plaza, Ste. 330
                            Tallahassee, Florida 32312
                            850-250-2432
                            mcauleyjf@gmail.com

For New Wave Acceptance,    KATHRYN COPELAND, Esquire
Platinum Auto Finance, and  englander Fischer
MK Automotive LLC           721 1st Avenue North
                            St. Petersburg, Florida 33701
                            727-898-7210
                            kcopelandQeflegal.com

Also present in courtroom   DR. VASISLOUDES

Also appearing as an        JAMES SUTTON
expert witness
```

1                          PROCEEDINGS

2                 (Proceedings commenced at 10:04 a.m.)

3                 COURTROOM DEPUTY:  All rise.  The United States

4   Bankruptcy Court for the Middle District of Florida is now

5   in session.  The Honorable Caryl E. Delano presiding.  God

6   save the United States and this Honorable Court.

7                 THE COURT: Good morning, everyone.  Please be

8   seated.

9                 COURTROOM DEPUTY:  The 10:00 o'clock hearing,

10  Judge, is Michael Kastrenakes, Case No. 22-1210 and

11  Adversary No. 22-55, 22-95, 22-96, 22-113, 22-114, 22-115,

12  22-118, 22-112, 22-122, and that's it.

13                THE COURT:  All right, thank you.

14                I will call roll for the telephonic -- or the

15  telephonic and Zoom appearances first.  My Zoom list is

16  actually in alphabetical order by first names, so there's no

17  importance to the order in which I'm going to call the

18  names.

19                Okay.  Mr. Jurkiewicz?

20                MR. JURKIEWICZ:  Good morning, Your Honor.  David

21  Jurkiewicz for NextGear Capital in the main case, and in

22  Adversary 55 and Adversary 122.

23                THE COURT:  All right, thank you.

24                Mr. Peterson?

25                MR. PETERSON:  Yes.  Good morning, Your Honor.

1  Edward Peterson on behalf of the Debtor, Michael

2  Kastrenakes.

3            THE COURT:  All right, thank you.

4            Mr. Silverstein?

5            MR. SILVERSTEIN:  Good morning, Your Honor.  Ira

6  Silverstein on behalf of Creditor, Westlake Flooring.

7            THE COURT:  Thank you.

8            Ms. Thomas?

9            MS. THOMAS:  Good afternoon, Your Honor.  Jennifer

10  Smith Thomas on behalf of Automotive Finance Corporation in

11  the Adversary 112.

12            THE COURT:  All right, thank you.  Good morning.

13            Mr. Anthony?

14            MR. ANTHONY:  Good morning, Your Honor.  John

15  Anthony on behalf of the Vasiloudes creditors, and I believe

16  Dr. Vasiloudes is in the courtroom with my partner, Nicholas

17  LaFalce.

18            THE COURT:  Yes, thank you.  They are.

19            All right, Ms. DiSanto?

20            MS. DISANTO:  Good morning, Your Honor.  Kathleen

21  DiSanto on behalf of Maria Kastrenakes and CPX Holdings in

22  the main case.  In Adversary 22-115, Maria Kastrenakes

23  individually.  In Adversary 22-118, Maria Kastrenakes, CPX

24  Holdings, Pagona Kokolakis, and Evangeline Kastrenakes.  And

25  then in Adversary 22-113, Maria Kastrenakes.  I apologize

1    for the long appearance.

2            THE COURT:  That's all right.  Thank you.  Good

3    morning.

4            Ms. Copeland?

5            MS. COPELAND:  Good morning, Your Honor.  Kathryn

6    Copeland for New Wave Acceptance, LLC, Platinum Auto

7    Finance, LLC, and MK Automotive, Inc. in Adversary

8    Proceeding 113.

9            THE COURT:  All right, thank you.  Ms. (sic)

10   Oldham?

11           (No response.)

12           THE COURT:  No, not here?

13           COURTROOM DEPUTY:  He is here.

14           MR. OLDHAM:  Good morning, Your Honor.  Kristian

15   Oldham on behalf of Florida Department of Revenue --

16           THE COURT:  Mr. Oldham.  I do that every time.  My

17   apologizes; I'm so sorry.

18           MR. OLDHAM:  With Florida Department of Revenue in

19   the main case, Your Honor.

20           THE COURT:  All right, thank you.

21           Is Ms. Noel here?

22           (No response.)

23           THE COURT:  No, I don't see her.  All right.

24           Ms. Vilmos?

25           MS. VILMOS:  Good morning, Your Honor.  Nicolette

1   Vilmos, co-counsel for NextGear Capital.

2           THE COURT:  All right, thank you.

3           Mr. Mittauer?

4           MR. MITTAUER:  Good morning, Your Honor.  Ryan

5   Mittauer on behalf of First Home Bank.

6           THE COURT:  All right, thank you.

7           Is there anyone whose name I have not called who

