# EXHIBIT "D"

## PLEDGE AND SECURITY AGREEMENT

This PLEDGE AND SECURITY AGREEMENT (as the same may be amended, restated, supplemented or otherwise modified from time to time, this "Agreement") is entered into as of July __, 2023, by MARIA KASTRENAKES ("Grantor"), in favor of Cygram Heritage, LLLP (the "Grantee").

## RECITALS:

WHEREAS, Reference is made to that certain "Order Granting Motion to Compromise Controversy Between Vasiloudes Creditors and Kastrenakes Parties" entered In re: Michael Kastrenakes, Case No.: 8:22-bk-01210-CED, United States Bankruptcy Court, Middle District of Florida Tampa Division, entered on July_, 2023 (the "Order"), and;

WHEREAS, Grantor is a member and owner of the Company Equity Interests (as defined below) and accordingly will derive substantial direct and indirect benefits from the transactions contemplated by the Order;

WHEREAS, to induce the Grantee to agree to the entry of the Order, the Grantor has agreed to pledge all of her right, title and interest in, to and under the Company Equity Interests.

NOW, THEREFORE, in consideration of the premises, Grantor hereby agrees with Grantee as follows:

## ARTICLE 1

## DEFINITIONS

**Section 1.1    Terms Defined in the Order or UCC.**  All capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the UCC or Order.

**Section 1.2    Definitions of Certain Terms Used Herein.**  As used in this Agreement the following terms shall have the corresponding meanings:

"Agreement" has the meaning set forth in the introductory paragraph hereto.

"Article 8 Matter" means any action, decision, determination or election by the Company or its member(s) that its membership interests or other equity interests, or any of them, be, or cease to be, a "security" as defined in and governed by Article 8 of the UCC, and all other matters related to any such action, decision, determination, or election.

"Company Equity Interests" means the limited liability company interests of Grantor in the company (the "Company") listed on Schedule I hereto, together with all limited liability company interest certificates, options, or rights of any nature whatsoever which may be issued or granted by the Company to Grantor while this Agreement is in effect.

"Company Operating Agreement" means together the Operating Agreement of CPX Holdings, LLC dated as of March 15, 2022.

"Event of Default" means any failure by the Debtor or Grantor to make any payment, or to perform or observe any covenant to be performed on its part under the Order which continues

unremedied beyond any cure period specified in the Order for performance of such payment covenant.

"<u>Grantor</u>" has the meaning set forth in the introductory paragraph hereto.

"<u>Obligations</u>" means any amounts Debtor or Grantor is obligated to pay pursuant to the Order.

"<u>Pledged Collateral</u>" has the meaning set forth in <u>Section 2.1</u> of this Agreement.

"<u>Proceeds</u>" means (i) Grantor's share, right, title and interest in and to all distributions, monies, fees, payments, compensations and proceeds now or hereafter becoming due and payable to Grantor by the Company with respect to the Company Equity Interests whether payable as profits, distributions, asset distributions, repayment of loans or capital or otherwise and including all "proceeds" as such term is defined in Section 9-102(a)(64) of the UCC; (ii) all contract rights, general intangibles, claims, powers, privileges, benefits and remedies of Grantor relating to the foregoing; and (iii) all cash or non-cash proceeds of any of the foregoing.

"<u>Securities Act</u>" means the Securities Act of 1933, as amended.

"<u>UCC</u>" means the Uniform Commercial Code as in effect in the State of Florida.

"<u>Grantee</u>" has the meaning set forth in the introductory paragraph hereto.

## ARTICLE 2

## GRANT OF SECURITY INTEREST

**Section 2.1    <u>Pledge; Grant of Security Interest</u>**.  Grantor hereby pledges and grants to Grantee, as collateral security for the prompt and complete payment of the Obligations and performance when due of Debtor's and Grantor's obligations under the Order, a senior and first priority security interest in all of Grantor's right, title, and interest to the following (collectively, the "<u>Pledged Collateral</u>"):

(a)    all Company Equity Interests;

(b)    all securities, moneys or property representing dividends or interest on any of the Company Equity Interests, or representing a distribution in respect of the Company Equity Interests, or resulting from a split-up, revision, reclassification or other like change of the Company Equity Interests or otherwise received in exchange therefor, and any subscription warrants, rights or options issued to the holders of, or otherwise in respect of, the Company Equity Interests;

(c)    any policy of insurance payable by reason of loss or damage to the Company Equity Interests;

(d)    all "accounts", "general intangibles", "instruments" and "Pledged Collateral" (in each case as defined in the UCC) constituting or relating to the foregoing; and

(e)    all Proceeds of any of the foregoing property of Grantor (including any proceeds of insurance thereon, all "accounts", "general intangibles", "instruments" and "Pledged Collateral", in each case as defined in the UCC, constituting, or relating to the foregoing).

