ORDERED.

Dated: August 17, 2023

_____
Caryl E. Delano
Chief United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

MICHAEL KASTRENAKES,

      Debtor.
_____/

Case No.: 8:22-bk-01210-CED
Chapter: 7

**ORDER GRANTING MOTION TO COMPROMISE CONTROVERSY**
**BETWEEN VASILOUDES CREDITORS AND KASTRENAKES PARTIES**

THIS CAUSE came on for consideration by the Court, on July 31, 2023 at 10:30 a.m. (the "Hearing"), of the "Motion to Compromise Controversy Between Vasiloudes Creditors and Kastrenakes Parties" (the "Compromise Motion") [Doc. 305] filed by a set of parties-in-interest (collectively, the "Compromise Parties").

The Compromise Motion pertains to a plenary resolution (the "Compromise") as between the "Vasiloudes Creditors" and the "Kastrenakes Parties." In these regards, it is noted that the Vasiloudes Creditors include Dr. Panayiotis Vasiloudes ("Vasiloudes"),

Helen Vasiloudes ("Ms. Vasiloudes"),[1] Cygram Heritage, LLLP ("Heritage"), Cygram Holdings, L.P. ("Holdings"), Panevas, LLC ("Panevas"),[2] Trifon Houvardas ("Houvardas"), and K&M Insurance Investors, LLC ("K&M"). The Kastrenakes Parties include Michael Kastrenakes (the "Debtor") and Maria Kokolakis Kastrenakes ("Ms. Kastrenakes").[3]

In the Compromise Motion, the Compromise Parties seek to definitively and completely resolve a Hydra-headed controversy (the "Controversy") including but not limited to the Removed New Wave Proceeding,[4] the Remanded ICO Proceeding,[5] the Remanded Trusts Proceeding,[6] the Dischargeability Proceeding,[7] the Derivative

---

[1] Ms. Vasiloudes is not a direct party in this Liquidation, but is being included as one of the Vasiloudes Creditors because she owns or controls some or all of the business entities identified as Vasiloudes Creditors. Among other things, Ms. Vasiloudes controls Heritage and Panevas.

[2] Panevas is the subject of a separate bankruptcy case, and approval of participation by Panevas in connection with the Compromise as defined below, is subject to a separate order in connection with the bankruptcy case of Panevas; however, the equity interest holders of Panevas, including primarily Ms. Vasiloudes.

[3] Mrs. Kastrenakes is a party to the Compromise Motion in her own right and as the authorized agent for CPX Holdings, LLC ("CPX") and Consumer Direct Auto, LLC ("CDA"). Both the Debtor and Mrs. Kastrenakes are collectively referred to herein as the "Kastrenakeses."

[4] Dr. Panayiotis Vasiloudes And Cygram Heritage, LLLP v. Michael Kastrenakes; Maria Kokolakis Kastrenakes; New Wave Acceptance LLC; Platinum Auto Finance, LLC n/k/a New Wave Auto Finance, LLC, And MK Automotive, Inc. d/b/a New Wave Auto Sales (collectively, the "New Wave Defendants"), Adversary Proceeding No.: 8:22-ap-00113-CED, currently pending before this Court.

[5] Panayiotis Vasiloudes, M.D., Ph.D, Cygram Heritage, LLLP, Cygram Holdings, L.P., Trifon Houvardas, And K&M Insurance Investors, LLC v. Michael Kastrenakes, William Hilgenfeldt, Thomas K. Rowe, And Kevin E. Hawkins, Case No.: 22-000956-CI, currently pending before the Sixth Judicial Circuit in and for Pinellas County, Florida (the "State Court").

[6] Panayiotis Vasiloudes, M.D., Ph.D., Cygram Heritage, L.L.L.P., Cygram Holdings, L.P., And Panevas L.L.C. v. Maria Kastrenakes, Individually And As Trustee For The Maria Kastrenakes Irrevocable Trust, The Emmanuel Kastrenakes Irrevocable Trust, The Evangelia Kastrenakes Irrevocable Trust, The John Kastrenakes Irrevocable Trust, and The Joseph Kastrenakes Irrevocable Trust, Case No.: 22-2403-CI, currently pending before the State Court.