8   is appearing either in the main case or in the Adversaries?

9   I see Mr. Wagner's screen has lit up.

10          MR. WAGNER:  Yes, ma'am.  Good morning, Your

11  Honor.  Sean Wagner.  I'm a co-counsel.  I'm an attorney

12  with Clearwater Business Law.  We represent Thomas Rowe on

13  the Adversary 114 case.

14          THE COURT:  All right, thank you.

15          Anyone else appearing on the Zoom screen whose

16  name I have not called?

17          Oh, all right, Ms. Mayer?  Sorry.

18          MS. MAYER:  No worries, Your Honor.  My fault.

19  I had planned to be there in person but wanted to spare

20  everybody of my illness.  So Amy Mayer, also on behalf of

21  the Debtor in the main case and all the Adversary

22  proceedings

23          THE COURT:  All right, thank you.

24          Anyone else wishing to make an appearance?  Raise

25  your hand.  Yes, sir, blue tie?  And you're on mute, sir.

1        MS. SUTTON:  Good morning, Your Honor.  This is
2   James Sutton, an expert witness for the attorneys for Mr.
3   Kastrenakes.
4        THE COURT:  All right, thank you.  And Mr.
5   McAuley?
6        MR. MCAULEY:  Yes, Your Honor.  Good morning.
7        THE COURT:  All right, thank you.  Good morning.
8        Anyone else wishing to make an appearance in the
9   Kastrenakes case or one of the related adversaries?
10       (No response.)
11       THE COURT:  All right.  I think we have everyone
12   on the Zoom screen and not appearing visually on the Zoom
13   screen.
14       And then I'll take appearances in the courtroom,
15   please.
16       MR. LAFALCE:  Your Honor, Mr. Anthony already
17   announced me, but Nicholas LaFalce on behalf of Dr.
18   Vasiloudes and the Vasiloudes creditors.
19       THE COURT:  All right.  Thank you, Mr. LaFalce.
20       MR. LAMBERS:  Benjamin Lambers for the U.S.
21   Trustee.
22       THE COURT:  All right, thank you.
23       MR. RUDZIK:  Fred Rudzik on behalf of the State of
24   Florida Department of Revenue.
25       THE COURT:  All right, thank you.  Good morning.

1          All right.  So, Ms. Harris, I believe, filed a

2   proposed agenda for today's hearing, and I'd like to know

3   whether there are any other housekeeping matters that we

4   need to take up today, before we get going with the agenda.

5          I am prepared to announce a ruling on the priority

6   issues related to the FDOR's claim.  So anyone --

7          MS. MAYER:  I'm not aware --

8          THE COURT:  Go ahead, Ms. Mayer.

9          MS. MAYER:  I'm sorry, Your Honor.  I'm not aware

10   of any housekeeping matters that we need to deal with today.

11          THE COURT:  All right.  It seemed to me that the

12   FDOR claim issue was probably the matter that we should take

13   up first because it may impact upon the way that the parties

14   intend to go forward at this point.

15          Do you agree with that, Ms. Mayer?

16          MS. MAYER:  I do, Your Honor.

17          THE COURT:  Okay.  All right.  Then I'll announce

18   my ruling.

19          We are here on the Debtor's objection to Claim

20   No. 2 filed by the Florida Department of Revenue, that was

21   Docket No. 136, the FDOR's response to the objection, Docket

22   No. 188, and the parties' Memoranda of Law on the issue of

23   whether a portion of the FDOR's claim is a priority claim

24   under Section 507(a)(8)(C) of the Bankruptcy Code.  Those

25   memoranda are filed at Docket Nos. 210 and 218.

1        In Claim No. 2, the FDOR asserts that the Debtor

2   was the person required to collect and pay over the sales

3   and use taxes of MK Automotive, Inc. and Pinellas Rent-A-

4   Car, Inc., and that under Florida Statute 213.29, Debtor

5   owes $1,903,523.64 to the FDOR.

6        Claim No. 2 consists of the unpaid sales and use

7   taxes in the amount of $951,761.82 and a, quote, penalty in

8   the amount of $951,761.82.  That's Claim No. 2-1, Part II.

9   The FDOR asserts that the $951,761.82 of the total amount is

10   a priority claim under Section 507(a)(8)(C).

11        For the reasons that follow, I find that the

12   portion of Claim No. 2 representing the amount of the unpaid

13   sales and use taxes is a priority claim.  Under Florida

14   Statute 213.29, any person who is required to collect and

15   pay over any sales and use tax, and who willfully fails to

16   pay the tax, quote, shall be liable for a penalty equal to

17   twice the total amount of the tax evaded or not accounted

18   for or paid over.

19        Under Section 507(a)(8)(C), a claim owed to a