**Section 2.2** **Certificates**.   Concurrently with the execution and delivery of this Agreement, Grantor shall deliver to Grantee each original certificate evidencing the Company Equity Interests (which certificates shall constitute "security certificates" (as defined in the UCC)), together with an undated limited liability company interest power covering each such certificate, duly executed in blank.

**Section 2.3** **Financing Statements**.   Grantor hereby authorizes the filing of financing statements, and continuation statements and amendments thereto and assignments thereof, describing the Pledged Collateral covered thereby (a) as "all of debtor's right, title and interest in, to and under all Pledged Collateral, whether now owned or hereafter acquired, now existing or hereafter created, and wherever located" or words to that effect, notwithstanding that such wording may be broader in scope than the collateral described in this Article II and regardless of whether any particular asset comprised in the Pledged Collateral falls within the scope of Article 9 of the UCC or (b) as being of an equal or lesser scope or with greater detail, and any other filing, recording or registration (including any filing, recording or registration that may be necessary or appropriate under Article II that Grantee may deem necessary or appropriate to further protect or maintain the perfection of the security interests).   A photocopy or other reproduction of this Agreement shall be sufficient as a financing statement where permitted by law.   This Agreement shall constitute a security agreement under applicable law.

## ARTICLE 3

## REPRESENTATIONS AND WARRANTIES

Grantor represents and warrants to Grantee as of the date hereof as follows:

**Section 3.1** **Ownership of Pledged Collateral**.   Grantor is the direct and beneficial owner of all Company Equity Interests, including all Company Equity Interests which have been delivered to Grantee by or on behalf of Grantor free and clear of any Liens, except for the security interest granted to Grantee hereunder.   Grantor further represents and warrants that all such Company Equity Interests have been duly and validly issued and, as of the date hereof, constitute 100% of the membership interests in the Company outstanding.

**Section 3.2** **No Prohibition on Pledge**.   Except for restrictions and limitations imposed by securities laws generally, (a) the Pledged Collateral is and will continue to be freely transferable and assignable and (b) none of the Pledged Collateral is or will be subject to any option, right of first refusal, or contractual restriction of any nature that might prohibit, impair, delay or otherwise affect in any manner material and adverse to Grantee (i) the pledge of such Pledged Collateral hereunder, (ii) the sale or disposition thereof pursuant hereto or (iii) the exercise by Grantee of rights and remedies hereunder. To the extent necessary under the Company Operating Agreement, Grantor as Member consents to this Agreement.

**Section 3.3** **Perfection**.   Upon the (a) delivery to Grantee of the original certificates evidencing the Company Equity Interests and (b) filing of the financing statement referred to in Section 2.3 with the Secretary of State of the State of Florida, the lien granted pursuant to this Agreement will constitute a valid, perfected lien on the Pledged Collateral, enforceable against all creditors of Grantor and any Persons purporting to purchase any Pledged Collateral and related Proceeds from Grantor, free from any adverse claim, enforceable against all creditors of Grantor and any Persons purporting to purchase any Company Equity Interests and related Proceeds from

3

Grantor.  No financing statement or security agreement describing all or any portion of the Pledged Collateral which has not lapsed or been terminated naming Grantor as debtor has been filed or is of record in any jurisdiction except financing statements naming Grantee as the secured party.

**Section 3.4**    <u>**Certificated Securities**</u>.  The Company Equity Interests are (a) "securities" (within the meaning of Sections 8-102(a)(15) and 8-103 of the UCC) and (b) "financial assets" (within the meaning of Section 8-102(a)(9) of the UCC).  The Company Equity Interests are not (x) credited to a "securities account" (within the meaning of Section 8-501(a) of the UCC), (y) dealt in or traded on a securities exchange or in a securities market and (z) "investment company securities" (within the meaning of Section 8-103 of the UCC). The Company Operating Agreement and the certificates evidencing the Company Equity Interests state that the Company Equity Interests are "securities" (within the meaning of Sections 8-102(a)(15) and 8-103 of the UCC). There currently exist no certificates, instruments or writings representing Company Equity Interests other than those delivered to Grantee.