[7] Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, and Cygram Holdings, L.P. v. Michael Kastrenakes, Adversary Proceeding No.: 8:22-ap-00095-CED, currently pending before this

Dischargeability Proceeding,[8] the Discharge Proceeding,[9] and the Equitable Subordination Proceeding.[10]

It is noted in these regards that the Remanded ICO Proceeding[11] and the Remanded Trusts Proceeding were both remanded as a result of a hearing that occurred on May 8, 2023, and the Dischargeability Proceeding, Derivative Dischargeability Proceeding, and the Discharge Proceeding were all consolidated before this Court in the context of the same hearing.

Although there may have been other claims and defenses that could have been raised either before this Court or the State Court in connection with any aspect of the Controversy, all are intended to be resolved in the context of this order (this "Compromise Order") and the underlying relief that all of the Compromise Parties have agreed to (the "Compromise").

At the hearing, counsel for Traci K. Stevenson (the "Trustee") chapter 7 trustee for the estate of the Debtor, raised a limited <u>ore</u> <u>tenus</u> objection requesting clarification that

---

Court.

[8] <u>Cygram Heritage, LLP, derivatively on behalf of New Wave Acceptance, LLC v. Michael Kastrenakes and New Wave Acceptance, LLC</u>, Adversary Proceeding No.: 8:22-ap-00096-CED, currently pending before this Court.

[9] <u>Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, and Cygram Holdings, L.P. v. Michael Kastrenakes</u>, Adversary Proceeding No.: 8:23-ap-00039-CED, currently pending before this Court.

[10] <u>Dr. Panayiotis Vasiloudes, Cygram Heritage, LLLP, Cygram Holdings, L.P., Trifon Houvardas, And K&M Insurance Investors, LLC V. Michael Kastrenakes, Maria Kastrenakes, CPX Holdings, LLC, Pagona Kokolakis, And Evangeline Kastrenakes</u>, Adversary Proceeding No.: 8:22-ap-00118-CED, currently pending before this Court.

[11] The Remanded ICO Proceeding and the Removed New Wave Proceeding relate to two (2) of the Debtor Entities, the first being Instant Car Offer, LLC, and the second being New Wave Acceptance, LLC both being defunct entities, and the Debtor's equity in both entities is property of the estate.

the Trustee on behalf of the bankruptcy estate is not a party to the Compromise and the property, rights, claims, and defenses of the bankruptcy estate will not be impaired or impacted by the Compromise.

As set forth in the Compromise Motion, the Compromise includes the following terms and conditions:

- a. **<u>Dischargeability Proceeding</u>:**
  - i. **<u>Final Judgment</u>:** The parties to the Dischargeability Proceeding agree to the entry of a final judgment of non-dischargeability (the "Non-Dischargeability Judgment") in the amount of $1,500,000 (the "Non-Dischargeable Judgment Obligation"), will be entered in favor of Heritage and against the Debtor, a copy of which is attached to the Compromise Motion as Exhibit "B."
  - ii. **<u>Forbearance Payments</u>:** Without in any way changing the character of the Non-Dischargeability Judgment as final and non-appealable, the Debtor will commence making a series of forbearance payments in the amount of $9,500 (the "Forbearance Payments") on the first day of the first month beginning on September 1, 2023, which will continue for a total of sixty (60) consecutive months (the "First Payment Period"). The Forbearance Payments are calculated as the sum of interest accruing at an interest rate of five and a half (5.5%) percent per annum, with the balance to amortization at approximately twenty-five (25) years. Payments will be directed to Heritage. At the

    conclusion of the First Payment Period, the Debtor will have the right to continue making Forbearance Payments for a second term of sixty (60) consecutive months (the "Second Payment Period"), based upon the same interest rate and amortization. Should the Debtor wish to continue making payments at the conclusion of the Second Payment Period, the Debtor will again have the right to continue making Forbearance Payments for a third term of sixty (60) consecutive months (the "Third Payment Period"), based upon the same interest rate and amortization. However, any default in Forbearance Payments will automatically extinguish the opportunities to extend the First Payment Period and Second Payment Period as set forth above. Notwithstanding any other term or condition, the Non-Dischargeable Judgment Obligation shall be due and payable on the fifteenth (15th) anniversary of the date this Compromise Order is entered (the "Effective Date").