20   governmental unit is a priority claim if it is for, quote, a

21   tax required to be collected or withheld and for which the

22   Debtor is liable in whatever capacity, close quote.

23        The Debtor cites *Raleigh v. Illinois Department of

24   Revenue*, 530 U.S. 15, a 2000 Supreme Court case, for his

25   contention that state law governs the substance of claims.

1          The Debtor also cites *VMOB v. Department of*

2  *Revenue*, 292 So.3d 23, a Florida Second DCA opinion from

3  2020, in support of his position that the entire amount of

4  an assessment under Florida Statute 213.29 is the penalty.

5          But in *Raleigh*, the Supreme Court only addressed

6  the Debtor's liability to the state for an assessment, not

7  the priority of the assessment under Section 507 of the

8  Bankruptcy Code.  And the *VMOB* case is a State Court

9  appellate decision that does not address the issue of

10  priority.

11          In *City of New York v. Feiring*, 313 US 283 at 285,

12  a 1941 case, the Supreme Court ruled that whether a New York

13  City sales tax was a tax entitled to priority under the

14  Bankruptcy Code is a federal question.  This is because the

15  priority provisions of Section 507 were intended to have

16  nationwide application and not to vary based upon their

17  characterizations by estate or locality.

18          In 2014, *Feiring* was cited by the Sixth Circuit

19  Court of Appeals in *In re Rizzo*, 741 F.3d. 703 at 705.

20  Here, the FDOR asserts a total claim of $1.9 million under

21  Section 213.29 Florida Statutes.

22          The total claim represents twice the amount of the

23  taxes that the Debtor allegedly did not pay.  But the FDOR

24  only asserts a priority claim for half of that amount, the

25  amount of the sales and use taxes that FDOR contends were

1    evaded or not accounted for or paid over.

2           In *United States v. Sotelo*, 436 US 268, a 1978

3    case, the Supreme Court decided, in the context of a Section

4    523 nondischargeability action, whether a penalty claim by a

5    taxing authority is a tax or a penalty.

6           In *Sotelo*, the Supreme Court evaluated the

7    responsible-person penalties under 26 USC Section 6672.

8    Under Section 6672, any person who is required to collect

9    and pay federal taxes and who willfully fails to do so is

10   liable for a, quote, penalty, close quote, equal to the

11   amount of the tax.

12          The Seventh Circuit Court of Appeals had held

13   that the liability was a penalty, not a tax, because it was

14   designated as a penalty in Section 6672.  The Supreme Court

15   reversed and ruled that the responsible person's debts

16   involved funds that were taxes at the time they were

17   withheld and not paid, and that the debt therefore was for a

18   tax under the Bankruptcy Code.

19          In other words, the Supreme Court held that the

20   character of the funds at the time that they were withheld

21   was dispositive, not the designation of the debt as a

22   penalty in Section 6672.

23          In *In re Paris*, 355 BR 860, a decision from the

24   Bankruptcy Court for the Middle District of Florida in 2006,

25   the Bankruptcy Court, also in the contest of a Section 523

1  dischargeability action, cited *Sotelo* for the principle that

2  responsible-person penalties for which a Debtor is liable

3  under Section 672, are tax debts under the priority

4  provisions of Section 507(a)(8)(C).

5       Here, under Florida Statute 213.29, the FDOR's

6  claim is for twice the amount of the unpaid tax and is

7  imposed as a penalty, but the FDOR only asserts the amount

8  of the allegedly unpaid sales and use taxes as the priority

9  portion of the claim, and the FDOR does not assert a

10 priority claim for double the amount of the unpaid sales and

11 use taxes.

12      So following the reasoning in *Sotelo*, I find that

13 the portion of Claim No. 2 representing the unpaid sales and

14 use taxes is a priority claim under Section 507(a)(8)(C).

15      So I know there are other matters that were raised

16 by the Debtor, other objections to the claim.  And Ms. Mayer

17 or Mr. Peterson, do you have a proposal for how best to

18 bring those matters to a resolution?

19      MS. MAYER:  So, Your Honor, if I may, I'm going to

20 try to lead as much today as long as you can hear me.

21      I think that the objection -- the remaining

22 objections to the claim, as we've discussed, are not