## ARTICLE 4

## <u>COVENANTS</u>

From the date of this Agreement and thereafter until the indefeasible payment in full of the Obligations, Grantor agrees as follows:

**Section 4.1**    <u>**Acknowledgements of Parties**</u>.

(a)    If Grantor shall, as a result of its ownership of the Company Equity Interests, become entitled to receive or shall receive any limited liability company certificate (including any certificate representing a dividend or a distribution in connection with any reclassification, increase or reduction of capital or any certificate issued in connection with any reorganization), option or rights, whether in addition to, in substitution of, as a conversion of, or in exchange for any shares of the Company Equity Interests, or otherwise in respect thereof, Grantor shall accept the same as Grantee' agent, hold the same in trust for Grantee and deliver the same forthwith to Grantee in the exact form received, duly endorsed by Grantor to Grantee, together with an undated limited liability company interest power covering such certificate duly executed in blank, to be held by Grantee hereunder as additional security for the Obligations.  Any sums paid upon or in respect of the Company Equity Interests upon the liquidation or dissolution of the Company shall be paid over to Grantee to be held by it hereunder as additional security for the Obligations, and in case any distribution of capital shall be made on or in respect of the Company Equity Interests or any property shall be distributed upon or with respect to the Company Equity Interests pursuant to the recapitalization or reclassification of the capital of the Company or pursuant to the reorganization thereof, the property so distributed shall be delivered to Grantee to be held by it, subject to the terms hereof, as additional security for the Obligations.  If any sums of money or property so paid or distributed in respect of the Company Equity Interests shall be received by Grantor, Grantor shall deliver the same to Grantee and, until such money or property is paid or delivered to Grantee, hold such money or property in trust for Grantee, segregated from other funds of Grantor, as additional security for the Obligations.

(b)    Without the prior written consent of Grantee, Grantor shall not, directly or indirectly (i) vote to enable, or take any other action to permit, the Company to issue any additional limited liability company interests or to issue any other securities convertible into or granting the

right to purchase or exchange for any membership interests in the Company, or (ii) except as permitted by the Order, sell, assign, transfer, exchange or otherwise dispose of, or grant any option with respect to, the Pledged Collateral, or (iii) create, incur, authorize or permit to exist any Lien or option in favor of, or any claim of any Person with respect to, any of the Pledged Collateral, or any interest therein, except for the lien provided for by this Agreement. The Grantor shall defend the right, title and interest of Grantee in, to and under the Pledged Collateral against the claims and demands of all Persons whomsoever.

(c)     At any time and from time to time, upon the written request of Grantee, and at the sole expense of Grantor, Grantor shall promptly and duly give, execute, deliver file and/or record such further instruments and documents and take such further actions as Grantee may reasonably request for the purposes of obtaining, creating, perfecting, validating or preserving the full benefits of this Agreement and of the rights and powers herein granted including filing UCC financing or continuation statements. The Grantor hereby authorizes Grantee to file any such financing statement or continuation statement without the signature of Grantor to the extent permitted by law.

**Section 4.2** **UCC Article 8**. The Company Equity Interests shall at all times continue to be (a) "securities" (within the meaning of Sections 8-102(a)(15) and 8-103 of the UCC) and (b) "financial assets" (within the meaning of Section 8-102(a)(9) of the UCC). At no time during the term of this Agreement shall any Company Equity Interests be (x) credited to a "securities account" (within the meaning of Section 8-501(a) of the UCC), (y) dealt in or traded on a securities exchange or in a securities market or (z) "investment company securities" (within the meaning of Section 8-103 of the UCC). The Company Operating Agreement and the certificates evidencing the Company Equity Interests each shall at all times state that the Company Equity Interests are "securities" (within the meaning of Sections 8-102(a)(15) and 8-103 of the UCC).

**Section 4.3** **Cash Dividends; Voting Rights**. Unless an Event of Default shall have occurred and be continuing, Grantor shall be permitted to receive all limited liability company interest distributions or cash dividends paid in the normal course of business of the Company and to exercise all voting and limited liability company interests or other rights with respect to the Company Equity Interests, provided that no vote shall be cast or right exercised or other action taken which could reasonably be expected to impair the Pledged Collateral or which would be inconsistent with or result in any violation of any provision of the Order.

**Section 4.4** **Registration and Exercise of Rights**. At any time after the occurrence and during the continuance of an Event of Default: (a) at the request of Grantee, Grantor will permit any registrable Pledged Collateral owned by Grantor to be registered in the name of Grantee or its nominee and (b) Grantor will permit Grantee or its nominee, without notice, to exercise or refrain from exercising any and all voting and other consensual rights pertaining to the Pledged Collateral owned by Grantor or any part thereof, and to receive all dividends and interest in respect of such Pledged Collateral.

# ARTICLE 5

## REMEDIES UPON EVENT OF DEFAULT

**Section 5.1    Acceleration and Remedies**.

(a)    Upon the occurrence and during the continuation of an Event of Default, Grantee may exercise any or all of the following rights and remedies:

(i)    Those rights and remedies provided in the Order, provided that this clause shall not be understood to limit any rights or remedies available to Grantee prior to an Event of Default.

(ii)    Those rights and remedies are available to a secured party under the UCC or under any other applicable law when a debtor is in default under a security agreement.