iii. **FHB Collateral:** The Atlas Stock (the "FHB Collateral") serves as collateral for an unrelated debt (the "FHB Debt") owed to First Home Bank ("FHB"). In the event that FHB applies a credit against the FHB Debt as a result of the liquidation of the FHB Collateral, a credit in equal amount will be applied against the Non-Dischargeable Judgment Obligation.

iv. **Homestead Mortgage:** To secure the Non-Dischargeable Judgment

       Obligation, the Kastrenakeses will grant Heritage a third mortgage lien with additional protections to secure the final judgment of dischargeability on the homestead of the Kastrenakeses (the "Homestead")[12], pursuant to a set of mortgage documents (the "Homestead Mortgage Documents"), a copy of which is attached to the Compromise Motion as Composite Exhibit "C."  It is stipulated that the third mortgage position in favor of Heritage is secured to the extent of no less than $1,100,000 (the "Minimum Equity"), based upon the two (2) existing senior mortgages totaling approximately $831,456.67, given the stipulated current $2,000,000 estimate of value.

v.   **Potential Downsized Homestead:** Should the Kastrenakeses wish to downsize from the Homestead, then Heritage will facilitate the sale of the Homestead, and the acquisition of their new homestead (the "Potential Downsized Homestead"), provided that (A) Heritage simultaneously obtains identical mortgage rights encumbering the Potential Downsized Homestead to secure the then-outstanding balance of the Non-Dischargeable Judgment Obligation, (B) there are

---

[12] The Homestead is located at 1755 McCauley Road, Clearwater, Florida 33765, is currently subject to Florida homestead exemption, is held in the entireties by the Kastrenakeses, and the Kastrenakeses agree to all manner of collateral maintenance covenants in order to maintain the Minimum Equity, including payment of taxes, maintenance of insurance coverages, limitations on future advances of senior liens, and prohibition against omissive and commissive waste. However, Ms. Kastrenakes is not assuming liability for the Non-Dischargeable Judgment Obligation in personam.

        no senior encumbrances to the position of Heritage, and (C) the ratio of the balance of the Non-Dischargeable Judgment Obligation to the value of the Potential Downsized Homestead is at least ninety (90%) percent.[13]

  vi.  **Additional Collateral:** To further secure the Non-Dischargeable Judgment Obligation, Ms. Kastrenakes will also (A) cause CPX to grant Heritage a security interest in all business assets of CPX, including without limitation CPX's interests in CallPass, LLC and Ximplipay, LLC, and (B) hypothecate her equity position in CPX as well as any respective subsidiaries of CPX if any, to Heritage. A set of security and hypothecation documents intended to effectuate these transactions (the "CPX Security Documents"), a copy of which is attached to the Compromise Motion as Composite Exhibit "D."

  vii.  **Prohibition Against Forming New Business Entities in a Manner that Might Unfairly Impact Heritage's Collateral Position:** The Kastrenakeses agree that for so long as the Non-Dischargeable

---

[13] For example, if the Non-Dischargeable Judgment Obligation were reduced from $1,500,000 to $750,000, the value of the Potential Downsized Homestead would have to be no less than $833,334, but if the Non-Dischargeable Judgment Obligation were reduced to $1,400,000, the new homestead would necessarily have to be worth at least $1,555,556, to achieve ninety (90%) percent LTV. The Kastrenakeses agree to all manner of collateral maintenance covenants in order to maintain the ninety (90%) percent LTV on the Potential Downsized Homestead, including payment of taxes, maintenance of insurance coverages, limitations on future advances of senior liens, and prohibition against omissive and commissive waste. If there is a dispute between Heritage and the Kastrenakeses, the ratio must be calculated by reference to a valuation by an arm's length MAI appraisal.