23 necessarily confirmation feasibility issues that would be

24 dealt with on a different timetable.

25      I think that in light of Your Honor's ruling, that

1  feeds into our desire to have the trial, that was previously

2  scheduled on the 11th and 12th of January, continued.  And I

3  can kind of walk Your Honor through that, as it dovetails

4  into the agenda.

5          But I think in light of the ruling, we do need

6  that additional time to chat with our client and the other

7  constituents in the case, and sort of figure out the

8  direction of the case.

9          You know, prior to Your Honor's ruling, we filed a

10  ballot tabulation and an amended tabulation.  The amended

11  tabulation is what's relevant, at Docket No. 221, not, of

12  course, because we intend to go forward today or even in

13  January, but just to give Your Honor a sense for where the

14  voting stands thus far.

15          We have ten classes under the existing Plan, as

16  well as the Plan amendments.  Class 10 was created under the

17  Plan amendments, and we have the vote.  We have three

18  unimpaired classes, 1, 2 and 3.

19          We have Classes 4 through 10 impaired, and we have

20  the vote of Classes 4, 6, 8, 9, and 10.  We don't have New

21  York Life Insurance voting at all.  We're going to do our

22  best to obtain a vote with respect to that class.  We have

23  Mr. Mittauer's client, First Home Bank, voting against

24  confirmation in Class 5, and, of course, they have pending

25  objections to confirmation.  And I'll walk Your Honor

1  through what I think are the legal and factual issues that
2  we're going to need to try.

3       And then with respect to the other classes,
4  from our perspective, we have the vote in those classes.
5  Certainly there are objections, I think, by NextGear and the
6  U.S. Trustee's Office, and perhaps other creditors about the
7  appropriate classification, if you will, of 8, 9 and 10, and
8  whether or not those votes carry the day.

9       So that's kind of the status of things as they
10 are.  I think we do need to go back and sort-of chat with
11 the Debtor and the other constituents and determine where we
12 need to go from here with respect to the case, and perhaps a
13 further Amended Plan or a change of course entirely.

14      But prior to this ruling, what we were going to be
15 asking Your Honor to do was to push off the trial, that was
16 scheduled for January, to sometime in April.  And I know
17 that's a long jump.  We were in the process of retaining
18 valuation experts primarily to deal with the issues teed up
19 by the First Home Bank objection.

20      We have a valuation issue that relates to a very
21 specific type of entity, not like valuing, you know, a mom
22 and pop shop down the street where, you know, most business
23 valuation folks could do that on fairly short notice.  We're
24 talking about valuation of a reinsurance company that's
25 based offshore, and I've actually had to go offshore in

1  terms of retention of an expert on that.  And we're being

2  told that it's going to take them 60 days after they get

3  formally retained and get documents, in order to perform

4  that analysis.

5      We spoke with Mr. Mittauer yesterday, and I think

6  with the parties' -- the lawyers' trial schedule, with other

7  trials, coupled with this expert issue, and folks needed

8  60-plus days once they have documents to actually render

9  opinions and prepare for trial.  That's where we ended up

10  with this request for an April trial date.

11      And in addition to the valuation issues, there's,

12  of course, adequacy of disclosure issues that were raised by

13  the parties, as I mentioned.  NextGear raised good faith

14  under 1129(a)(3), classification issues under 1122 and 1123,

15  and then First Home Bank, in addition to the valuation and

16  indubitable equivalent issue under 1129(b)(2)(A)(iii), as

17  well as the appropriateness of a matching injunction in

18  favor of Mr. Anthony's client, the Vasiloudes creditors, and

19  then also the Seaside Engineering issue with respect to

20  Maria Kastrenakes, whether she's entitled to relief in

21  consideration for a contribution being made.

22      So I think that, in a nutshell, are the factual

23  legal issues as they pertain to the Plan currently on file.

24  I would anticipate either a course correction or an Amended

25  Plan in light of Your Honor's ruling, and I think that

1    pushing the January trial off makes sense in light of all of
2    that.