(iii)    Upon notice to Grantor, sell, lease, assign, grant an option or options to purchase or otherwise dispose of, deliver, or realize upon, the Pledged Collateral or any part thereof in one or more parcels at public or private sale or sales (which sales may be adjourned or continued from time to time with or without notice and may take place at Grantor's premises of elsewhere), for cash, on credit or for future delivery without assumption of any credit risk, and upon such other terms as Grantee may deem commercially reasonable.

(iv)    Concurrently with written notice to Grantor, transfer, exchange and register in its name or in the name of its nominee the whole or any part certificates or instruments representing or evidencing Pledged Collateral for certificates or instruments of smaller or larger denominations, to exercise the voting and all other rights as a holder with respect thereto, to collect and receive all cash dividends, interest, principal and other distributions made thereon and to otherwise act with respect to the Pledged Collateral as though Grantee was the outright owner thereof.

(b)    Grantee may comply with any applicable state or federal law requirements in connection with a disposition of the Pledged Collateral, and such compliance will not be considered to adversely affect the commercial reasonableness of any sale of the Pledged Collateral.

(c)    Grantee shall have the right upon any such public sale or sales and, to the extent permitted by law, upon any such private sale or sales, to purchase for the benefit of Grantee, the whole or any part of the Pledged Collateral so sold, free of any right of equity redemption, which equity redemption Grantor hereby expressly releases.

(d)    Until Grantee is able to affect a sale, lease, or other disposition of Pledged Collateral, Grantee shall have the right to hold or use Pledged Collateral, or any part thereof, to the extent that it deems appropriate for the purpose of preserving Pledged Collateral or its value or for any other purpose deemed appropriate by Grantee.  Grantee may, if it so elects, seek the appointment of a receiver or keeper to take possession of Pledged Collateral and to enforce any of Grantee' remedies, with respect to such appointment without prior notice or hearing as to such appointment.

49423357.2

(e)      Notwithstanding the foregoing, Grantee shall not be required to (i) make any demand upon, or pursue or exhaust any of their rights or remedies against, Grantor, any other obligor, guarantor, Grantor or any other Person with respect to the payment of the Obligations or to pursue or exhaust any of their rights or remedies with respect to any Pledged Collateral therefor, any other collateral therefor or any direct or indirect guarantee thereof, (ii) marshal the Pledged Collateral, any such other collateral or any guarantee of the Obligations or to resort to the Pledged Collateral, any such other collateral or any such guarantee in any particular order, or (iii) effect a public sale of any Pledged Collateral.

**Section 5.2      Certain Rights Relating to Equity Interests**.

(a)      Grantor recognizes that Grantee may be unable to effect a public sale of any or all Company Equity Interests, by reason of certain prohibitions contained in the Securities Act and applicable state securities laws or otherwise, and may be compelled to resort to one or more private sales thereof to a restricted group of purchasers which will be obliged to agree, among other things, to acquire such securities for their own account for investment and not with a view to the distribution or resale thereof.  Grantor acknowledges and agrees that any such private sale may result in prices and other terms less favorable to the seller than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall not be deemed to have been made in a commercially unreasonable manner solely by virtue of being a private sale. Grantee shall be under no obligation to delay a sale of any of the Pledged Collateral for the period necessary to permit Grantor to register such Pledged Collateral for public sale under the Securities Act or under applicable state securities laws, even if Grantor would agree to do so.

(b)      Grantor further shall use its best efforts to do or cause to be done all such other acts as may be reasonably necessary to make any sale or sales of all or any portion of the Company Equity Interests pursuant to this Section 5.2 valid and binding and in compliance with any and all applicable Legal Requirements.  Grantor further agrees that a breach of any of the covenants contained in this Section 5.2 will cause irreparable injury to Grantee, that Grantee has no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in this Section 5.2 shall be specifically enforceable against Grantor, and Grantor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense that no Event of Default has occurred under the Order.

(c)      The UCC states that Grantee can purchase the Company Equity Interests only if it is sold at a public sale.  Grantee has advised Grantor that SEC staff personnel have issued various No-Action Letters describing procedures which, in the view of the SEC staff, permit a foreclosure sale of securities to occur in a manner that is public for purposes of Article 9 of the UCC, yet not public for purposes of Section 4(2) of the Securities Act.  The UCC permits Grantor to agree on the standards for determining whether Grantee has complied with its obligations under Article 9.  Pursuant to the UCC, Grantor specifically agrees (i) that it shall not raise any objection to Grantee' purchase of the Company Equity Interests (through bidding on the Obligations or otherwise) and (ii) that a foreclosure sale conducted in conformity with the principles set forth in such No-Action Letters (A) shall be considered to be a "public" sale for purposes of the UCC; (B) will be considered commercially reasonable notwithstanding that Grantee has not registered or sought to register the Company Equity Interests under applicable securities laws, even if Grantor agrees to pay all costs of the registration process; and (C) shall be considered to be commercially

reasonable notwithstanding that Grantee purchases the Pledged Collateral at such a sale.