        Judgment Obligation remains outstanding in any amount, neither of them will own an interest in any business involved in the sub-prime automobile industry, including purchase, sale, finance, insurance, or any related service similar to any present or prior business model of any of the Debtor Entities.  However, the Kastrenakeses will be permitted to do so if the individual seeking to hold such an interest grants Heritage a senior perfected lien and security interest consistent with the rights created above with respect to CPX and CDA.

b. **Disposition of Remaining Litigation:**

    i.    **Discharge Proceeding**:  The Vasiloudes Creditors and the Debtor stipulate to the entry of a final judgment denying all relief sought by the Vasiloudes Creditors, a copy of which is attached to the Compromise Motion as Exhibit "E."

    ii.    **Derivative Dischargeability Proceeding**:  The Vasiloudes Creditors and the Debtor stipulate to the entry of a final judgment denying all relief sought by the Vasiloudes Creditors, a copy of which is attached to the Compromise Motion as Exhibit "F."

    iii.    **Removed New Wave Proceeding**:  The Vasiloudes Creditors, the Debtor, and Ms. Kastrenakes stipulate to the entry of a final judgment denying all relief sought by the Vasiloudes Creditors, a copy of which is attached to the Compromise Motion as Exhibit "G."

    iv.    **Remanded ICO Proceeding**:  The Vasiloudes Creditors and Kevin

        E. Hawkins ("Hawkins") stipulate to dismissal of all relief sought by the Vasiloudes Creditors against Hawkins, a copy of which is attached to the Compromise Motion as Exhibit "H." However, nothing about this filing will preclude the Vasiloudes Creditors from seeking other relief against the remaining defendants.

v. **Remanded Trusts Proceeding:** The parties to the Remanded Trusts Proceeding stipulate to the dismissal of the Remanded Trusts Proceeding, a copy of which is attached to the Compromise Motion as Exhibit "I."[14]

vi. **Equitable Subordination Proceeding:** The Vasiloudes Creditors, the Debtor, Ms. Kastrenakes, and CPX, stipulate to the entry of a final judgment denying all relief sought by the Vasiloudes Creditors, a copy of which is attached to the Compromise Motion as Exhibit "J."

c. **Other Consideration:**

i. **Third Party Releases:** As additional consideration, the Compromise Parties agree that the Vasiloudes Creditors shall not initiate litigation against Michael Kaplanis, Mark Lagos, the children of the Debtor and Maria Kastrenakes (the "Kastrenakes Children"), the Kastrenakes Children's trusts, the Maria Kastrenakes Irrevocable Trust 12/30/2009, and the Maria Kastrenakes Irrevocable Trust 1998

---

[14] Based upon the procedural history, it is the intent of the Compromised Parties that this judgment operates as a general release in favor of Ms. Kastrenakes and the other named defendants.

(collectively, the "Third Party Releasees"); however, in the event that any of the Third Party Releasees ever initiates any form of claim of any kind, the Vasiloudes Creditors will have the right to bring any claim of any kind against either of them.

ii. **No Admission:** None of the Compromise Parties are admitting wrongdoing, but all the Compromise Parties are acknowledging sufficiency of consideration.

iii. **Mediator Fees:** The Vasiloudes Creditors and the Kastrenakes Parties shall each be liable for half of the mediator fees and costs incurred in mediating with R. Scott Shuker, Esquire, to be paid no later than five (5) business days following the Effective Date.

iv. **Integration Clause:** The Compromise is intended to resolve all business between the Kastrenakes Parties and the Vasiloudes Creditors, including the Controversy as outlined above. There are no separate agreements of any kind relating to the business, financial, or legal affairs of the Compromise Parties, and any such terms or agreements are hereby deemed to be void ab initio.

v. **Non-Severability:** The Compromise is non-severable, such that the terms and conditions cannot be selectively incorporated into an agreement, and the Compromise must either be approved as presented or disapproved, unless every one of the Compromise Parties expressly agrees.