3           Perhaps, given Your Honor's ruling, maybe we
4    should utilize some time on January 11th for a status
5    conference to see sort-of where this course correction is
6    headed before we actually schedule the trial for April and
7    start moving, you know, quickly down a path toward an
8    extreme litigation course when the Plan may ultimately be
9    amended or may have a more significant course correction.
10          THE COURT:  All right, thank you.  In listening to
11   your presentation -- and I'm going to welcome the input of
12   all the attorneys.  But in listening to your presentation, I
13   had a few thoughts.
14          Before you even suggested it, I was thinking that
15   we should use the January 11th date as a status conference.
16   I'm wondering what can be resolved on January 11th.  Can the
17   classification issues be determined independently of a trial
18   on confirmation?
19          I know that Mr. Jurkiewicz is concerned regarding
20   the issues relating to Mrs. Kastrenakes.  So perhaps those
21   two matters could be taken up on January the 11th.
22          I am not available for trial in April, so we would
23   likely have to go over until May.  But the real question is:
24   What can we best use our time for?  We're already holding
25   January 11th and 12th.  What we can we best use our time to

1   accomplish?  That would give -- and I know there's holidays

2   intervening but, you know, that gives -- what?  A little

3   over three weeks for the Debtor to decide how to amend the

4   Plan, whether to retain experts, things along those lines.

5   And it seems to me that an in-depth status conference, not a

6   ten-minute status conference, might be called for on January

7   the 11th.

8           Ms. Mayer, your position on that?

9           MS. MAYER:  I think that makes sense, Your Honor.

10   I do think we can deal with some issues.  Some issues are

11   primarily legal.  I'll let Mr. Jurkiewicz speak to this, but

12   my view of the world is that the adequacy of the disclosure

13   issues that some of the parties have raised, those can be

14   addressed on January 11th.

15           You know, my sense would be that the, you know,

16   good faith 1129(a)(3) issue could probably be addressed on

17   January 11th, as well as the appropriateness of the

18   classification issues.

19           I think we would address those in that context.  I

20   probably will defer to Ms. DiSanto on the Maria Kastrenakes,

21   Seaside Engineering piece of that.  And whether she can do

22   that by January 11th, I'm not sure about that, but I think

23   the other issues could clearly be resolved.

24           THE COURT:  All right.  And perhaps, using the

25   word "status conference" wasn't the best word to use.

1    Perhaps we should just call January 11th and 12th

2    preliminary hearings on confirmation, that will be addressed

3    primarily by legal argument rather than evidentiary

4    hearings.  Or we can break out just what the issues are that

5    actually need to go to trial, and the valuation issue.

6            Mr. Lambers rose to the podium first, so I'll hear

7    from him.

8            MR. LAMBERS:  Thank you, Your Honor.  I'm thinking

9    January 11 shouldn't be particularly determinative, and I'll

10   tell you why.  First of all, I think we're going to need an

11   Amended Plan here, and we're going to need an Amended

12   Disclosure Statement -- or a Disclosure Statement.  I've

13   kind of discussed some of these issues with counsel for the

14   Debtor.

15           Here's one problem.  I don't think -- maybe Your

16   Honor found it easy.  I didn't find it easy to integrate the

17   unopposed amendment with the existing document.  I think

18   there's confusion about whose -- what the class identities

19   are of these particular creditors.  And the Local Rule

20   really requires that you file an integrated document, and it

21   is not clear.  It's not like it says:  This provision of a

22   Plan is amended even -- and so I think they should do an

23   Amended Plan.  Number two, I'm thinking that maybe there's a

24   course correction coming here.  And so that's an issue.

25           The second thing is we have a Consolidated Plan

1  and Disclosure Statement, which is not appropriate because

2  it's not a small business case.  And I think that sort of

3  happened accidentally, is sort of my thought.  And there's a

4  lot of Disclosure Statement issues here.

5          I think one thing that happened, as Your Honor