(d)    Grantor agrees that Grantee shall not have any general duty or obligation to make any effort to obtain or pay any price for any Pledged Collateral sold by Grantee pursuant to this Agreement. The Grantee may, among other things, accept the first offer received, or decide to approach or not to approach any potential purchasers. The Grantee may determine to offer the Pledged Collateral only to Persons who are engaged in the same business as the Company and who have sufficient financial resources to purchase all of the Pledged Collateral in one sale. Without in any way limiting Grantee' right to conduct a foreclosure sale in any commercially reasonable manner, Grantor hereby agrees that any foreclosure sale conducted in accordance with the following provisions shall be considered commercially reasonable:

(i)    Not more than thirty (30) days before, and not less than five (5) days in advance of the sale, Grantee notifies Grantor in writing at the address described in Section 6.13 of the time and place of such sale,

(ii)    The sale is conducted by a nationally or regionally recognized investment brokerage or auction firm; and

(iii)    Such investment brokerage or auction firm shall solicit bids for the offered Pledged Collateral from no less than three prospective purchasers who have sufficient financial resources to purchase the offered Pledged Collateral and are provided with at least fourteen (14) days to conduct due diligence on the offered Pledged Collateral and the Properties owned by the Company.

**Section 5.3    Grantor's Obligations Upon an Event of Default**. Upon the request of Grantee after the occurrence of an Event of Default, Grantor will: (a) furnish to Grantee, or cause the Company to furnish to Grantee, any information regarding the Pledged Collateral in such detail as Grantee may reasonably require and (b) take, or cause the Company to take, any and all actions necessary to register or qualify the Pledged Collateral to enable Grantee to consummate a public sale or other disposition of the Pledged Collateral.

**Section 5.4    Notice of Disposition of Pledged Collateral; Condition of Pledged Collateral**. The Grantor hereby waives notice of the time and place of any public sale or the time after which any private sale or other disposition of all or any part of the Pledged Collateral may be made. To the extent such notice may not be waived under applicable law, any notice made shall be deemed reasonable if sent to the Company, addressed as set forth in Section 6.13, at least five (5) days (but no more than thirty (30) days) prior to (a) the date of any such public sale or (b) the time after which any such private sale or other disposition may be made. To the maximum extent permitted by applicable law, Grantor waives all claims, damages, and demands against Grantee arising out of the repossession, retention or sale of the Pledged Collateral, except such as arise solely out of the gross negligence, fraud or willful misconduct of Grantee. To the extent it may lawfully do so, Grantor absolutely and irrevocably waives and relinquishes the benefit and advantage of, and covenants not to assert against Grantee, any valuation, stay, appraisal, extension, moratorium, redemption or similar laws and any and all rights or defenses it may have as a surety now or hereafter existing which, but for this provision, might be applicable to the sale of any Pledged Collateral made under the judgment, order or decree of any court, or privately under the power of sale conferred by this Agreement, or otherwise. Except as otherwise specifically provided herein, Grantor hereby waives presentment, demand, protest or any notice (to the

maximum extent permitted by applicable law) of any kind in connection with this Agreement or any Pledged Collateral.

**Section 5.5**    **Limitation on Grantee' Duty with Respect to the Pledged Collateral**. The Grantee shall have no obligation to prepare the Pledged Collateral for sale.  The Grantee shall use reasonable care with respect to the Pledged Collateral in its possession or under its control. Grantee shall not have any other duty as to any Pledged Collateral in its possession or control or in the possession or control of any agent or nominee of Grantee, or any income thereon or as to the preservation of rights against prior parties or any other rights pertaining thereto.  To the extent that applicable law imposes duties on Grantee to exercise remedies in a commercially reasonable manner, Grantor acknowledges and agrees that it is commercially reasonable for Grantee to (a) not incur expenses deemed significant by Grantee to prepare Pledged Collateral for disposition, (b) not obtain third party consents for access to Pledged Collateral to be disposed of, or to obtain or, if not required by other law, to fail to obtain governmental or third party consents for the collection or disposition of Pledged Collateral to be collected or disposed of, (c) advertise dispositions of Pledged Collateral through publications or media of general circulation, whether or not the Pledged Collateral is of a specialized nature, (d) contact other Persons, whether or not in the same business as Grantor, for expressions of interest in acquiring all or any portion of such Pledged Collateral, (e) hire one or more professional auctioneers to assist in the disposition of Pledged Collateral, whether or not the Pledged Collateral is of a specialized nature, (f) dispose of Pledged Collateral by utilizing internet sites that provide for the auction of assets of the types included in the Pledged Collateral or that have the reasonable capacity of doing so, or that match buyers and sellers of assets, (g) dispose of assets in wholesale rather than retail markets, (h) disclaim disposition warranties, such as title, possession or quiet enjoyment, (i) purchase insurance or credit enhancements to insure Grantee against risks of loss, collection or disposition of Pledged Collateral or to provide to Grantee a guaranteed return from the collection or disposition of Pledged Collateral, or (j) to the extent deemed appropriate by Grantee, to obtain the services of other brokers, investment bankers, consultants and other professionals to assist Grantee in the collection or disposition of any of the Pledged Collateral.  Grantor acknowledges that the purpose of this Section 5.5 is to provide non-exhaustive indications of what actions or omissions by Grantee would be commercially reasonable in Grantee's exercise of remedies against the Pledged Collateral and that other actions or omissions by Grantee shall not be deemed commercially unreasonable solely on account of not being indicated in this Section 5.5.  Without limitation upon the foregoing, nothing contained in this Section 5.5 shall be construed to grant any rights to Grantor or to impose any duties on Grantee that would not have been granted or imposed by this Agreement or by applicable law in the absence of this Section 5.5.