    **vi.**    **Amendments in Writing:** Any amendments to the terms of the Compromise must be made in writing, and are subject to approval by this Court following notice and hearing, failing which such purported amendments are void.  No claims such as course of performance, estoppel, waiver, or the like shall excuse breach of an express provision of the Compromise.

    **vii.**    **Duty Regarding Further Assurances:** Each of the Compromise Parties shall timely execute all documents necessary to effectuate this Compromise.  In these regards, it is expressly noted that all the Compromise Parties waives all rights to rehearing, relief from judgment, or appeal, as they might otherwise relate to any judgment or order to be entered in furtherance of the Compromise.

    **viii.**    **Duty of Good Faith:** All of the Compromise Parties shall have a duty of good faith and fair dealing with all aspects of the Compromise, and shall provide any further assurances regarding documents required to effectuate the benefit of the bargain.

    **ix.**    **No Implied Third-Party Beneficiaries:** Other than as expressly set forth above, there are no third-party beneficiaries to the Compromise, and any third-party beneficiary receiving a release under the Compromise is deemed to have granted a release reciprocally.

    **x.**    **Mothers' Promise:** Ms. Vasiloudes and Ms. Kastrenakes expressly represent that they will take no action on behalf of any business entity

either of them owns/controls that would impede the intention of the Compromise that the Vasiloudes Family will recover $1,500,000 with interest at six (6%) percent, and that the Kastrenakes Family will be free of all claims and litigation involving the Vasiloudes Family.

xi. **Preserved Privileges:** The Vasiloudes Creditors agree that they shall assert attorney-client, work-product, and mediation privileges to the fullest extent possible, with respect to all matter of material generated with the involvement of counsel, to aid in achieving finality.

xii. **Retention of Jurisdiction and Related Provisions:** Florida Law shall govern the construction, interpretation, and enforcement of the Compromise, with proper consideration to substantive bankruptcy law where applicable. This Court shall retain jurisdiction over all Compromise Parties referenced herein to enforce the terms of the Compromise. The Compromise Parties waive any rights to a trial by jury, having fully consulted with their respective counsel regarding the same.

This Court has considered the record in this Liquidation, the various adversary proceedings and contested matters, and the remanded actions. This Court has heard the representations and arguments of parties in interest. This Court is satisfied that all parties in interest have had notice and an opportunity to be heard in a manner consistent with controlling law and fundamental fairness.

For all the reasons stated in open Court, this Court finds and holds that the relief

requested in the Compromise Motion is (a) in the best interests of all of the Compromise Parties, (b) consistent with all relevant facts, law, and equity, and (c) not contrary to any statute, law, or other authority.  All statements on the record are incorporated for purposes of Federal Rule of Bankruptcy Procedure 7052.  Accordingly, it is

**ORDERED, ADJUDGED, AND DECREED** as follows:

1. The twenty-one (21) day objection period is hereby shortened as of the date of hearing set forth above.

2. The Compromise Motion is granted.

3. The Compromise is approved as presented.

4. The Compromise Parties are authorized and directed to take all steps necessary to carry out the terms of the Compromise.

5. This Court will enter separate judgments and orders consistent with the terms of the Compromise, without the necessity of filing a separate motion in proceedings referenced above.  For actions pending before the State Court, the Compromise Parties shall promptly file the necessary moving papers to obtain contemplated relief.

6. Nothing in the Compromise or this Order shall: (a) release or impair any rights, claims, or defenses of the bankruptcy estate; (b) constitute an adjudication whether any property or claims are property of the bankruptcy estate; or (c) constitute an adjudication of the amount or allowance of any claims filed by the Compromise Parties in the bankruptcy case except to the extent adjudicated in the Non-Dischargeabilty Judgment.  Notwithstanding the foregoing, the bankruptcy estate is adjudicated to have no right, claim, or interest in the Forbearance Payments, irrespective of the source of the Forbearance

Payments.

7. This Court hereby retains jurisdiction over all Compromise Parties referenced herein to enforce the terms of the Compromise.

*Attorney, John A. Anthony, is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three (3) days of entry of this order.*