6  ruled this morning, plus in my reading of the -- how the

7  Class 9 creditors, for instance, are treated is not

8  particularly clear because I don't know what the universe of

9  claims are, and I don't know, for instance -- because

10  they're getting a pro rata distribution.  So you'd like to

11  know what fits in that Class 9.

12          Plus, it's probably affected by the DOR ruling

13  because I think, if I understand the projections, they

14  anticipated no distribution to them.

15          So I think there's, like, a course correction here

16  that affects the Disclosure Statement.  I think Your Honor

17  and I have discussed in other cases, 1125 provides that

18  you're supposed to file a Disclosure Statement.  It allows

19  an exception to that if it's a small business case.

20          This isn't a small business case.  It was started

21  as one, but I think that was resolved much earlier in the

22  case.

23          THE COURT:  All right.  So, Mr. Lambers, your

24  suggestion is that we use the January 11th date as a pure

25  status conference, with the hope that the appropriate

1    amendments will have been filed prior to that date.

2            MR. LAMBERS:  Yes.  And then everybody can kind of

3    articulate it.  There may be course corrections here, and it

4    may change positions.  Thank you, Your Honor.

5            THE COURT:  All right.  Thank you.

6            Ms. DiSanto?

7            MS. DISANTO:  Thank you, Your Honor.  I believe it

8    makes sense to use the January dates as a status conference

9    and potentially a preliminary hearing, to the extent this

10   case moves forward in a Chapter 11.

11           I think there are probably some elements under

12   1129 that either aren't in dispute or that could be easily

13   resolved, and we should certainly take advantage of that

14   time.

15           With respect to Mrs. Kastrenakes and the release

16   provisions, I think it might be helpful to have some

17   guidance from the Court in terms of what the anticipated

18   evidentiary presentations are going to be.  Obviously, you

19   know, when we get down the line to the final evidentiary

20   confirmation hearing, we're prepared to deal with the

21   Seaside Engineering presentation issues.

22           But given the recent developments in case law, you

23   know, in the *Purdue* case, the *Sackler* cases and all of that,

24   it might be helpful to have, you know, some guidance from

25   the Court so that we can prepare most efficiently for an

1   evidentiary hearing on that.

2           I don't think there's a lot we can accomplish

3   preliminarily on the release issue.  I think that's

4   something that we need to ramp up for once we're ready to go

5   to final confirmation.  But given the Court's ruling today,

6   I'm sure all the parties are going to need time to react, to

7   digest, and to determine how that impacts on the projections

8   and overall feasibility of the Plan.

9           THE COURT:  All right, thank you.

10          Mr. Jurkiewicz, did you wish to be heard?

11          MR. JURKIEWICZ:  Thank you, Your Honor.  I agree

12  with what Ms. DiSanto was just saying.  I think the case is

13  kind of a jump ball now, and we'll figure out who has

14  possession and what the next play is.  It could be premature

15  to rush to try to lift a preliminary injunction for Mrs.

16  Kastrenakes.

17          I've got a discovery dispute with Mr. Anthony, but

18  we can address that after the holidays because we don't know

19  what it's going to look like after the holidays.  So I think

20  a pure status conference with maybe some direction on what

21  the preliminary injunction issues would be like, would be

22  helpful.

23          THE COURT:  All right.  Does anyone else wish to

24  be heard?

25          (No response.)

1          THE COURT:  All right.  Then the consensus appears

2    to be that we come back January 11th for a pure status

3    conference, that perhaps some guidance from the Court on the

4    issue of the injunctive relief would be helpful.  If that's

5    the case, Mr. Jurkiewicz and Ms. DiSanto, you need to tee

6    that up for me in advance so that I can provide that

7    guidance.

8          So perhaps -- and I haven't looked back to see

9    what briefings -- you know, what briefing there is already

10   on the docket, but perhaps the two of you can come up with a

11   briefing schedule in advance of January the 11th that would

12   provide me -- let me look at the calendar.