**Section 5.6**    **Grantee Performance of Grantor's Obligations**.  Without having any obligation to do so, after the occurrence and during the continuance of (a) a Default, if Grantee reasonably determines it to be necessary or advisable to preserve or protect the Pledged Collateral, upon three (3) days' notice to Grantor (unless Grantee reasonably determines such notice is not practical given the nature of Default), or (b) an Event of Default, Grantee may perform or pay any obligation which Grantor has agreed to perform or pay in this Agreement and Grantor shall reimburse Grantee for any reasonable amounts paid by Grantee pursuant to this Section 5.6. Grantor's obligation to reimburse Grantee pursuant to the preceding sentence shall be an Obligation payable on demand.

**Section 5.7**    **Authorization for Grantee to Take Certain Action**.  Grantor irrevocably

authorizes Grantee at any time and from time to time in the sole discretion of Grantee and irrevocably appoints Grantee as its attorney in fact, coupled with an interest, (a) to execute on behalf of Grantor as debtor and to file financing statements necessary or desirable in Grantee's sole discretion to perfect and to maintain the perfection and priority of Grantee's security interest in the Pledged Collateral, (b) to indorse and collect any cash Proceeds of the Pledged Collateral, (c) to file a carbon, photographic or other reproduction of this Agreement or any financing statement with respect to the Pledged Collateral as a financing statement and to file any other financing statement or amendment of a financing statement (which does not add new collateral or add a debtor) in such offices as Grantee deems necessary or desirable to perfect and to maintain the perfection and priority of Grantee's security interest in the Pledged Collateral, (d) to apply the Proceeds of any Pledged Collateral received by Grantee to the Obligations and (e) to discharge past due taxes, assessments, charges, fees or Liens on the Pledged Collateral, and Grantor agrees to reimburse Grantee on demand for any reasonable payment made or any reasonable expense incurred by Grantee in connection therewith, provided that this authorization shall not relieve Grantor of any of its Obligations under this Agreement or under the Order.  The Grantee agrees not to exercise the power of attorney granted under clauses (b), (d) and (e) of this <u>Section 5.7</u> except after the occurrence and during the continuance of an Event of Default.

Section 5.8    <u>**Irrevocable Proxy**</u>. Solely with respect to Article 8 Matters, Grantor hereby irrevocably grants and appoints Grantee, from the date of this Agreement until the termination of this Agreement in accordance with its terms, as such Grantor's true and lawful proxy, for and in Grantor's name, place and stead to vote the Company Equity Interests, whether directly or indirectly, beneficially or of record, now owned or hereafter acquired, with respect to such Article 8 Matters.  The proxy granted and appointed in this <u>Section 5.8</u> shall include the right to sign Grantor's name (as owner of the Company) to any consent, certificate or other document relating to an Article 8 Matter and the Company Equity Interests that applicable law may permit or require, to cause the Company Equity Interests to be voted in accordance with the preceding sentence. Grantor hereby represents and warrants that there are no other proxies and powers of attorney with respect to any Article 8 Matter that such Grantor may have granted or appointed.  Grantor shall not give a subsequent proxy or power of attorney or enter into any other voting agreement with respect to the Company Equity Interests with respect to any Article 8 Matter and any attempt to do so with respect to any Article 8 Matter will be void and of no effect.  The proxies and powers granted by Grantor pursuant to this Agreement are coupled with an interest and are given to secure the performance of Grantor's obligations under this Agreement and of the Company's Obligations.

Section 5.9    <u>**Specific Performance of Certain Covenants**</u>.  Grantor acknowledges and agrees that a breach of any of the covenants contained in <u>Sections 2.2</u> or <u>5.3</u> hereof will cause irreparable injury to Grantee, that Grantee has no adequate remedy at law in respect of such breaches and therefore agrees, without limiting the right of Grantee to seek and obtain specific performance of other Obligations of Grantor contained in this Agreement, that the covenants of Grantor contained in the sections referred to in this <u>Section 5.9</u> shall be specifically enforceable against Grantor.