13         So January 11th is a Wednesday.  If you can come

14   up with a briefing schedule that would conclude by Friday

15   the 6th, I'll have time to look at that in advance of the

16   hearing and hopefully be prepared to assist the parties with

17   some guidance.  No guarantees.  But I think that makes the

18   most sense.

19         And if there's already sufficient briefing in the

20   record that you want to rely on, then just a statement just

21   telling me what docket numbers I need to look at, just

22   basically just like a status report or something that just

23   tells me what docket numbers I need to look at.

24         And that would be primarily in the adversary, I

25   think, although I believe the injunctive relief may have

1  been in the main case.  I honestly cannot remember, as we

2  sit here today.

3          Ms. DiSanto, does that work for you?

4          MS. DISANTO:  I think that sounds great, Your

5  Honor.  I'm sure Mr. Jurkiewicz, you know, Ms. Mayer, Mr.

6  Peterson and I can get together and figure out the best way

7  to tee up the briefing issue, whether it's in the 105

8  adversary or whether it's, you know, some sort of brief or

9  Memorandum of Law in connection with confirmation, because I

10  think the issues all sort of dovetail together at this

11  point.

12          THE COURT:  All right.

13          MS. DISANTO:  So we'll figure it out.

14          THE COURT:  Well, if you can confer amongst

15  yourselves, and then upload an agreed order that sets out

16  the briefing schedule, that would probably be the best way

17  to handle it.

18          MS. DISANTO:  I'll take the lead on that and we'll

19  get something in, Your Honor.  Yes, we can do that.

20          THE COURT:  All right, thank you.  Is that

21  agreeable, Mr. Jurkiewicz?

22          MR. JURKIEWICZ:  Absolutely.  Thank you.

23          THE COURT:  All right, thank you.  Otherwise, can

24  all matters that are on today's calendar be rolled over to

25  January the 11th, or is there anything that we need to

1  address today substantively?

2          MR. LAMBERS:  I don't think anything -- I just

3  wanted to suggest -- I wasn't sure there was going to be a

4  deadline for filing an Amended Plan and Disclosure

5  Statement, and whether there would be a sort-of deadlines

6  for objecting to that new Plan and Disclosure Statement.

7  Thank you.

8          THE COURT:  Thank you.

9          Mr. LaFalce has something to add?

10         MR. LAFALCE:  Yes, Your Honor.  This actually

11  pertains to one of the Adversary cases.  It's Adversary

12  8:22-ap-114.  And in that case, I believe noticed for today,

13  was a Motion to Compel Discovery, and we actually reached

14  an agreement with Mr. Murray Silverstein's client, Mr.

15  Hilgenfeldt, regarding discovery.  We were trying to get an

16  order in place for today, but we just didn't get it

17  finalized in time.

18         But his client has agreed to respond to the

19  discovery in 30 days.

20         THE COURT:  All right.  So you can give me an

21  order on that matter?

22         MR. LAFALCE:  Yes, Your Honor.

23         THE COURT:  Okay.

24         MR. LAFALCE:  But I believe we still -- we don't

25  have an agreement with Mr. Rowe.  There's two Defendants

1    that the Motion to Compel was filed against.

2              THE COURT:  Okay.

3              MR. LAFALCE:  And so I --

4              THE COURT:  Do I have counsel for Mr. Rowe here?

5              (No response.)

6              THE COURT:  Perhaps not.  This is Adversary --

7              COURTROOM DEPUTY:  Wasn't that Mr. Wagner?

8              MR. WAGNER:  Hi, Judge.  Sorry about that.  I was

9    struggling with my --

10             THE COURT:  Oh, Mr. Wagner.  Okay.

11             MR. WAGNER:  Yes, ma'am.  We are actually, Your

12   Honor, not the ones who filed the motion.  This is Adversary

13   114.  The motion was filed -- I can't remember who filed it.

14   It was a question of discovery compliance.  I think the

15   issue's been resolved, but I'll let counsel who filed the

16   motion, if that's okay with you, address it before we

17   respond.

18             THE COURT:  All right.  I'm trying to find the

19   docket -- I mean, the calendar for this Adversary.

20   Adversary 114?

21             COURTROOM DEPUTY:  Page 11, Judge, was where the

22   Motion to Compel is.

23             MR. LAFALCE:  Yes, Your Honor.

24             THE COURT:  Okay.  All right.

25             MR. LAFALCE:  Docket 57.