## ARTICLE 6

## GENERAL PROVISIONS

Section 6.1    <u>**Reinstatement**</u>.  This Agreement shall remain in full force and effect and

continue to be effective should any Event of Bankruptcy occur with respect to Grantor and shall continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Obligations, or any part thereof, is, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee of the Obligations, whether as a "voidable preference," "fraudulent conveyance," or otherwise, all as though such payment or performance had not been made.  If any payment, or any part thereof, is rescinded, reduced, restored or returned, the Obligations shall be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

Section 6.2    **Benefit of Agreement**.  The terms and provisions of this Agreement shall be binding upon and inure to the benefit of Grantor, Grantee and its respective successors and assigns (including all persons who become bound as a debtor to this Agreement), except that Grantor shall not have the right to assign its rights or delegate its Obligations under this Agreement or any interest herein, without the prior written consent of Grantee.  No sales of participations, assignments, transfers, or other dispositions of any agreement governing the Obligations or any portion thereof or interest therein shall in any manner impair the Lien granted to Grantee hereunder and any attempted assignment without consent will be null and void.

Section 6.3    **Survival**.  Without prejudice to the survival of any other agreement of Grantor under this Agreement or Order, the agreements and obligations of Grantor contained in Sections 6.1, 6.4 and 6.12, and the representations and warranties of Grantor contained in this Agreement shall (a) survive until the Obligations have been paid in full and (b) be deemed to have been relied upon by Grantee notwithstanding any investigation heretofore or hereafter made by Grantee or on its behalf.

Section 6.4    **Taxes**.  Any taxes (including income taxes) payable or ruled payable by a federal or state authority in respect of this Agreement shall be paid by Grantor, together with interest and penalties, if any.

Section 6.5    **Principles of Construction**.  The Article and/or Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose. All references to sections, schedules and exhibits are to sections, schedules, and exhibits in or to this Assignment unless otherwise specified.  Unless otherwise specified, the words "hereof," "herein" and "hereunder" and words of similar import when used in this Assignment shall refer to this Assignment as a whole and not to any particular provision hereof or thereof.  When used in this Assignment, the word "including" shall mean "including but not limited to".  Unless otherwise specified, all meanings attributed to defined terms herein shall be equally applicable to both the singular and plural forms of the terms so defined.

Section 6.6    **Termination and Release**.  This Agreement and the security interests granted herein shall continue in full force and effect until, subject to reinstatement pursuant to Section 6.1, payment in full of the Obligations.  In connection with any termination or release pursuant to this Section 6.6, Grantee shall execute and deliver to Grantor, at Grantor's expense, all documents that Grantor shall reasonably request to evidence such termination or release and shall perform such other actions reasonably requested by Grantor to affect such release, including delivery of certificates, securities and instruments.  Any execution and delivery of documents pursuant to this Section 6.6 shall be without recourse to or warranty by Grantee.

Section 6.7    **Entire Agreement**.  This Agreement embody the entire agreement and

understanding among the Grantor and Grantee relating to the Pledged Collateral and supersede all prior agreements and understandings among the Grantor and Grantee relating to the Pledged Collateral.

**Section 6.8    Governing Law; Jurisdiction; Waiver of Jury Trial**.

(a)    GOVERNING LAW.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA.

(b)    CONSENT TO JURISDICTION.  ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST GRANTOR OR GRANTEE ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN DESTIN, FLORIDA.  GRANTOR AND GRANTEE HEREBY (i) IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT THEY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN SUCH A COURT AND ANY CLAIM THAT ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM, (ii) IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUCH SUIT, ACTION OR PROCEEDING, AND (iii) IRREVOCABLY CONSENT  TO SERVICE OF PROCESS BY MAIL, PERSONAL SERVICE OR IN ANY OTHER MANNER PERMITTED BY APPLICABLE LAW, AT THE ADDRESS SPECIFIED ON THE SIGNATURE PAGES HERETO (AND AGREES THAT SUCH SERVICE AT SUCH ADDRESS IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER ITSELF IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT).

(c)    WAIVER OF JURY TRIAL.  GRANTOR AND GRANTEE, TO THE FULLEST EXTENT THAT THEY MAY LAWFULLY DO SO, HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION HEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GRANTEE AND GRANTOR AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  GRANTEE AND GRANTOR ARE EACH HEREBY INDIVIDUALLY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.