```
 1              THE COURT:  Okay.  So this is -- all right, the

 2    Motion to Compel.  And this is --

 3              MR. LAFALCE:  It's the Vasiloudes creditors'

 4    motion.

 5              THE COURT:  Okay.  Motion to Compel filed by John

 6    Anthony; correct?

 7              MR. LAFALCE:  Correct, Your Honor.

 8              THE COURT:  Okay.  And you're seeking discovery

 9    from Mr. Rowe, represented by Mr. Wagner?

10              MR. LAFALCE:  Yes, Your Honor.

11              THE COURT:  All right.  Mr. Wagner tells me he

12    thinks it's resolved?

13              MR. LAFALCE:  I was -- like I said, I was aware of

14    a resolution with Mr. Hilgenfeldt, Mr. Murray Silverstein's

15    client.  I wasn't aware that we had reached an agreement on

16    discovery with regards to Mr. Rowe.  I assume we would agree

17    to the same arrangement that we had with Mr. Silverstein's

18    client.

19              THE COURT:  All right.  Well, Mr. Wagner, will

20    your client agree to produce documents or comply with the

21    discovery request within 30 days?

22              MR. WAGNER:  Yes, ma'am.  Just to clarify, he

23    actually complied yesterday.  I won't go into the back

24    story; it was too much.  But it was served -- the items were

25    served in State Court, along with the process.  When we
```

1  became aware of it, we got on it and we were able to get all

2  the responses done and sent to counsel yesterday.  So when I

3  said "resolved," that's what I meant.

4         THE COURT:  Okay.  That sounds good.  So why

5  doesn't Mr. LaFalce, when he goes back to his office, he can

6  confirm the status of that.  If, for some reason, there's

7  something that he thinks is outstanding, why don't I just

8  grant the motion and provide 30 days.  So you're basically

9  on the same discovery tract.  Does that work, Mr. Wagner?

10         MR. WAGNER:  That's fine, Judge.  The only thing I

11  would ask is if, you know, you're granting the motion, if

12  something is outstanding, I think my office takes the

13  position that we've complied in good faith.

14         We will certainly do our best to comply within

15  30 days, but the concern I have is if you grant an order

16  compelling before it's determined whether we've complied or

17  not, I just don't want my client to end up, you know, having

18  to --

19         THE COURT:  Without prejudice to your client's

20  position that he believes he's fully complied with the

21  discovery request.  How's that?

22         MR. WAGNER:  Yes, ma'am.  Thank you.  I appreciate

23  that.

24         THE COURT:  Okay?  So you can include that, Mr.

25  LaFalce, in an agreed order, if you think there's something

1    that's outstanding, okay?

2         MR. LAFALCE:  Thank you, Your Honor.

3         THE COURT:  All right.  Okay.  Anything else we

4    need to address today?

5         (No response.)

6         THE COURT:  All right, then.  Everything that's on

7    the calendar is rolled over for a pure status conference on

8    January the 11th.  I imagine we were starting at 9:30 in the

9    morning, right, Lisa?

10         COURTROOM DEPUTY:  (Apparently nodding.)

11         THE COURT:  Okay.  At 9:30 a.m.  That will be by

12    docket entry.  And Mr. Lambers had raised the issue of

13    whether there'd be a deadline for filing an Amended Plan and

14    objections.

15         Ms. Mayer, do you know when you'll be able to get

16    an Amended Plan on file?

17         MS. MAYER:  My sense, Your Honor, with the

18    intervening holidays, it might -- you know, given that we're

19    discussing a potential course correction, it might be

20    aggressive to file an Amended Plan prior to that hearing.

21         But I expect, at that hearing, to be able to

22    report, you know, what the Debtor's intention is with

23    respect to any course correction.  And if there's going to

24    be an Amended Plan filed, I think we'll be able to tell Your

25    Honor our timetable for doing that, and we would expect to

1  do that in fairly short order after that hearing.

2          THE COURT:  All right.  I don't think we're going

3  to be able to get much done on the 11th unless there's

4  something on the table.  So I'm going to set a deadline of

5  January 9th for the Debtor to file an Amended Plan.  That

6  will give the attorneys an opportunity to take a look at the

7  Amended Plan.  I'm not going to set a Plan objection

8  deadline yet.  It may be that the Amended Plan requires re-

9  solicitation, and then we can just start that clock rolling.

10         But I would ask that all the attorneys that are

11  interested in the Plan, when it's filed January 9th, to have

12  taken a look at it before January 11th, so you can let me

13  know informally whether you're, you know, jumping up and

14  down yelling and screaming, or whether you think it looks

15  good.  And then we can have a better sense of where we're

16  headed after that.

17         Mr. Lambers?

18         MR. LAMBERS:  Yes.  I also thought the Plan and

19  Disclosure Statement ought to be broken --

20         THE COURT:  Plan and Disclosure Statement, that's

21  correct.  And that'll make it a little easier to isolate the

22  issues that relate to whether the Disclosure Statement

23  provides adequate information.

24         So why don't I ask Mr. Lambers to give me that

25  order, if you don't mind.

1           MR. LAMBERS:  Sure.

2           THE COURT:  Okay.

3           MR. LAMBERS:  I'll work with Ms. Mayer on that

4    one.

5           THE COURT:  That'll be great.  Thank you.

6           Okay, anything else we can take up this morning?

7           (No response.)

8           THE COURT:  All right.  Well, then Happy Holidays,

9    everyone.  Happy New Year.  It looks like there's a lot of

10   work that's going to be done between now and January 9th and

11   January 11th.  And, as always, I strongly encourage you to

12   keep the lines of communication open and see if there's a

13   way that there can be a resolution, because the path to a

14   contested confirmation in May is going to be a long drawn-

15   out, time-consuming and expensive path, which may not be in

16   the best interests of all the clients.

17           So to the extent that you can figure out

18   resolutions that your clients may not be happy with but

19   they're able to live with, sometimes that is the best

20   resolution of all.

21           So thank you all, and I will see you next year.

22   Court'll be in recess.

23           COURTROOM DEPUTY:  All rise.

24           (Proceedings adjourned at 10:41 a.m.)

25

## CERTIFICATE

This certifies that the foregoing transcript constitutes the official verbatim transcript produced to the best degree possible from the FTR digital recording, and/or MP3 backup, as recorded, logged, maintained, and provided by court staff.

I further certify that I am neither counsel for, nor under contract with, nor related to, nor an employee of any of the parties to the action in which this hearing was taken and, further, that I have no personal interest in the outcome of the action.


_Cheryl Culver_ _____        January 12, 2023_____
Cheryl Culver                          Date
Certified Court Reporter

For Johnson Transcription Service
Approved Court Transcribers
for U.S. Bankruptcy Court
Middle District of Florida