**Section 6.9    Modifications**.  No modification, amendment, extension, discharge, termination, or waiver of any provision of this Agreement, nor consent to any departure by Grantor or Grantee therefrom, shall in any event be effective unless the same shall be in a writing signed by the party or parties against whom enforcement is sought, and then such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given.  Except as otherwise expressly provided herein, no notice to, or demand on, Grantor shall entitle Grantor to any other or future notice or demand in the same, similar or other circumstances.  Neither any failure nor any delay on the part of Grantee in insisting upon strict performance of any term, condition,

49423357.2

covenant, or agreement, or exercising any right, power, remedy or privilege hereunder, shall operate as or constitute a waiver thereof, nor shall a single or partial exercise thereof preclude any other future exercise, or the exercise of any other right, power, remedy or privilege.  In particular, and not by way of limitation, by accepting payment after the due date of any amount payable under this Agreement, Grantee shall not be deemed to have waived any right either to require prompt payment when due of all other amounts due under this Agreement, or to declare a default for failure to effect prompt payment of any such other amount.  The Grantee shall have the right to waive or reduce any time periods that Grantee is entitled to under this Agreement in its sole and absolute discretion.

Section 6.10   **Severability**.  Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid pursuant to all Legal Requirements, but if any provision of this Agreement shall be prohibited by or invalid pursuant to Legal Requirements, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

Section 6.11   **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.  Copies of originals, including copies delivered by facsimile, pdf or other electronic means, shall have the same import and effect as original counterparts and shall be valid, enforceable and binding for the purposes of this Agreement.

Section 6.12   **Payment of Expenses**.

(a)    Grantor shall reimburse Grantee for any and all costs and expenses (including attorneys' fees and expenses and auditors' and accountants' fees) paid or incurred by Grantee in connection with the preparation, execution, delivery, administration, collection and enforcement of this Agreement and in the audit, analysis, administration, collection, preservation or sale of the Pledged Collateral (including the expenses and charges associated with any periodic or special audit of the Pledged Collateral).  Any and all costs and expenses incurred by Grantor in the performance of actions required pursuant to the terms hereof shall be borne solely by Grantor.

(b)    EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LEGAL ACTION OR PROCEEDING REFERRED TO IN THIS SECTION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES (OTHER THAN INTEREST, FEES AND OTHER AMOUNTS DUE AND PAYABLE UNDER THE ORDER OR ARISING OUT OF CLAIMS BY THIRD PARTIES) ARISING OUT OF, IN CONNECTION WITH, OR AS A RESULT OF, THIS AGREEMENT OR ANY AGREEMENT OR INSTRUMENT CONTEMPLATED HEREBY.

(c)    All amounts due under this Section shall be payable promptly (and in any event within ten (10) Business Days after demand therefor).

Section 6.13   **Notices**.  All notices, consents, approvals and requests required or permitted hereunder shall be given in writing by expedited prepaid delivery service, either commercial or

13

United States Postal Service, with proof of delivery or attempted delivery, addressed as set forth on the signature pages hereto (except that any party hereto may change its address and other contact information for purposes hereof at any time by sending a written notice to the other parties to this Agreement in the manner provided for in this Section).  A notice shall be deemed to have been given when delivered or upon refusal to accept delivery.

[SIGNATURE PAGE TO FOLLOW]

49423357.2

IN WITNESS WHEREOF, Grantor and Grantee have executed this Agreement as of the date first above written.

**GRANTOR**: _____

**MARIA KASTRENAKES**

Address:    1755 McCauley Road
            Clearwater, Florida 33765

SIGNATURE PAGE TO PLEDGE AND SECURITY AGREEMENT

49423357.2

**GRANTEE:** _____

_____

**CYGRAM HERITAGE, LLLP**
**By:** _____
**Its:** _____

Address: 6319 Memorial Highway
        Tampa, Florida 33615

SIGNATURE PAGE TO PLEDGE AND SECURITY AGREEMENT

SCHEDULE I

**DESCRIPTION OF COMPANY EQUITY INTERESTS**

| ISSUER | OWNER | CLASS | % OWNED | CERT. NO. |
|---|---|---|---|---|
| CPX HOLDINGS, LLC | MARIA KASTRENAKES | Membership Interests | 100% | |

**EXHIBIT A**

**FORM OF ACKNOWLEDGMENT AND CONSENT**

Company hereby acknowledges receipt of a copy of that certain Pledge and Security Agreement, dated as of the date hereof, by and between Grantor and Grantee (the "Agreement") and agrees that Grantor is bound thereby.  Company agrees to notify Grantee promptly in writing of the occurrence of any of the events described in Section 4.1 of the Pledge Agreement.

Dated: July __, 2023

**CPX HOLDINGS, LLC, a** Florida limited liability company

_____

By:    Maria Kastrenakes, Manager

SIGNATURE PAGE TO ACKNOWLEDGMENT AND CONSENT TO PLEDGE AND SECURITY AGREEMENT